| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| BARUCH C. COHEN, ESQ SBN 159455<br>LAW OFFICE OF BARUCH C. COHEN, APLC<br>4929 WILSHIRE BLVD #940<br>LOS ANGELES, CA 90010<br>(323) 937-4501 Fax (888) 316-6107<br>E: baruchcohen@baruchcohenesq.com<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>DAVID LEE<br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:19-BK-10119-RK<br>CHAPTER: 11 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| | DATE: 07/23/2019<br>TIME: 10:30 a.m.<br>COURTROOM: 10:30 a.m. |

**Movant:** YCCS, LLC, a Hawaiian Limited Liability Company

1. **Hearing Location**:

   ☒ 255 East Temple Street, Los Angeles, CA 90012      ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367   ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

    a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 7/2/19 _____

BARUCH C. COHEN, APLC
_____
Printed name of law firm (if applicable)

BARUCH C. COHEN
_____
Printed name of individual Movant or attorney for Movant


/s/ Baruch C. Cohen
_____
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

    ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

    ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

    ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

    ☐ Other (*specify*):

2. **The Property at Issue (Property):**

    a. Address:

    *Street address*: 840 S. DUNSMUIR AVE
    *Unit/suite number*:
    *City, state, zip code*: LOS ANGELES, CA  90036

    b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit _1_ ):

3. **Bankruptcy Case History:**

    a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter ☐ 7 ☒ 11 ☐ 12 ☐ 13 was filed on (*date*) _1/7/19_ .

    b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13 was entered on (*date*) _____.

    c. ☐ A plan, if any, was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

    a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

    (1) ☐ Movant's interest in the Property is not adequately protected.

        (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

        (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

        (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

    (2) ☐ The bankruptcy case was filed in bad faith.

        (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

        (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

        (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

        (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

        (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

        (F) ☒ Other (*see attached continuation page*).

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

(3) ☐ (*Chapter 12 or 13 cases only*)

    (A) ☐ All payments on account of the Property are being made through the plan.
        ☐ Preconfirmation  ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on (*date*) _____,
    which is  ☐ prepetition  ☐ postpetition.

(6) ☒ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other (*specify*):


6. **Evidence in Support of Motion: (D*eclaration(s) MUST be signed under penalty of perjury and attached to this motion*)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☒ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit 3 ____.

d. ☒ Other:
    PAPERS FILED IN THE DEBTOR'S BK CASE: STATUS REPORT [DOC-70]; MOTION TO LEASE REAL PROPERTY [DOC-95]; EXHIBITS 4-5

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 4                          **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☒ 11 U.S.C. § 362(d)(1)  ☒ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☐ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☒ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or  ☒ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☒ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☒ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☒ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☒ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date: 7/2/13

LAW OFICE OF BARUCH C. COHEN, APLC
_____
Printed name of law firm (*if applicable*)
BARUCH C. COHEN
_____
Printed name of individual Movant or attorney for Movant
/s/ BARUCH C. COHEN
_____
Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# REAL PROPERTY DECLARATION

CURTIS DEWEESE

I, (*print name of Declarant*) _____, declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

    a.  ☐  I am the Movant.

    b.  ☐  I am employed by Movant as (*state title and capacity*):

    c.  ☒  Other (*specify*): I am the managing member of Movant YCCS, LLC ("YCCS").

2.  a.  ☒  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☐  Other (*see attached*):

3.  The Movant is:

    a.  ☒  Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _2___.

    b.  ☐  Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit _____.

    c.  ☐  Servicing agent authorized to act on behalf of the:

        ☐  Holder.
        ☐  Beneficiary.

    d.  ☐  Other (*specify*):

4.  a.  The address of the Property is:

        *Street address*: 840 S. DUNSMUIR AVE.
        *Unit/suite no.*:
        *City, state, zip code*:LOS ANGELES, CA  90036

    b.  The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5. Type of property (*check all applicable boxes*):

   a. ☒ Debtor's principal residence          b. ☐ Other residence
   c. ☐ Multi-unit residential               d. ☐ Commercial
   e. ☐ Industrial                           f. ☐ Vacant land
   g. ☒ Other (*specify*): BUSINESS PURPOSE LOAN

6. Nature of the Debtor's interest in the Property:

   a. ☒ Sole owner

   b. ☐ Co-owner(s) (*specify*):

   c. ☐ Lienholder (*specify*):

   d. ☐ Other (*specify*):

   e. ☒ The Debtor ☒ did ☐ did not  list the Property in the Debtor's schedules.

   f. ☐ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☐ trust deed.
      The deed was recorded on (*date*) _____.

7. Movant holds a  ☒ deed of trust  ☐ judgment lien ☐ other (*specify*) _____
   that encumbers the Property.

   a. ☒ A true and correct copy of the document as recorded is attached as Exhibit 1____.

   b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
      attached as Exhibit 2____.

   c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
      trust to Movant is attached as Exhibit _____.

8. Amount of Movant's claim with respect to the Property:

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 365,000 |
| b. | Accrued interest: | $ | $ | $ 47,754 |
| c. | Late charges | $ | $ | $ |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 18,265 |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[            ] | $[            ] | $[            ] |
| g. | TOTAL CLAIM as of (*date*): 3-15-2019 | $ | $ | $ 431,019 |

   h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

   a. Notice of default recorded on (*date*) 9/11/18 ____ or ☐ none recorded.

   b. Notice of sale recorded on (*date*) 12/11/18 ____ or ☐ none recorded.

   c. Foreclosure sale originally scheduled for (*date*) 1/8/19 _____ or ☐ none scheduled.

   d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

   e. Foreclosure sale already held on (*date*) _____ or ☐ none held.

   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☐ none recorded.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                  Page 7                          **F 4001-1.RFS.RP.MOTION**

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a.  Amount of current monthly payment as of the date of this declaration: $ 5018.75 _____ for the month of JULY _____ 20 19.

    b.  Number of payments that have come due and were not made: 12 . Total amount: $ 60,225 _____

    c.  Future payments due by time of anticipated hearing date (*if applicable*):

        An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

    d.  The fair market value of the Property is $ 1,554,000 _____, established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit 6 ____.

        (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

        (3) ☒ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit 3 ____.

        (4) ☒ Other (*specify*):
           SEE ATTACHED DECLARATION OF EIGHT (8) VALUE WEBSITES OF $1,554,000.00

    e.  **Calculation of equity/equity cushion in Property:**

        Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | (U.S. BANK) Selena Finance | $ 625,000 | $ 667.814.13 |
| 2nd deed of trust: | YCCS | $ 400,000 | $ 451,094 |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | LA COUNTY TAX | $ 1023 | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $ 1,118,908** | | | |

    f.  Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit 3 ____ and consists of:

        (1) ☐ Preliminary title report.

        (2) ☒ Relevant portions of the Debtor's schedules.

        (3) ☐ Other (*specify*):

    g.  ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ 435,092 _____ and is 28 ____% of the fair market value of the Property.

    h.  ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ 279,692 _____.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                Page 8                **F 4001-1.RFS.RP.MOTION**

i. ☒ Estimated costs of sale: $ 155,400 _____ (estimate based upon 10 _____ % of estimated gross sales price)

j. ☒ The fair market value of the Property is declining because:
BORROWER IS NOT PERFORMING DEFERRED MAINTENANCE. MARKET CONDITIONS ARE SOFTENING

12. ☐ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                    $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                    $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:                    $[                    ]

TOTAL POSTPETITION DELINQUENCY:                    $

g. Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
$_____ received on (*date*) _____
$_____ received on (*date*) _____
$_____ received on (*date*) _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                    Page 9                    F 4001-1.RFS.RP.MOTION

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (date) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (date) _____, which is ☐ prepetition ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

   a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☐ Other (specify):

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☐ Multiple bankruptcy cases affecting the Property include:

      1. Case name: _____
         Chapter: _____ Case number: _____
         Date dismissed: _____ Date discharged: _____ Date filed: _____
         Relief from stay regarding the Property ☐ was ☐ was not granted.

      2. Case name: _____
         Chapter: _____ Case number: _____
         Date dismissed: _____ Date discharged: _____ Date filed: _____
         Relief from stay regarding the Property ☐ was ☐ was not granted.

      3. Case name: _____
         Chapter: _____ Case number: _____
         Date dismissed: _____ Date discharged: _____ Date filed: _____
         Relief from stay regarding the Property ☐ was ☐ was not granted.

   ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

   ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

  a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

  b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

  c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/2/19 | CURTIS DEWEESE | SEE ATTACHED |
|---|---|---|
| Date | Printed name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

### (CONTINUED) DECLARATION OF CURTIS DEWEESE

20.    Movant is seeking relief for cause under Section 362(d)(1) for lack of adequate protection and Section 362(d)(2) for lack of equity because the Debtor has not made any post-petition payments to Movant,  the Debtor will not be able to pay YCCS all sums which are due under the Note on the maturity date of December 1, 2019 and because the current equity cushion for the secured creditor is only 18% and will shortly be reduced to only 12% as detailed herein.

21.    The Note is secured solely by the Property, which is the Debtor's principal residence, and consequently, Section 1123(b)(5) precludes the Debtor's plan from modifying  Movant's rights under the Note.  YCCS will not consent to any modification of the Note.

22.    The Debtor's most recent status report ("Report") dated May 1, 2019 [Docket No. 70], a copy of which is attached as Exhibit 4, provides clear information regarding how the Debtor wished to deal with Movant's claim.  In response to the question of what the Debtor hopes to accomplish in the case, the Debtor states, "Debtor intends to negotiate cure agreements with the various lenders and then propose a Chapter 13 style plan,." See Report, 4:14-16.  When addressing principal disputes/problems and proposed solutions, the Debtor claims he "needs a bit of time to negotiate with secured creditors before filing a plan." See Report, 4:18-23. When asked when he intends to file a plan and disclosure statement, the Debtor states he "needs approximately 5 months to contact various lenders in an attempt to negotiate plan terms.  Debtor requests that the Plan due date be set for September 2019." See Report, 6:9-12.

23.    All of the Debtor's options are based on negotiating a deal with YCCS. The Debtor and Movant, through counsel, engaged in discussions regarding a possible modification of the Note.  Those discussions were not fruitful.  YCCS does not wish to negotiate with the Debtor regarding a cure agreement or a chapter 13 style plan, which would provide payment over several years.   Movant wants to be paid on or before its note matures on December 1, 2019, as required under the express terms of its Note. Debtor has made no payments to Movant for twelve (12) months.

24.    On June 26, 2019, the Debtor filed his Notice of Motion and Motion for Order

1  Authorizing Debtor to Enter Into a Month to Month Lease and to Pay for Moving

2  Expenses Section 363 (the "Lease Motion") [Docket No. 95], a copy of which is attached

3  as Exhibit 5. The Lease Motion affects the Property which is the subject of this Stay

4  Motion.  YCCS will be filing an Objection to the Lease Motion and now raises some

5  concerns regarding the Lease Motion.

6  25.  The Lease Motion inaccurately states the explicit language of its underlying exhibit

7  documents.  The exhibits include an Exhibit (Application to Employ the Rental Girl as

8  Broker) to the Lease Motion.  This exhibit contains the proposed lease listing agreement

9  which is for a minimum ONE YEAR tenancy lease, NOT a month-to-month lease as

10  stated in the Lease Motion. Contrary to his assertions in the Lease Motion, the Debtor's

11  having a one year lease or a month-to-month short term lease with a non-debtor is not in

12  the best interests of the proposed tenant, the Estate, and the creditors of the Estate,

13  including YCCS.  Assuming that the Court grants the Stay Motion, the Property could be

14  sold by September 1, 2019, possibly sooner.  A hearing on the Lease Motion will not be

15  heard until late July, at the earliest. What purpose does it serve to have a tenant come to

16  rent the Property for a month, possibly two?  The tenant will have to move a second time

17  and incur additional cost and expense.

18  26.  From the Estate's perspective, there is likewise no benefit. The current monthly property

19  expenses for the 1st and 2nd note holders per their respective proof of claims total

20  $11,705/month. In a best case scenario, the additional rent of a month or two at

21  $6,000/month, less the moving expenses of $600, less one month's leasing commission

22  due per the Debtor's leasing agreement exhibit ($6,000), plus the Debtor's outside

23  housing expense of $3,000/month creates additional negative cash flow to the Estate.[1]

24  This negative cash flow would be exacerbated if the property was not  rented immediately

25  upon being vacated and that there will be no costs or fees in readying the Property for the

26

27

28  [1]The Debtor's Cash Flow exhibit showing $4-5k/month net cash flow; is not
reasonable to expect that the housing expense of $11,705/month can be supported and
therefore another reason for the stay to be lifted.

1    new tenants.  A further downside for the Estate is possible liability for tenants occupying

2    the Property, the increased cost of insurance, and potential damage to the Property by

3    individuals who are not owners of the Property.

4    27.    From Movant's perspective, having tenants on the Property adds a level of complexity to

5          what otherwise would be a straightforward foreclosure.  There is no assurance that the

6          tenants would vacate the Property voluntarily; Movant would have to file an adversary

7          proceeding to have the tenants vacate the Property or go to state court and proceed with

8          an unlawful detainer action, both of which procedures are time-consuming and expensive.

9          Then, too, if the tenants damage the Property, there would be costs of repairs and possible

10         delay in the sale of the Property.  Finally, if one was suspicious, one might think that the

11         proposed lease of the Property was a ploy to have the Property be exempt from the

12         requirements of Section 1123(b)(5) because the Property would no longer be Debtor's

13         principal residence. In looking at all the factors, and suspicions aside, it simply is not in

14         anyone's best interest to approve a 1-year lease of the Property.[2]

15   28.    Movant's secured debt equity cushion has been severely reduced and should be granted

16         relief from stay.  Debtor has not received any loan payments for the last  twelve (12)

17         months and further delays are without merit.  Based upon the amounts stated under the

18         proofs of claim filed by the 1st trust deed holder and our 2nd trust deed position, the

19         current amounts due are $1,118,908 with amounts of approximately $11,705 being

20         incurred for each month going forward without relief.  Based upon an average of eight(8)

21         real estate online appraisal value estimates, the property's current market value is

22         $1,554,000 (See Exhibit 6 attached). Should a sale occur for that market value amount,

23         the proceeds would be as follows.

24   ///

25

26         [2]YCCS believes that the Debtor is being disingenuous when he refers to the lease
27   as month-to-month and then seeks to hire a broker (at a cost of $6K not disclosed in the
     Motion) for a 1-year lease.  Having it be a year lease violates the existing terms of the
28   deed of trust and provides great opposition to the soon-to-be-filed opposition to the Lease
     Motion.

a.  Sales Price:                               $1,554,000

b.  Less: Selling Costs @10%          ($155,400)

    Subtotal Proceeds:                   $1,398,600

    Less: 1st TD, US Bank              ($667,814) (7/1/19)

    Less: 2nd TD, YCCS(Movant) ($451,094) (7/1/19)

c.  Equity Cushion:          $279,692 or 18% as of 7/1/19

d.  Less: Interim carry due at $11,705/month for est. 6 months

        ($70,230)

e.  Less: Est. Legal, misc. 1st/2nd to closing($20,000)

f.  Equity Cushion at sale          $189,462 or 12% as of 1/1/20

29.  Should the real estate market continue to soften as has been the case over the last year, the secured debt will be further at risk below this 12-18% equity cushion.

30.  YCCS has shown cause to grant relief from stay to proceed with the sale of the Property as soon as possible. The Stay Motion should be granted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on July 2, 2019.

_CURTIS DEWEESE

4

# EXHIBIT - 1

Recording Requested By
Pacific Private Money, Inc. c/o Mark Hanf

When Recorded Mail To
Pacific Private Money, Inc. c/o Mark Hanf
1555 Grant Avenue
Novato CA 94945

Loan # 2017-0925
Escrow # 100-1904973-62

APN # 5089-020-012

Orange Coast Title Company
Order No. 100-1904973-62



Space above this line for recorder's use

# DEED OF TRUST
## ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

This Deed of Trust, made this 14th day of November 2017, among David D. Lee, an unmarried man, whose address is 840 South Dunsmuir Avenue Los Angeles CA 90036 (herein "Borrower or Trustor"), Pacific Private Money, Inc. (herein "Trustee"), and the Beneficiary, YCCS LLC, a Hawaiian limited liability company c/o Pacific Private Money, Inc., whose address is 1555 Grant Avenue Novato CA 94945 (herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the county of Los Angeles, State of California:

**See Legal Description attached as "EXHIBIT A"**

APN: 5089-020-012, which has the address of 840 South Dunsmuir Avenue Los Angeles CA 90036
(herein "Property Address");

TOGETHER with all buildings, improvements and tenements now or hereafter erected on the property, and all heretofore or hereafter vacated alleys and streets abutting the property, and all policies of insurance, all awards if damages and compensation as a result of condemnation, easements, rights, appurtenances, rents (subject however to the assignment of rents to Lender herein), royalties, mineral, oil and gas rights and profits, water, water rights, and water stock appurtenant to the property, and all fixtures, machinery, equipment, engines, boilers, incinerators, building materials and appliances, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light; and all elevators, and related machinery and equipment, fire prevention and extinguishing apparatus, security equipment and dishwashers, disposals, awnings, storm windows, storm doors, screens, mirrors, cabinets, paneling, attached floor coverings, antennas and trees and other fixtures under the UCC (if applicable) and all existing and future leases, licenses and agreements together with all guarantees; all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the real property covered by this Instrument; and all of the foregoing, together with said property (or the leasehold estate in the event this Instrument is on a leasehold) are herein referred to as the "Property":

THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:
(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated 11/14/2017, in the principal sum of $365,000.00 (THREE HUNDRED SIXTY-FIVE THOUSAND AND 00/100 DOLLARS), with interest thereon, with the balance of the indebtedness, if not sooner paid, due and payable on 12/1/2019, and all renewals, extensions and modifications thereof; (b) the repayment of any future advances, with interest thereon, made by Lender to Borrower (herein "Future Advances"); (c) the performance of the covenants and agreements of Borrower contained in a Construction Loan Agreement between Lender and Borrower dated N/A, if any, as provided in paragraph 25 hereof; (d) the payment of all other sums, with interest thereon advanced in accordance herewith to protect the security of this Instrument; and (e) the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant, convey and assign the Property (and, if this instrument is on a leasehold, that the ground lease is in full force and effect without modification except as noted above and without default on the part of either lessor or lessee thereunder); and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

UNIFORM COVENANTS.

Borrower and Lender covenant and agree as follows:

1. PAYMENT OF PRINCIPAL AND INTEREST. Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, any prepayment and late charges provided in the Note, and all other sums secured by this Instrument or any other obligation secured by a lien which is senior in priority to this Instrument.

2. FUNDS FOR TAXES, INSURANCE AND OTHER CHARGES. Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3. APPLICATION OF PAYMENTS. Unless applicable law provides otherwise, all payments received by Lender from Borrower under the Note or this Instrument shall be applied by Lender in the following order of priority: (i) any late charges (ii) amounts payable to Lender by Borrower under paragraph 2 hereof if applicable; (iii) interest payable on the Note; (iv) principal of the Note; (v) interest payable on advances made pursuant to paragraph 8 hereof; (vi) principal of advances made pursuant to paragraph 8 hereof; (vii) interest payable on any Future Advance, provided that if more than one Future Advance is outstanding, Lender may apply payments received among the amounts of interest payable on the Future Advances in such order as Lender, in Lender's sole discretion, may determine; (viii) principal of any Future Advance, provided that if more than one Future Advance is outstanding, Lender may apply payments received among the principal balances of the Future Advances in such order as Lender, in Lender's sole discretion, may determine; and (ix) any other sums secured by this Instrument in such order as Lender, at Lender's option, may determine; provided, however, that Lender may, at Lender's option, apply any sums payable pursuant to paragraph 8 hereof prior to interest on and principal of the Note, but such application shall not otherwise affect the order of priority or application specified in this paragraph 3.

4. CHARGES; LIENS. Borrower shall promptly discharge any lien not approved by Lender in writing, and Borrower shall pay, when due, the claims of all persons supplying labor or materials to or in connection with the Property. Without Lender's prior written permission, Borrower shall not allow any lien inferior to this Instrument to be perfected against the Property. Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. HAZARD INSURANCE. Borrower shall keep the improvements now existing or hereafter erected on the Property insured by carriers at all times satisfactory to Lender against loss by fire, hazards included within the term "extended coverage", rent loss and such other hazards, casualties, liabilities and contingencies as Lender (and, if this Instrument is on a leasehold, the ground lease) shall require and in such amounts and for such periods as Lender shall require.

All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in form acceptable to Lender. Lender shall have the right to hold the policies, and Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums. At least thirty days prior to the expiration date of a policy, Borrower shall deliver to Lender a renewal policy in form satisfactory to Lender.

In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to Lender. Borrower hereby authorizes and empowers Lender as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Lender's expenses incurred in the collection of such proceeds; provided however, that nothing contained in this paragraph 5 shall require Lender to incur any expense or take any action hereunder. Borrower further authorizes Lender, at Lender's option, (i) to hold the balance of such proceeds to be used to reimburse Borrower for the cost of reconstruction or repair of the Property if, in its sole discretion, Lender determines that its security will not be materially impaired, or (ii) to apply the balance of such proceeds to the payment of the sums secured by this Instrument, whether or not then due, in the order of application set forth in paragraph 3 hereof (subject, however, to the rights of the lessor under the ground lease if this Instrument is on a leasehold).

If the insurance proceeds are held by Lender to reimburse Borrower for the cost of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition or such other condition as Lender may approve in writing. Lender may, at Lender's option, condition disbursement of said proceeds on Lender's approval of plans and specifications of an architect satisfactory to Lender, contractor's cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and materialmen and such other evidence of costs, percentage completion of construction, application of payments, and satisfaction of liens as Lender may reasonably require. If the insurance proceeds are applied to the payment of the sums secured by this Instrument, any such application of proceeds to principal shall not extend or postpone the due dates of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amounts of such installments. If the Property is sold pursuant to paragraph 27 hereof or if Lender acquires title to the Property, Lender shall have all of the right, title and interest of Borrower in and to any insurance policies and unearned premiums thereon and in and to the proceeds resulting from any damage to the Property prior to such sale or acquisition.

If Borrower obtains earthquake, flood, or any other hazard insurance or any other insurance on the Property, and such insurance is not specifically required by the Lender, then such insurance shall : (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

6. PRESERVATION AND MAINTENANCE OF PROPERTY; LEASEHOLDS. Borrower (i) shall not commit waste or permit impairment or deterioration of the Property, (ii) shall not abandon the Property, (iii) shall restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, or such other condition as Lender may approve in writing, in the event of any damage, injury or loss thereto, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair, (iv) shall keep the Property, including improvements, fixtures, equipment, machinery and appliances thereon, in good repair and shall replace fixtures, equipment, machinery and appliances on the Property when necessary to keep such items in good repair, (v) shall comply with all laws, ordinances, regulations and requirements of any governmental body which are applicable to the Property, (vi) shall provide, if it is a multifamily dwelling, for professional management of the Property by a residential rental property manager satisfactory to Lender pursuant to a contract approved by Lender in writing, unless such requirement shall be waived by Lender in writing, (vii) shall generally operate and maintain the Property in a manner to ensure maximum rentals, if it is a multifamily dwelling, and (viii) shall give notice in writing to Lender of and, unless otherwise directed in writing by Lender, appear in and defend any action or proceeding purporting to affect the Property, the security of this Instrument or the rights or powers of Lender. Neither Borrower nor any tenant or other person shall remove, demolish or alter any improvement now existing or hereafter erected on the Property or any fixture, equipment, machinery or appliance in or on the Property except when incident to the replacement of fixtures, equipment, machinery and appliances with items of like kind.

If this Instrument is on a leasehold, Borrower (i) shall comply with the provisions of the ground lease, (ii) shall give immediate written notice to Lender of any default by lessor under the ground lease or of any notice received by Borrower from such lessor of any default under the ground lease by Borrower, (iii) shall exercise any option to renew or extend the ground lease and give written confirmation thereof to Lender within thirty days after such option becomes exercisable, (iv) shall give immediate written notice to Lender of the commencement of any remedial proceedings under the ground lease by any party thereto and, if required by Lender, shall permit Lender as Borrower's attorney-in-fact to control and act for Borrower in any such remedial proceedings and (v) shall within thirty days after request by Lender obtain from the lessor under the ground lease and deliver to Lender the lessor's estoppel certificate required thereunder, if any. Borrower hereby expressly transfers and assigns to Lender the benefit of all covenants contained in the ground lease, whether or not such covenants run with the land, but Lender shall have no liability with respect to such covenants nor with respect to any other covenants contained in the ground lease.

Borrower shall not surrender the leasehold estate and interests herein conveyed nor terminate or cancel the ground lease creating said estate and interests, and Borrower shall not, without the express written consent of Lender, alter or amend said ground lease. Borrower covenants and agrees that there shall not be a merger of the ground lease, or of the leasehold estate created thereby, with the fee estate covered by the ground lease by reason of said leasehold estate or said fee estate, or any part of either, coming into common

ownership, unless Lender shall consent in writing to such merger; if Borrower shall acquire such fee estate, then this Instrument shall simultaneously and without further action be spread so as to become a lien on such fee estate.

7. USE OF PROPERTY. Unless required by applicable law or unless Lender has otherwise agreed in writing, Borrower shall not allow changes in the use for which all or any part of the Property was intended at the time this Instrument was executed. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Property without Lender's prior written consent.

8. PROTECTION OF LENDER'S SECURITY. If Borrower fails to perform any of the covenants and agreements contained in this Instrument, or if any action or proceeding is commenced which affects the Property or title hereto or the interest of Lender therein, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such action as Lender deems necessary, in its sole discretion, to protect Lender's interest, including, but not limited to, (i) disbursement of attorney's fees, (ii) entry upon the Property to make repairs, (iii) procurement of satisfactory insurance as provided in paragraph 5 hereof, and (iv) if this Instrument is on a leasehold, exercise of any option to renew or extend the ground lease on behalf of Borrower and the curing of any default of Borrower in the terms and conditions of the ground lease.

Any amounts disbursed by Lender pursuant to this paragraph 8, with interest thereon, shall become additional indebtedness of Borrower secured by this Instrument. Unless Borrower and Lender agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note unless collection from Borrower of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law. Borrower hereby covenants and agrees that Lender shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the indebtedness secured hereby. Nothing contained in this paragraph 8 shall require Lender to incur any expense or take any action hereunder.

9. INSPECTION. Lender may make or cause to be made reasonable entries upon and inspections of the Property.

10. BOOKS AND RECORDS. Borrower shall keep and maintain at all times at Borrower's address stated below, or at such other place as Lender may approve in writing, complete and accurate books of account and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases and other instruments which affect the Property. Such books, records, contracts, leases and other instruments shall be subject to examination and inspection at any reasonable time by Lender. Upon Lender's request, Borrower shall furnish to Lender, within one hundred twenty days after the end of each fiscal year of Borrower, a balance sheet, a statement of income and expenses of the Property and a statement of changes in financial position, each in reasonable detail and certified by Borrower and, if Lender shall require, by an independent certified public accountant. Borrower shall furnish, together with the foregoing financial statements and at any other time upon Lender's request, a rent schedule for the Property, certified by Borrower, showing the name of each tenant, and for each tenant, the space occupied, the lease expiration date, the rent payable and the rent paid.

11. CONDEMNATION. Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Lender in writing. Borrower authorizes Lender, at Lender's option, as attorney-in-fact for Borrower, to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any condemnation or other taking of the Property, whether direct or indirect, and to settle or compromise any claim in connection with such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Lender subject, if this Instrument is on a leasehold, to the rights of lessor under the ground lease.

Borrower authorizes Lender to apply such awards, payments, proceeds or damages, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to restoration or repair of the Property or to payment of the sums secured by this Instrument, whether or not then due, in the order of application set forth in paragraph 3 hereof, with the balance, if any, to Borrower. Unless Borrower and Lender otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amount of such installments. Borrower agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Lender may require.

12. BORROWER AND LIEN NOT RELEASED. From time to time, Lender may, at Lender's option, without giving notice to or obtaining the consent of Borrower, Borrower's successors or assigns or of any junior lienholder or guarantors, without liability on Lender's part and notwithstanding Borrower's breach of any covenant or agreement of Borrower in this Instrument, extend the time for payment of said indebtedness or any part thereof, reduce the payments thereon, release anyone liable on any of said indebtedness, accept a renewal note or notes therefor, modify the terms and time of payment of said indebtedness, release from the lien of this Instrument any part of the Property, take or release other or additional security, reconvey any part of the Property, consent to any map or plan of the Property, consent to the granting of any easement, join in any extension or subordination agreement, and agree in writing with

Borrower to modify the rate of interest or period of amortization of the Note or change the amount of the monthly installments payable thereunder. Any actions taken by Borrower to the terms of this paragraph 12 shall not affect the obligation of Borrower or Borrower's successors or assigns to pay the sums secured by this Instrument and to observe the covenants of Borrower contained herein, shall not affect the guaranty of any person, corporation, partnership or other entity for payment of the indebtedness secured hereby, and shall not affect the lien or priority of lien hereof on the Property. Borrower shall pay Lender a reasonable service charge, together with such title insurance premiums and attorney's fees as may be incurred at Lender's option, for any such action if taken at Borrower's request.

13. **FORBEARANCE BY LENDER NOT A WAIVER.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy. The acceptance by Lender of payment of any sum secured by this Instrument after the due date of such payment shall not be a waiver of Lender's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Instrument, nor shall Lender's receipt of any awards, proceeds or damages under paragraphs 5 and 11 hereof operate to cure or waive Borrower's default in payment of sums secured by this Instrument.

14. **ESTOPPEL CERTIFICATE.** Borrower shall within ten days of a written request from Lender furnish Lender with a written statement, duly acknowledged, setting forth the sums secured by this Instrument and any right of set-off, counterclaim or other defense which exists against such sums and the obligations of this Instrument.

15. **UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.** This Instrument is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and Borrower hereby grants Lender a security interest in said items. Borrower agrees that Lender may file this Instrument, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Instrument or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, upon Lender's request, any financing statements, as well as extensions, renewals and amendments thereof, and reproductions of this Instrument in such form as Lender may require to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in said items, including replacements and additions thereto.

Upon Borrower's breach of any covenant or agreement of Borrower contained in this Instrument, including the covenants to pay when due all sums secured by this Instrument, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in paragraph 27 of this Instrument as to such items. In exercising any of said remedies, Lender may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in paragraph 27 of this Instrument.

16. **LEASES OF THE PROPERTY.** As used in this paragraph 16, the word "lease" shall mean "sublease" if this Instrument is on a leasehold. Borrower shall comply with and observe Borrower's obligations as landlord under all leases of the Property or any part thereof. Borrower will not lease any portion of the Property for non-residential use except with the prior written approval of Lender. Borrower, at Lender's request, shall furnish Lender with executed copies of all leases now existing or hereafter made of all or any part of the Property, and all leases now or hereafter entered into will be in form and substance subject to the approval of Lender. All leases of the Property shall specifically provide that such leases are subordinate to this Instrument; that the tenant attorns to Lender, such attornment to be effective upon Lender's acquisition of title to the Property; that the tenant agrees to execute such further evidences of attornment as Lender may from time to time request; that the attornment of the tenant shall not be terminated by foreclosure; and that Lender may, at Lender's option, accept or reject such attornments. Borrower shall not, without Lender's written consent, execute, modify, surrender or terminate, either orally or in writing, any lease now existing or hereafter made of all or any part of the Property providing for a term of one year or more, permit an assignment or sublease of such a lease without Lender's written consent, or request or consent to the subordination of any lease of all or any part of the Property to any lien subordinate to this Instrument. If Borrower becomes aware that any tenant proposes to do, or is doing, any act or thing which may give rise to any right of set-off against rent, Borrower shall (i) take such steps as shall be reasonably calculated to prevent the accrual of any right to a set-off against rent, (ii) notify Lender thereof and of the amount of said set-off, and (iii) within ten days after such accrual, reimburse the tenant who shall have acquired such right to set-off or take such other steps as shall effectively discharge such set-off and as shall assure that rents thereafter due shall continue to be payable without set-off or deduction.

Upon Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all leases now existing or hereafter made of all or any part of the Property and all security deposits made by tenants in connection with such leases of the Property. Upon assignment by Borrower to Lender of any leases of the Property, Lender shall have all of the rights and powers possessed

by Borrower prior to such assignment and Lender shall have the right to modify, extend or terminate such existing lease and to execute new leases, in Lender's sole discretion.

17. REMEDIES CUMULATIVE. Each remedy provided in this Instrument is distinct and cumulative to all other rights or remedies under this Instrument or afforded by law or equity, and may be exercised concurrently, independently, or successively, in any order whatsoever.

18. ACCELERATION IN CASE OF BORROWER'S INSOLVENCY. If Borrower shall voluntarily file a petition under the Federal Bankruptcy Act, as such Act may from time to time be amended, or under any similar or successor Federal statute relating to bankruptcy, insolvency, arrangements or reorganizations, or under any state bankruptcy or insolvency act, or file an answer in an involuntary proceeding admitting insolvency or inability to pay debts, or if Borrower shall fail to obtain a vacation or stay of involuntary proceedings brought for the reorganization, dissolution or liquidation of Borrower, or if Borrower shall be adjudged a bankrupt, or if a trustee or receiver shall be appointed for Borrower or Borrower's property, or if the Property shall become subject to the jurisdiction of a Federal bankruptcy court or similar state court, or if Borrower shall make an assignment for the benefit of Borrower's creditors, or if there is an attachment, execution or other judicial seizure of any portion of Borrower's assets and such seizure is not discharged within ten days, then Lender may, at Lender's option, declare all of the sums secured by this Instrument to be immediately due and payable without prior notice to Borrower, and Lender may invoke any remedies permitted by paragraph 27 of this Instrument. Any attorney's fees and other expenses incurred by Lender in connection with Borrower's bankruptcy or any of the other aforesaid events shall be additional indebtedness of Borrower secured by this Instrument pursuant to paragraph 8 hereof.

19. TRANSFERS OF THE PROPERTY OR INTERESTS IN BORROWER; ASSUMPTION; FURTHER ENCUMBRANCES. In the event that the Property, or any part thereof or interest therein, shall be sold (including any installment sales agreement), transferred, conveyed, disposed of, alienated, hypothecated, leased (except to tenants of space in the Improvements in accordance with the provisions of paragraph 16 hereof), assigned, pledged, mortgaged, further encumbered or otherwise transferred or any ownership or beneficial interest in Borrower or any guarantor (directly or indirectly through constituent parties) shall be sold, transferred, conveyed, disposed of, alienated, hypothecated, assigned, pledged, or encumbered, including but not necessarily limited to any lien or encumbrance subordinated to the note or to this deed of trust without the prior written consent of Lender being first obtained, which consent may be withheld in Lender's sole discretion, then the same shall constitute an Event of Default hereunder and Lender may, at Lender's option, declare all of the sums secured by this Instrument to be immediately due and payable, and Lender may invoke any remedies permitted by paragraph 27 of this Instrument. Notwithstanding the foregoing, Lender's prior written consent shall not be required in the event of the following:

(a) transfers by devise or descent or by operation of law upon the death of a joint tenant or a partner;

(b) sales or transfers when the transferee's creditworthiness and management ability are satisfactory to Lender, consent for which may be withheld in the lender's sole and absolute discretion and the transferee has executed, prior to the sale or transfer, a written assumption agreement containing such terms as Lender may require, including, if required by Lender, an increase in the rate of interest payable under the Note or an assumption fee to be determined by Lender;

(c) the grant of a leasehold interest in a part of the Property of one year or less (or such longer lease term as Lender may permit by prior written approval) not containing an option to purchase (except any interest in the ground lease, if this Instrument is on a leasehold);

(d) sales or transfers of beneficial interests in Borrower, provided that such sales or transfers, together with any prior sales or transfers of beneficial interests in Borrower, but excluding sales or transfers under paragraphs (a) and (b) above, do not result in more than 49% of the beneficial interests in Borrower having been sold or transferred since commencement of interest payments under the Note; and

(e) sales or transfers of fixtures or any personal property pursuant to the first paragraph of paragraph 6 hereof.

20. NOTICE. Except for any notice required under applicable law to be given in another manner, any notice to Borrower provided for in this Instrument or in the Note shall be given by mailing such notice by certified mail addressed to Borrower at Borrower's address stated above or at such other address as Borrower may designate by notice to Lender as provided herein, and any notice to Lender shall be given by certified mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Instrument or in the Note shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

21. SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; AGENTS; CAPTIONS. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 19 hereof. All covenants and agreements of Borrower shall be joint and several. In exercising any rights hereunder or taking any actions provided for herein, Lender may act through its employees, agents or independent contractors, as authorized by Lender. The captions and headings of the paragraphs of this Instrument are for convenience only and are not to be used to interpret or define the provisions hereof.

**22. DEED OF TRUST; GOVERNING LAW; SEVERABILITY.** This form of instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property and related fixtures and personal property. This Instrument shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision of this Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Instrument or the Note which can be given effect without the conflicting provisions, and to this end the provisions of this Instrument and the Note are declared to be severable. In the event that any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any charge provided for in this Instrument or in the Note, whether considered separately or together with other charges levied in connection with this Instrument and the Note, violates such law, and Borrower is entitled to the benefit of such law, such charge is hereby reduced to the extent necessary to eliminate such violation. The amounts, if any, previously paid to Lender in excess of the amounts payable to Lender pursuant to such charges as reduced shall be applied by Lender to reduce the principal of the indebtedness evidenced by the Note. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all indebtedness which is secured by this Instrument or evidenced by the Note and which constitutes interest, as well as all other charges levied in connection with such indebtedness which constitute interest, shall be deemed to be allocated and spread over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest computed thereby is uniform throughout the stated term of the Note.

**23. WAIVER OF STATUTE OF LIMITATIONS.** Borrower hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce the Note or any other obligation secured by this Instrument.

**24. ORDER OF REMEDIES AND SATISFACTION OF INDEBTEDNESS; WAIVER OF MARSHALING.** Notwithstanding the existence of any other security interests in the Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. Lender shall have the right to determine the order in which any or all portions of the indebtedness secured hereby are satisfied from the proceeds realized upon the exercise of the remedies provided herein. Borrower, any party who consents to this Instrument, and any party who now or hereafter acquires a security interest in the Property and who has actual or constructive notice hereof hereby waive any and all right to require the marshaling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

**25. CONSTRUCTION LOAN PROVISIONS.** Borrower agrees to comply with the covenants and conditions of the Construction Loan Agreement, if any, which is hereby incorporated by reference in and made a part of this Instrument. All advances made by the Lender pursuant to the Construction Loan Agreement shall be indebtedness of Borrower secured by this Instrument, and such advance may be obligatory as provided in the Construction Loan Agreement. All sums disbursed by Lender prior to completion of the improvements to protect the security of this Instrument up to the principal amount of the Note shall be treated as such disbursements pursuant to the Construction Loan Agreement. All such sums shall bear interest from the date of disbursement at the rate stated in the Note, unless collection from Borrower of interest at such rate would be contrary to applicable law in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law and shall be payable upon notice from Lender to Borrower requesting payment therefor.

From time to time as Lender deems necessary to protect Lender's interests, Borrower shall, upon request of Lender, execute and deliver to Lender, in such form as Lender shall direct, assignments of any and all rights or claims which relate to the construction of the Property and which Borrower may have against any party supplying or who has supplied labor, materials or services in connection with construction of the Property. In case of breach by Borrower of the covenants and conditions of the Construction Loan Agreement, Lender, at Lender's option, with or without entry upon the Property, (i) may invoke any of the rights or remedies provided in the Construction Loan Agreement, (ii) may accelerate the sums secured by this Instrument and invoke those remedies provided in paragraph 27 hereof, or (iii) may do both. If, after the commencement of interest payments due under the Note, the Note and this Instrument are sold by Lender, from and after such sale the Construction Loan Agreement shall cease to be a part of this Instrument and Borrower shall not assign any right of set-off, counterclaim or other claim or defense arising out of or in connection with the Construction Loan Agreement against the obligations of the Note and this Instrument.

**26. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** As part of the consideration for the indebtedness evidenced by the Note, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues of the Property, including those now due, past due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Property, regardless of to whom the rents and revenues of the Property are payable. Borrower hereby authorizes Lender or Lender's agents to collect the aforesaid rents and revenues and hereby agrees to direct each tenant of the Property to pay such rents to Lender or Lender's agents; provided, however, that prior to written notice given by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower, to apply the rents and revenues so collected to the sums secured by this Instrument in the order provided in paragraph 3 hereof with the balance, so long as no such breach has occurred, to the account of Borrower, it being intended by Borrower and Lender that this assignment of rents constitutes an absolute assignment and not an assignment for additional security only. Upon delivery of written notice by Lender to Borrower of the breach by

Borrower of any covenant or agreement of Borrower in this Instrument, and without the necessity of Lender entering upon and taking and maintaining full control of the Property in person, by agent or by a court appointed receiver, Lender shall immediately be entitled to possession of all rents and revenues of the Property as specified in this paragraph 26 as the same become due and payable, including but not limited to rents then due and unpaid, and all such rents shall immediately upon delivery of such notice be held by Borrower as trustee for the benefit of Lender only; provided, however, that the written notice by Lender to Borrower of the breach by Bonower shall contain a statement that Lender exercises its rights to such rents. Borrower agrees that commencing upon delivery of such written notice of Borrower's breach by Lender to Borrower, each tenant of the Property shall make such rents payable to and pay such rents to Lender or Lender's agents on Borrower's or Lender's written demand to each tenant therefor, delivered to each tenant personally, by mail or by delivering such demand to each rental unit, without any liability on the part of said tenant to inquire further as to the existence of a default by Borrower.

Borrower hereby covenants that Borrower has not executed any prior assignment of said rents, that Borrower has not performed, and will not perform, any act or has not executed, and will not execute, any instrument which would prevent Lender from exercising its rights under this paragraph 26, and that at the time of execution of this Instrument there has been no anticipation or prepayment of any of the rents of the Property for more than two months prior to the due dates of such rents. Borrower covenants that Borrower will not hereafter collect or accept payment of any rents of the Property more than two months prior to the due dates of such rents. Borrower further covenants that Borrower will execute and deliver to Lender such further assignments of rents and revenues of the Property as Lender may from time to time request.

Upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Lender may in person, by agent or by a court appointed receiver, regardless of the adequacy of Lender's security, enter upon and take and maintain full control of the Property in order to perform all acts necessary and appropriate for the operation and maintenance thereof including, but not limited to, the execution, cancellation or modification of leases, the collection of all rents and revenues of the Property, the making of repairs to the Property and the execution or termination of contracts providing for the management or maintenance of the Property, all on such terms as are deemed best to protect the security of this Instrument. In the event Lender elects to seek the appointment of a receiver for the Property upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Borrower hereby expressly consents to the appointment of such receiver. Lender or the receiver shall be entitled to receive a reasonable fee for so managing the Property.

All rents and revenues collected subsequent to delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument shall be applied first to the costs, if any, of taking control of and managing the Property and collecting the rents, including, but not limited to, attorneys' fees, receivers' fees, premiums on receivers' bonds, costs of repairs to the Property, premiums on insurance policies, taxes, assessments and other charges on the Property, and the costs of discharging any obligation or liability of Borrower as lessor or landlord of the Property, and then to the sums secured by this Instrument. Lender or the receiver shall have access to the books and records used in the operation and maintenance of the Property and shall be liable to account only for those rents actually received. Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Property, by reason of anything done or left undone by Lender under this paragraph 26.

If the rents of the Property are not sufficient to meet the costs, if any, of taking control of and managing the Property and collecting the rents, any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by this Instrument pursuant to paragraph 8 hereof. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law.

Any entering upon and taking and maintaining of control of the Property by Lender or the receiver and any application of rents as provided herein shall not cure or waive any default hereunder or invalidate any other right or remedy of Lender under applicable law or provided herein. This assignment of rents of the Property shall terminate at such time as this Instrument ceases to secure indebtedness held by Lender.

NON-UNIFORM COVENANTS.

Borrower and Lender further covenant and agree as follows:

27. DEFAULT; RIGHTS AND REMEDIES; TRUSTEE

A. DEFAULT. Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Deed of Trust:

(1) **Default on Indebtedness.** Failure of Trustor to make any payment when due on the indebtedness secured by this Instrument ("Indebtedness").

(2) **Default on Other Payments.** Failure of Trustor within the time required by this Instrument to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien. Taxes shall be paid no later than 10 (ten) days prior to the tax delinquency date.

(3) **Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Instrument, the Note or in any of the other agreements between Trustor and Lender relating to this Instrument and the indebtedness secured hereunder, including without limitation, any applicable Construction Loan Agreement ("Related Documents") within 10 (ten) days written notice.

(4) **Breaches.** Any warranty, representation or statement made or furnished to Lender by or on behalf of Trustor under this Instrument, the Note or the Related Documents is, or at the time made or furnished was, false in any material respect.

(5) **Insolvency.** The insolvency of Trustor, appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor, or the dissolution or termination of Trustor's existence as a going business (if Trustor is a business). Except to the extent prohibited by federal law or California law, the death of Trustor (if Trustor is an individual) also shall constitute an Event of Default under this Instrument.

(6) **Foreclosure, Forfeiture, etc.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any of the Property. However, this subsection shall not apply in the event of a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the foreclosure or forfeiture proceeding, provided that Trustor gives Lender written notice of such claim and furnishes reserves or a surety bond for the claim satisfactory to Lender.

(7) **Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

(8) **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or such Guarantor dies or becomes incompetent or any Guarantor revokes any guaranty of the Indebtedness.

**B. RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Trustee or Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

(1) **Foreclosure by Sale.** Upon an Event of Default under this Instrument, Beneficiary (Lender) may declare the entire Indebtedness secured by this Instrument immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Deed of Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all unpaid sums secured by this Instrument in such order as Beneficiary, in Beneficiary's sole discretion, directs, with accrued interest at the amount established under the Note or, if less, such amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(2) **Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclosure by judicial foreclosure in accordance with and to the full extent provided by California Law.

(3) **Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender

or the purchaser of the Property and shall, at Lender's option, either (a) pay a reasonable rental for the use of the Property, or (b) vacate the Property immediately upon the demand of the Lender.

(4) **Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Instrument or the Note or by law.

(5) **Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Instrument, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal or in arbitration. Whether or not any court action is involved, all reasonable expenses incurred by Lender which in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records obtaining title reports (including foreclosure reports), surveyors' reports, appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

(6) **Protection of Lender's Security.** If Lender's interest in the Property is materially affected by any proceeding under the
Bankruptcy Laws of the United States, Lender, at Lender's option, may take such action, including seeking relief under the Bankruptcy Laws, and disburse such sums, including reasonable attorney's fees, as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or Applicable Law. Any amounts disbursed by Lender pursuant to this Section 27. B. (6) , with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this Section 27. B. (6) shall require Lender to incur any expense or take any action hereunder.

(7) **Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

C. **POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust.

(1) **Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

(2) **Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

(3) **Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

28. **RECONVEYANCE.** Upon payment of all sums secured by this Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Instrument and all notes evidencing indebtedness secured by this Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled thereto. Such person or persons shall pay Trustee's reasonable costs incurred in so reconveying the Property.

29. **SUBSTITUTE TRUSTEE.** Lender, at Lender's option, may from time to time, by an instrument in writing, appoint a successor trustee to any Trustee appointed hereunder, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. Said instrument shall contain the name of the original Lender, Trustee and Borrower hereunder, the book and page where this Instrument is recorded, and the name and address of the successor trustee. If notice of default has been recorded, this power of substitution cannot be exercised until after the costs, fees and expenses of the then acting Trustee have been paid to such Trustee who shall endorse receipt thereof upon such instrument of substitution. The procedure herein provided for substitution of trustee shall govern to the exclusion of all other provisions for substitution, statutory or otherwise.

30. **REQUEST FOR NOTICES.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower at Borrower's address stated above.

31. **STATEMENT OF OBLIGATION.** Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California

32. **SPOUSE'S SEPARATE PROPERTY.** Any Borrower who is a married person expressly agrees that recourse may be had against his or her separate property.

**Borrower and Lender further covenant and agree as follows:**

33. **RIDERS TO THIS SECURITY INSTRUMENT.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

34. **MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

A. **Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

B. **Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

C. **Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

E. **Applicable Law.** This Deed of Trust has been delivered to Lender and accepted by Lender in the State of California. This Deed of Trust shall be governed by and construed in accordance with the laws of the State of California.

F. **Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

G. **Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

H. **Multiple Parties; Corporate Authority.** All obligations of Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor. This means that each of the persons signing below is responsible for all obligations in this Deed of Trust.

I. **Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of the Deed of Trust in all other respects shall remain valid and enforceable.

J. **Successors and Assigns.** Subject to the limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the indebtedness by way of forbearance or extension without releasing Trustor from the obligations of the Deed of Trust or liability under the indebtedness.

K. **Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

L. **Waivers and Consents.** Lender shall not be deemed to have waived any rights under this Deed of Trust (or under the Related Documents) unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Deed of Trust shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or any of

Trustor's obligations as to any future transactions. Whenever consent by Lender is required in this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

**M. Loan arranged by Real Estate Broker.** This loan was arranged by **Pacific Private Money, Inc.** a California Bureau of Real Estate Licensed Brokerage, license #01897444 and NMLS license #945582 and is thus exempt from usury laws pursuant to Section 1 of Article 15 of the California Constitution.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants by contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

David D. Lee, an unmarried man

| | | |
|---|---|---|
| Borrower    David D. Lee | Date | Borrower    Date |

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which the acknowledgment, or jurat is attached, and not the truthfulness, accuracy, or validity of the document.

State of California

County of _Los Angeles_

On _Nov. 14, 2017_ before me, _Daniel Borquez, Notary Public_

personally appeared _David D. Lee_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal.

Signature _____                                    (Seal)



DANIEL BORQUEZ
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMMISSION # 2077916
MY COMM. EXPIRES AUG. 22, 2018

---

## REQUEST FOR FULL RECONVEYANCE

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

_____        _____        _____        _____
Signature of Beneficiary (the "LENDER")        Date        Signature of Beneficiary (the "LENDER")        Date

When recorded, mail to

Att: _____

## HAZARDOUS SUBSTANCE RIDER TO DEED OF TRUST

That certain Deed Of Trust dated **11/14/2017** between **David D. Lee, an unmarried man** therein and herein called "Trustor", **Pacific Private Money, Inc.**, therein called "Trustee" and **YCCS LLC, a Hawaiian limited liability company** therein and herein called "Beneficiary" is supplemented in the following particulars only:

1.  Trustor represents to Beneficiary that, to the best of Trustor's knowledge after due and diligent inquiry, no hazardous or toxic waste substances are being stored on the property or any adjacent property nor have such substances been stored or used on the property or any adjacent property prior to Trustor's ownership, possession or control of the property. Trustor agrees to provide written notice to Beneficiary immediately upon Trustor's becoming aware that the property or any adjacent property is being or has been contaminated with hazardous or toxic waste or substances. Trustor will not cause or permit any activities on the property that directly or indirectly could result in the property or any other property's being contaminated with hazardous or toxic waste or substances. For the purpose of this Deed of Trust, "hazardous" or "toxic waste" or "substances" means any substance or material defined or designated as hazardous or toxic wastes, hazardous or toxic material, a hazardous, toxic, or radioactive substance, or other similar term by any applicable federal, state, or local statute, regulation, or ordinance now or hereafter in effect.

2.  Trustor shall promptly comply with all statutes, regulations, and ordinances, and with all orders, decrees, or judgments of governmental authorities or courts having jurisdiction, relating to the use, collection, storage, treatment, control, removal, or cleanup of hazardous toxic waste or substances in, on, or under the property or in, on, or under any adjacent property that becomes contaminated with hazardous or toxic waste or substances as a result of construction, operations, or other activities on, or the contamination of, the property, or incorporated in any improvements thereon, at Trustor's expense. Beneficiary may, but is not obliged to, enter upon the property and take such actions and incur such costs and expenses to effect such compliance as it deems advisable to protect its interest as Beneficiary; and whether or not Trustor has actual knowledge of the existence of hazardous or toxic waste or substances in, on, or under the property or any adjacent property as of the date hereof, Trustor shall reimburse Beneficiary on demand for the full amount of all costs and expenses incurred by Beneficiary prior to Beneficiary's acquiring title to the property through foreclosure or deed in lieu of foreclosure, in connection with such compliance activities.

David D. Lee, an unmarried man.

| Borrower    David D. Lee | Date 11/14/17 | Borrower | Date |

Order No. 100-1904973-62

## Exhibit "A"

Lot 42 of Tract No. 4464, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 48, Page 51 of Maps, in the Office of the County Recorder of Los Angeles County, California.

Assessor's Parcel Numbers(s):  5089-020-012

# EXHIBIT - 2

# NOTE SECURED BY A DEED OF TRUST

Loan Number: 2017-0925                    November 14, 2017                    LOS ANGELES, California
APN # 5089-020-012

**840 South Dunsmuir Avenue Los Angeles CA 90036**
Property Address

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay $365,000.00 (*THREE HUNDRED SIXTY-FIVE THOUSAND AND 00/100 DOLLARS*), (this amount will be called "principal"), plus interest, to the order of **YCCS LLC, a Hawaiian limited liability company** (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

## 2. INTEREST

I will pay interest at a yearly rate as described in paragraph 3 below.
Interest commences on **date Lender funds are received**, and if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.
Interest will be charged in arrears on unpaid principal until the full amount of principal has been paid.
I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

## 3. PAYMENTS

My payments are ☑ Interest Only   ☐ Fully Amortized   ☐ Other
I will make my payments each month as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 23 | Monthly beginning January 1, 2018 | 11.50% | $3,497.92 |
| 1 | December 1, 2019 | 11.50% | $368,497.92 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on *12/01/2019* ("**Due Date**") I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.
I will make my payments payable to *Pacific Private Money, Inc., 1555 Grant Avenue Novato CA 94945*, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

## 4. EXTENSION OF TERM UPON MATURITY

Borrower does not have the unilateral right to extend the term of this loan beyond the loan Due Date. However, on the condition that Borrower is in Good Standing (defined below), lender may, in its sole determination, agree to grant an extension of time on the loan Due Date. In the event of Lender's approval, the extension of time allowed shall be for up to two 90-day extensions at a cost of processing fee of $1,495.00 plus One point (1.00%) for each 90 days (the "**Extension Fee**"), calculated on the outstanding principal loan balance. The Extension Fee shall be charged automatically, without notice, and shall be added to Lender's demand upon payoff. The Extension Fee shall be due and payable whether or not Lender formally approves the extension.
For this purpose, Good Standing is defined as 1) all monthly payments have been made on time as agreed, and 2) property taxes and property insurance are paid current.

Borrower's Initials

## 5. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge For Overdue Payments. If I do not pay the full amount of each monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.000%** of my overdue payment or U.S. $349.80, whichever is more. I will pay this late charge only once on any late payment.
In the event a balloon payment is delinquent more than 10 days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.
I agree that the late charge payable pursuant to this paragraph represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional expenses Note Lender will incur by reason of such late payment. The late charge is payable in addition to, and not in lieu of, any interest payable at the Default Rate pursuant to Paragraph 4(B).

*Pacific Private Money, Inc. Cal BRE #01897444 ; NMLS #945582*
PPM Note

2017-0925 / LEE
Page 1 of 4

**(B) Default and Acceleration**

I unconditionally agree NOT to defer or accrue any interest on any note, mortgage or lien that is senior to the Deed of Trust securing this loan. In the event I allow any interest to accrue or be deferred of an existing Note, which is in superior lien position, then such an event, whether by omission or commission, shall be deemed a material default under the Promissory Note and Deed of Trust, and Lender shall be entitled to all remedies available to Lender under said Note, Deed of Trust and any other remedies available at law or in equity. If the superior Note accelerates the maturity date or calls the note for any reason, then this Note shall become immediately due and payable.

Borrower's Initials

If I do not pay the full amount of each monthly payment due under this Note by the date stated in Section 3 above, I will be in default, and the Note Lender may demand that I pay immediately all amounts that I owe under this Note.

Even if, at a time when I am in default, the Note Lender does not require me to pay immediately in full as described above, the Note Lender will still have the right to do so if I am in default at a later time.

In the event of a default under the terms of this Note, including but not limited to: (a) non-payment of any installment of principal or interest within Ten (10) days of its designated due date; (b) failure to pay insurance premiums or property taxes when they become due; (c) transfer of title; or (d) that this Note is not paid in full on or before the due date, then any unpaid principal balance of the loan at the time of default shall bear interest at the rate of FIVE percent (5.000%) (the "Default Rate") above the herein stated note rate, automatically and without notice, from the time of default, until this Note has been paid in full, or until the specific default has been cured. If I do not pay the full amount of the outstanding balance of the loan at maturity (the "balloon balance" referenced in Paragraph 3 above), the Default Rate will automatically apply to all interest accrued thereafter without demand by the Note Lender. I further agree that the increase in the rate of interest payable under this Note to the default rate represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional cost and expense Note Lender will incur by reason of my delinquent payment and the additional compensation Note Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan.

Failure to Pay at Maturity Date - Default Rate. Should Borrower fail to pay all sums due under this Note at the Maturity Date set forth above, the unpaid principal shall bear interest at the herein stated rate set forth above plus FIVE percent (5.000%) ("Default Rate"), automatically and without notice."

**(C) Payment of Note Lender's Costs and Expenses**

If the Note Lender has required me to pay immediately in full as described above, the Note Lender will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees and expert's fees. A default upon any interest of any Note Lender shall be a default upon all interests.

**(D) Payment with Good Funds.** If any check used to make any payment is returned unpaid by my bank, I agree to pay a Returned Check charge of $50.00 plus any late charge that may become due because of the returned check. I further agree that if any payment is made by a personal check that is not honored by my bank, at the option of the Note Lender, to make all future payments by Cashier's Check, Money Order or other certified funds.

**(E) Advancing Fee.** For any advance made to senior encumbrances, property taxes, insurance premiums, and/or other obligations to protect the Note Lender's interest in this Note, including, but not limited to, attorneys' fees and costs, there will be an Advancing fee of $50.00 for each such advance. Advances will bear interest at the same rate that is charged on the principal of this Note from the date of advancement to such date when that certain advance and advance fee is paid in full in the form of a Cashier's Check, Money Order, or other certified funds.

**6.    BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT FEES**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows:

Borrower hereby agrees:

Beneficiary is guaranteed to receive a minimum of SIX (6) months interest based on the original principal balance together with any odd days interest due or paid through escrow.

For an amount of  $20,987.32, plus any odd days interest paid through escrow.

In the event Borrower wishes to prepay or payoff the Loan prior to 06/01/2018, Borrower agrees to pay Lender the difference between the interest previously received by Lender and the amount that was guaranteed and agreed to listed above. There shall be no prepayment penalty for any prepayment(s) due that are made after 06/01/2018.

Borrower's Initials

**7. WAIVER OF STATUTORY REGULATIONS**

Pacific Private Money, Inc. Cal BRE #01897444 ; NMLS #945592
PPM Note

2017-0925 / LEE
Page 2 of 4

By initialing below, I waive any rights to and under the California Civil Code 2954.10 or otherwise to prepay this Note, in whole or in part, without a prepayment penalty as described in Paragraph 5 hereinabove. I further acknowledge that prepayment of this Note may result in Note Lender's incurring additional losses, costs, expenses, and liabilities, including, but not limited to, lost revenue and lost profits. I, therefore, agree to pay the prepayment penalty as described in Paragraph 5 hereinabove, if any principal amount is prepaid, whether voluntarily, or by reason of an acceleration of the Maturity Date on default (including, but not limited to, acceleration on any transfer or conveyance of any right, title, or interest in the Mortgaged Property (as defined in Paragraph 9 below) giving Note Lender the right to accelerate the maturity of this Note as provided in the Security Instrument, as defined in Paragraph 9 below).

**I AGREE THAT LENDER'S WILLINGNESS TO OFFER TO ME THE INTEREST RATE DESCRIBED ABOVE IS SUFFICIENT AND INDEPENDENT CONSIDERATION, GIVEN INDIVIDUAL WEIGHT BY LENDER, FOR THIS WAIVER. I FURTHER UNDERSTAND THAT LENDER WOULD NOT OFFER SUCH AN INTEREST RATE TO ME ABSENT THIS WAIVER.**

Borrower's Initials

**8. OTHER BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**9. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

**10. THIS NOTE IS SECURED BY A DEED OF TRUST**

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note against **840 South Dunsmuir Avenue Los Angeles CA 90036**, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, enter into a contract of sale, lease for a term of more than one (1) year (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, including the creation of a lien or encumbrance subordinate to this Deed of Trust, but excluding a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

All of the agreements, conditions, covenants, provisions and stipulations contained in the Deed of Trust and the loan documents which are to be kept and performed by Borrower are hereby made a part of this Note to the same extent and with the same force and effect as if they were fully set forth herein, and Borrower covenants and agrees to keep and perform them, or cause them to be kept and performed, strictly in accordance with their terms. If any Borrower is not also a trustor of the Deed of Trust, such Borrower makes all covenants, representations, warranties and indemnities contained in the Deed of Trust, jointly and severally with the trustor of the Deed of Trust to and for the benefit of Lender.

Borrower acknowledges and agrees that as further set forth in Section 19 of the Deed of Trust, the provisions of which are incorporated herein, Lender shall have the right to accelerate the indebtedness evidenced by this Note in the event that the Property or any part thereof or interest therein is sold (including any installment sales agreement), conveyed, disposed of, alienated, hypothecated, leased, assigned, pledged, mortgaged, further encumbered or otherwise transferred, or Borrower is divested of its title to the Property or any interest therein, in any manner or way, whether voluntarily or involuntarily, without the prior written consent of Lender being first obtained, which consent may be withheld in Lender's sole discretion. Furthermore, for the purposes of the foregoing, the sale, conveyance, transfer, disposition, alienation, hypothecation, pledge or encumbering (whether voluntarily or involuntarily) of all or any portion of the ownership interest in (or, directly or indirectly through constituent parties, any of the ultimate beneficial ownership interest in) Borrower shall be deemed to be a transfer of an interest in the Property, subject to the limited exceptions set forth in Section 19 of the Deed of Trust.

## 11. USURY SAVINGS CLAUSE

The terms of this Loan are hereby expressly limited so that in no contingency or event whatsoever shall the amount paid or agreed to be paid to Lender for the use, forbearance, or detention of the money to be loaned exceed the maximum amount or rate permissible under applicable law. If, for any reason whatsoever, fulfillment of any provision of this Loan, at the time fulfillment of such provision shall be due, is prohibited by law, the obligation to be fulfilled shall be reduced to the maximum not so prohibited; and if for any reason whatsoever Lender should ever receive as interest an amount which would exceed the highest lawful rate, such amount as would be excessive interest shall be applied to the reduction of the principal of the Note and not to the payment of interest. This provision shall control every other provision contained in the Loan Documents.

## 12. LOAN ARRANGED BY REAL ESTATE BROKER

This loan was arranged by **Pacific Private Money, Inc.** a California Bureau of Real Estate Licensed Brokerage, license #01897444 and NMLS license #945582 and is thus exempt from usury laws pursuant to Section 1 of Article 15 of the California Constitution.

## 13. RIGHT TO ASSIGN

The holder of this Note shall have the right to sell, assign, or otherwise transfer, either in part or in its entirety, this Note, the Deed of Trust, and other instruments evidencing or securing the indebtedness of this Note to one or more investors without Borrower's consent.

## 14. GENERAL PROVISIONS

(A) Time is of the essence of this Note.

(B) This Note may not be changed, amended, or modified except by a further written agreement between Borrower and Note Lender.

(C) Any failure of Note Lender to exercise any of its rights under this Note shall not constitute a waiver of those rights by Note Lender or a waiver by Note Lender of any other rights.

(D) This Note and the rights and duties of Borrower and Note Lender shall be governed by the laws of the State of California for all purposes.

(E) Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but, if any provision of this Note shall be prohibited or invalid under applicable law, such provisions shall be ineffective only to the extent of such prohibitions or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Note.

**BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants by contained in this Financial Instrument and in any addendums or rider(s) executed by Borrower.**

David D. Lee, an unmarried man

| _____ | _____ | _____ | _____ |
| Borrower   David D. Lee | Date | Borrower | Date |

---

## ASSIGNMENT OF NOTE
## SECURED BY A DEED OF TRUST

Date: _____

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:

all beneficial interest under the within Note, without recourse, and Deed of Trust securing same

| _____ | _____ |
| _____ | _____ |

**DO NOT DESTROY THIS NOTE:** When paid it must be surrendered to the Trustee, together with the Deed of Trust securing same for cancellation, before reconveyance will be made.

# EXHIBIT - 3

Fill in this information to identify your case and this filing:

| | |
|---|---|
| Debtor 1 | David Lee |
| | First Name · Middle Name · Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name · Middle Name · Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION |
| Case number | 2:19-bk-10119-RK |

☐ Check if this is an amended filing

## Official Form 106A/B
## Schedule A/B: Property                                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:   Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.

☑ Yes. Where is the property?

1.1

**840 S Dunsmuir Ave**
Street address, if available, or other description

**Los Angeles     CA     90036-4732**
City             State   ZIP Code

**Los Angeles**
County

What is the property? Check all that apply
☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

Who has an interest in the property? Check one
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

**Debtor's residence**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on Schedule D: Creditors Who Have Claims Secured by Property.

Current value of the entire property? **$1,690,000.00**

Current value of the portion you own? **$625,000.00**

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee Simple**

☐ Check if this is community property (see instructions)

| Fill in this information to identify your case: | | | |
|---|---|---|---|
| Debtor 1 | David Lee | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION | | |
| Case number (if known) | 2:19-bk-10119-RK | | |

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt

4/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory limit.

**Part 1:    Identify the Property You Claim as Exempt**

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ■ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property. | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| 840 S Dunsmuir Ave<br>Los Angeles CA, 90036-4732<br>**County** : Los Angeles<br>Line from *Schedule A/B*: **1.1** | $625,000.00 | ■ $100,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | CCCP § 704.730(a)(2) |
| Hyundai<br>Genesis<br>2014<br>40000<br>Line from *Schedule A/B*: **3.1** | $6,918.50 | ■ $3,050.00<br>☐ 100% of fair market value, up to any applicable statutory limit | CCCP § 704.010 |

3. **Are you claiming a homestead exemption of more than $160,375?**
   (Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.)

   ■ No

   ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

       ☐  No

       ☐  Yes

Software Copyright (c) 2019 CINGroup - www.cincompass.com

**Fill in this information to identify your case:**

Debtor 1: **David Lee**
First Name / Middle Name / Last Name

Debtor 2
(Spouse if, filing): First Name / Middle Name / Last Name

United States Bankruptcy Court for the: CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

Case number: **2:19-bk-10119-RK**
(if known)

☐ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property
12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. Do any creditors have claims secured by your property?
☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.
☑ Yes. Fill in all of the information below.

## Part 1:  List All Secured Claims

2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor 's name.

| | | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion if any |
|---|---|---|---|---|
| **2.1** BSI Financial Services<br>Creditor's Name<br><br>314 S Franklin St Fl 2<br>Titusville, PA 16354-2168<br>Number, Street, City, State & Zip Code<br><br>Who owes the debt? Check one.<br>☑ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br>☐ Check if this claim relates to a community debt<br><br>Date debt was incurred 01/29/2016 | Describe the property that secures the claim:<br>**Debtor's rental property**<br><br>As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br>Nature of lien. Check all that apply.<br>☐ An agreement you made (such as mortgage or secured car loan)<br>☐ Statutory lien (such as tax lien, mechanic's lien)<br>☐ Judgment lien from a lawsuit<br>☑ Other (including a right to offset) **First Mortgage**<br><br>Last 4 digits of account number 4428 | $313,646.90 | $480,000.00 | $0.00 |
| **2.2** CHASE<br>Creditor's Name<br><br>PO Box 901076<br>Ft Worth, TX 76101-2076<br>Number, Street, City, State & Zip Code<br><br>Who owes the debt? Check one.<br>☑ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br>☐ Check if this claim relates to a community debt<br><br>Date debt was incurred 12/04/2017 | Describe the property that secures the claim:<br>**2017 Fiat 500**<br><br>As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br>Nature of lien. Check all that apply.<br>☐ An agreement you made (such as mortgage or secured car loan)<br>☐ Statutory lien (such as tax lien, mechanic's lien)<br>☐ Judgment lien from a lawsuit<br>☑ Other (including a right to offset) **Auto loan**<br><br>Last 4 digits of account number 1409 | $12,500.00 | $13,500.00 | $0.00 |

Official Form 106D          Schedule D: Creditors Who Have Claims Secured by Property          page 1 of 3

Software Copyright (c) 2019 CINGroup - www.cincompass.com

Debtor 1   David Lee
          First Name          Middle Name          Last Name

Case number (if known)   2:19-bk-10119-RK

---

**2.3 L A COUNTY Treasurer and Tax Collector**
Creditor's Name

PO Box 54110
Los Angeles, CA
90054-0110
Number, Street, City, State & Zip Code

Who owes the debt? Check one.
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

Date debt was incurred   2017

Describe the property that secures the claim:

Real real property tax lien on debtor's residence

As of the date you file, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Nature of lien. Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☑ Other (including a right to offset)   real property taxes

Last 4 digits of account number   3037

| $1,022.94 | $1,690,000.00 | $0.00 |

---

**2.4 LOANCARE A Servicelink Company**
Creditor's Name

PO Box 8068
Virginia Beach, VA
23450-8068
Number, Street, City, State & Zip Code

Who owes the debt? Check one.
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

Date debt was incurred   02/01/2016

Describe the property that secures the claim:

Debtor's rentl property located at: 304 East 120th Street, Los Angeles, CA 90061

As of the date you file, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Nature of lien. Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☑ Other (including a right to offset)

Last 4 digits of account number   1300

| $210,365.00 | $340,000.00 | $0.00 |

---

**2.5 Pacific Private Money, Inc.**
Creditor's Name

1555 Grant Ave
Novato, CA 94945-3120
Number, Street, City, State & Zip Code

Who owes the debt? Check one.
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

Date debt was incurred   1 20 18

Describe the property that secures the claim:

second mortgage on debtor's residence

As of the date you file, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Nature of lien. Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☑ Other (including a right to offset)   Second Mortgage

Last 4 digits of account number   0925

| $400,000.00 | $1,690,000.00 | $0.00 |

---

Official Form 106D          Additional Page of Schedule D: Creditors Who Have Claims Secured by Property          page 2 of 3

Software Copyright (c) 2019 CINGroup - www.cincompass.com

Case 2:19-bk-10119-RK    Doc 17    Filed 01/22/19    Entered 01/22/19 16:50:04    Desc
Main Document    Page 12 of 26

Debtor 1    David Lee

    First Name     Middle Name     Last Name

Case number (if known)    2:19-bk-10119-RK

| | | | | |
|---|---|---|---|---|
| **2.6** Pentagon Federal Credit Union | Describe the property that secures the claim: | $7,000.00 | $13,500.00 | $0.00 |

Creditor's Name

2014 Hyundai Genesis automobile

9494 Miramar Rd
San Diego, CA
92126-4417

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Who owes the debt? Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)    Auto loan

Date debt was incurred    03/21/2014    Last 4 digits of account number    9809

| | | | | |
|---|---|---|---|---|
| **2.7** U S BANK Home Mortgage | Describe the property that secures the claim: | $625,000.00 | $1,690,000.00 | $0.00 |

Creditor's Name

Debtor's residence locted at: 840 Dunsmuir Avenue Los Angeles, CA 90036-4732

4601 Frederica St
Owensboro, KY
42301-7439

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Who owes the debt? Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)    real property mortgage

Date debt was incurred    04/2016    Last 4 digits of account number    4007

Add the dollar value of your entries in Column A on this page. Write that number here:    $1,569,535.84

If this is the last page of your form, add the dollar value totals from all pages. Write that number here:    $1,569,535.84

**Part 2:    List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

# EXHIBIT - 4

Case 2:19-bk-10119-RK   Doc 70   Filed 05/01/19   Entered 05/01/19 11:42:11   Desc
Main Document      Page 1 of 11

1   David A. Tilem (SBN 103825)
    LAW OFFICES OF DAVID A. TILEM
2   206 North Jackson Street, Suite 201
    Glendale, California 91206
3   Tel: 888-257-7648 * 818-507-6000
       Fax:(818) 507-6800
4   DavidTilem@TilemLaw.com

5   Proposed Attorneys for Debtor and Debtor-
       In-Possession

6

7                **UNITED STATES BANKRUPTCY COURT**

8                **CENTRAL DISTRICT OF CALIFORNIA**

9                   **LOS ANGELES DIVISION**

10

| | |
|---|---|
| In re:                ) | **Case No. 2:19-bk-10119-RK** |
|                      ) | Chapter 11 |
|                      ) | **STATUS CONFERENCE REPORT** |
| **DAVID LEE**,           ) | |
|                      ) | Hearing |
|                      ) | Date: May 15, 2019 |
|                      ) | Time: 11:00 a.m. |
|                      ) | Place: Courtroom 1675 |
|          Debtor.       ) |     255 E. Temple St. |
| _____ ) |     Los Angeles, CA 90012 |

18       **TO THE HONORABLE ROBERT KWAN, UNITED STATES BANKRUPTCY JUDGE,**

19 **THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES IN**

20 **INTEREST:**

21       On Wednesday, April 3, 2019 the Court conducted a Status

22 Conference in the above-entitled case.  At that time the Court set

23 a further Status Conference for the date and time set forth above,

24 and directed the Debtor to submit a revised Status Report.

25       This report is prepared utilizing the number system in the

26 Court's Status Conference Order.

27   / / /

28   / / /

a.    **SUMMARY OF DEBTOR'S BUSINESS, OPERATIONS AND PRINCIPAL ASSETS AND LIABILITIES**

Debtor is an accountant.  He is employed by his own professional corporation.

Debtor owns three parcels of real property.  His home and two rental properties.

1.    Debtor's residence has a value of approximately $1.69 million.  The property secures two obligations.  The senior lien is approximately $625,000.  The junior lien is approximately $400,000.  Each is approximately $70,000 in arrears.  There is approximately $700,000 of equity in the property.  The junior lienholder was the foreclosing party who precipitated the filing of this case.

2.    Debtor owns rental property on 120th Street, Los Angeles.  The property has a value of approximately $380,000 and secures one loan of approximately $210,400.  There is a modest arrearage on this loan.  The single family residence is rented - this is Section 8 housing.  The tenant is modestly in arrears.  Debtor currently proposes to work with the tenant to help the tenant get caught up on rent.

3.    Debtor owns rental property on Grape Street, Los Angeles.  The property has a value of approximately $480,000 and secures one loan of approximately $313,650.  There is a modest arrearage on this loan.  The property is a duplex.  It is fully rented - this is Section 8 housing.  The tenants are current.

The Debtor is the sole shareholder of a corporation named DPE Investment, Inc., a corporation in dissolution.  This entity owns

1   real property on Avalon Street, Los Angeles.  The property has a

2   value of approximately $250,000 and secures one loan of

3   approximately $190,000 which was guaranteed by Debtor.  The loan

4   was a short term loan and carries a very high rate of interest.

5   The payments are current.  This mixed use property is currently

6   being renovated.  On April 26, 2019 Debtor filed a motion for leave

7   to wrap up and dissolve this entity so that the property, its only

8   asset, can be deeded to the Estate.  The motion is set for hearing

9   on May 15, 2019 at 11:00 a.m.

10       The Debtor is the sole shareholder of a corporation named DJPE

11  Corp.  This entity owns real property on Linda Vista Terrace, Los

12  Angeles.  The property has a value of approximately $600,000 and

13  secures one loan of approximately $463,000.   The payments are

14  current.  This single family residence is under construction.

15  Debtor intends to file another motion for leave to wrap up and

16  dissolve this entity so that the property, its only asset, can be

17  deeded to the Estate.

18       The Debtor is the sole shareholder of a corporation named

19  Qandys.com, Inc.  This is an operating business which manufactures

20  and sells Mexican-style candy.  The company is profitable and

21  generating income for the estate.  Qandys is servicing a great deal

22  of debt which was guaranteed by the Debtor.

23       The Debtor is the sole shareholder of LDVC, Inc.  This company

24  currently serves as an employee leasing company for the workers at

25  Quandys.com.

26       Debtor is the sole shareholder of his professional

27  corporation.

28       Debtor has outstanding income tax obligations to the

Case 2:19-bk-10119-RK    Doc 70    Filed 05/01/19    Entered 05/01/19 11:42:11    Desc
Main Document        Page 4 of 11

California Franchise Tax Board for 2016 and 2017 (approximately $30,000).  The 2018 return has not been filed and no estimated taxes have been paid.

Debtor has outstanding income tax obligations to the Internal Revenue Service for 2015 (approximately $75,000).  The 2016-2018 returns has not been filed and no estimated taxes have been paid.

**b. BRIEF ANSWERS TO THE FOLLOWING QUESTIONS:**

    **1. <u>What precipitated the filing of this case?</u>**

The case was filed one day before a foreclosure sale on Debtor's residence.

    **2. <u>What does the Debtor hope to accomplish in this case?</u>**

Debtor intends to negotiate cure agreements with the various lenders and then propose a Chapter 13 style plan.

    **3. <u>What are Debtor's principal disputes/problems?</u>**

There are very few issues in this case.  Debtor needs a bit of time to negotiate with secured creditors before filing a plan.

    **4. <u>What are Debtor's proposed solutions?</u>**

See response to #2.

    **5. <u>Has the Debtor complied with all of its duties under 11 U.S.C. §§ 521, 1106, 1107, F.R.B.P. 1007 and all applicable guidelines of the Office of the United States Trustee?</u>**

Yes.

**6. <u>Do any parties claim an interest in cash collateral?</u>**

Debtor does not have a copy of the various loan documents and cannot yet determine whether lenders secured by real property have liens on rental income.  Until that determination is made, rental income is being treated as if it is cash collateral.

**7.   <u>Is the Debtor using cash that any party claims as its cash collateral, and if so, on what date did the Debtor obtain an order authorizing the use of such cash or the consent of the party?</u>**

No.

**c. THE IDENTITY OF ALL PROFESSIONALS RETAINED OR TO BE RETAINED BY THE ESTATE, THE DATES ON WHICH APPLICATIONS FOR THE EMPLOYMENT OF SUCH PROFESSIONALS WERE FILED OR SUBMITTED TO THE UNITED STATES TRUSTEE, THE DATES ON WHICH ORDERS WERE ENTERED REGARDING SUCH APPLICATIONS (IF ANY), A GENERAL DESCRIPTION OF THE SERVICES TO BE RENDERED BY EACH SUCH PROFESSIONAL, AND AN ESTIMATE OF THE EXPECTED AMOUNT OF COMPENSATION FOR EACH PROFESSIONAL.**

Not all professionals to be employed have yet been identified, however, Debtor has filed, or will file motions to employ:

1.   Original general bankruptcy counsel - Renee Sanders - filed February 12, 2019 (Dkt. #026).

2.   New general bankruptcy counsel - Law Offices of David A. Tilem.  A retainer agreement was signed March 25, 2019.  A substitution of attorneys was filed on March 27, 2019 (Dkt. #053). An employment motion was filed on March 27, 2019 (Dkt. #054).

3.   Appraiser - not yet identified - timing unknown.

d. IN OPERATING CASES, EVIDENCE REGARDING PROJECTED INCOME, EXPENSES, AND CASH FLOW FOR THE FIRST SIX MONTHS OF THE CASE.

    See attached.

e. PROPOSED DEADLINES FOR THE FILING OF CLAIMS AND OBJECTIONS TO CLAIMS.

    Debtor has no specific requests regarding these deadlines.

f. A PROPOSED PLAN AND DISCLOSURE STATEMENT FILING DEADLINE

    Debtor needs approximately 5 months to contact various lenders in an attempt to negotiate plan terms. Debtor requests that the Plan due date be set for September, 2019.

g. A DISCUSSION OF THE UNEXPIRED LEASES AND EXECUTORY CONTRACTS TO WHICH THE DEBTOR IS A PARTY, AND THE DEBTOR'S INTENTIONS AND A PROPOSED TIMETABLE FOR ADDRESSING SUCH LEASES AND CONTRACTS.

    Debtor proposes to assume all leases.

Dated: May 1, 2019

                    LAW OFFICES OF DAVID A. TILEM

                    By: _____

                       David A. Tilem, Proposed
                       Attorneys for Debtors and
                       Debtors-in-Possession

**DAVID LEE, 2:19-10110-RK**
CASH FLOW ACTUAL/PROJECTION (20190409)

| | Normal Payment | Act — Week Ending | | | | | | | | | Projected — Month | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Jan 13th | Jan 20th | Jan 27th | Jan 31st | Feb 3rd | Feb 10th | Feb 17th | Feb 24th | Feb 28th | March | April | May | June | July |
| **Income** | | | | | | | | | | | | | | | |
| Accounting Practice | | $ 330.00 | $ 230.00 | $ 330.00 | | $ 80.00 | $ 2,905.00 | $ 3,805.00 | $ 230.00 | $ 4,290.00 | $ 7,200.00 | $ 9,340.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 |
| Qandys.com | | | $ 2,600.00 | $ 2,600.00 | | | | | | | $ 10,000.00 | $ 12,000.00 | $ 14,000.00 | $ 17,000.00 | $ 14,000.00 |
| Rental income-Grape St | | | | | | 2,799.00 | - | | | | 2,799.00 | 2,799.00 | 2,799.00 | 2,799.00 | 2,799.00 |
| Rental income -120th St | | - | | | | | | 871.00 | | | 871.00 | 871.00 | 871.00 | 871.00 | 871.00 |
| **Total Income** | | 330.00 | 2,830.00 | 2,930.00 | - | 3,750.00 | 2,905.00 | 3,805.00 | 230.00 | 4,290.00 | 20,870.00 | 25,010.00 | 23,670.00 | 26,670.00 | 23,670.00 |
| | | | | | | | | | | | | | | | |
| **Expenses:** | | | | | | | | | | | | | | | |
| Residence | | | | | | | | | | | | | | | |
| 1st Mtg - US Bank - transferred to Selene in April, 2019 (payment includes impounds) | 5,178.00 | | | | | | | | | | | | | | |
| 1st Mtg - Selene Finance LP (no impounds) | 3,307.55 | | | | | | | | | | | | 3,307.55 | 3,307.55 | 3,307.55 |
| YCCS, LLC (2nd Mtg) - HELOC | all due | | | | | | | | | | | | | | |
| Property tax | | | | | | | | | | | | | 1,380.00 | 1,380.00 | 1,380.00 |
| Insurance | | | | | | | | | | | | | 111.00 | 111.00 | 111.00 |
| Rental Property | | | | | | | | | | | | | | | |
| Grape St Mortgage | 2,726.00 | | | | | | | | | | | | | | |
| 120th St Mortgage | 1,627.67 | | | | | | | | | | | | | | |
| Water-Grape St | | | | | | | | | | | | - | 379.50 | 180.00 | 180.00 |
| Water-Grape St Security deposit | | | | | | | | | | | | | 600.00 | | |
| Water-120th St | | | | | | | | | | | | - | 130.62 | 66.00 | 66.00 |
| Water-120th St Security deposit | | | | | | | | | | | | | 205.00 | | |
| Property owned through entities | | | | | | | | | | | | | | | |
| Avalon Mortgage - DPE | | | 2,600.00 | 2,600.00 | | 2,600.00 | 2,600.00 | | - | | 2,600.00 | - | 2,600.00 | 2,600.00 | 2,600.00 |
| Linda Vista Mortgage - DJPE (paid by Qandys) | | | | | | | | | | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 |
| Cable | | | | | | | | | | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 | 40.00 |
| Internet | | | | | | | | 54.73 | | | - | 44.99 | 44.99 | 54.73 | 54.73 |
| Natural Gas | | | | | | | | | - | | 264.72 | 339.90 | 426.94 | 40.00 | 40.00 |
| Electric and water | | | | | | | | | | | 987.10 | - | 980.00 | 400.00 | 400.00 |
| Electric and water-Security deposit | | | | | | | | | | | | 1,200.00 | | | |
| 2019 Quarterly tax estimates | | | | | | | | | | | 4,000.00 | | 4,000.00 | 4,000.00 | 4,000.00 |
| Bank fee | | | | | | | | | | | 30.00 | 10.00 | | | |
| Food and housekeeping | | 150.00 | 150.00 | 250.00 | | 125.00 | 125.00 | 150.00 | | | 483.61 | 466.08 | 500.00 | 500.00 | 500.00 |
| Home maintenance | | | | | | | | | | | | 150.00 | | 150.00 | 150.00 |
| Personal care products | | | | | | | | | | | | | | | 40.00 |
| Retainer to Lawyer[1] | | | | | | | | | | | 10,000.00 | 15,000.00 | | | |
| Trust quarterly fee | | | | | | | | | | | | 650.00 | | | |
| Medical and dental | | | | | | | | | | | | | | | 150.00 |
| Insurance | | | | | | | | | | | | | | | |
| Life | | | | | | | | | | | | | 300.00 | 300.00 | 300.00 |
| Vehicle | | | | | | | | 737.31 | | | 737.31 | 1,105.98 | 535.00 | 535.00 | 535.00 |
| Gasoline | | 80.00 | 80.00 | 80.00 | | 80.00 | 80.00 | 80.00 | 81.75 | 40.00 | 314.87 | 365.92 | 360.00 | 360.00 | 360.00 |
| Car registration | | | | | | | | | | | | | | | |
| Car maintenance & repair | | | | | | | | | | | | - | | | 60.00 |
| Car payment | | | | | | | | | | | | | | | |
| Genesis | 641.00 | | | | | | | | | | 530.07 | - | 1,282.00 | 641.00 | 641.00 |
| Fiat | 271.00 | | | | | | | | | | | | 1,084.00 | 271.00 | 271.00 |
| Meals and entertainment | | | | | | | | | | | | | 480.00 | 480.00 | 480.00 |
| Daughter's allowance | | | | | | | | | | | | 400.00 | 400.00 | 400.00 | 400.00 |
| MOR preparation | | | | | | | | | | | | 300.00 | 300.00 | 300.00 | 300.00 |
| Miscellaneous | | | | 120.00 | | 57.31 | 110.99 | | | | 589.68 | 299.68 | | 10.99 | 10.99 |
| **Total monthly exp** | | 230.00 | 2,950.00 | 2,930.00 | - | 80.00 | 2,862.31 | 3,653.30 | 286.48 | 80.00 | 15,590.26 | 21,439.65 | 19,657.68 | 16,187.27 | 16,377.27 |
| | | | | | | | | | | | | | | | |
| **Net monthly cash flow** | | $ 100.00 | $ (120.00) | $ - | | $ 3,670.00 | $ 42.69 | $ 151.70 | $ (56.48) | $ 4,210.00 | $ 5,279.74 | $ 3,570.35 | $ 4,012.32 | $ 10,482.73 | $ 7,292.73 |
| **Running cash flow** | | $ 100.00 | $ (20.00) | $ (20.00) | $ (20.00) | $ 3,650.00 | $ 3,692.69 | $ 3,844.39 | $ 3,787.91 | $ 7,997.91 | $ 13,277.65 | $ 16,848.00 | $ 20,860.32 | $ 31,333.05 | $ 38,625.78 |

1. This has since been approved by the Court - Order pending.

Case 2:19-bk-10119-RK    Doc 108    Filed 07/02/19    Entered 07/02/19 13:01:55    Desc
Main Document    Page 51 of 80

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**206 North Jackson Street, Suite 201, Glendale, CA 91206**

A true and correct copy of the foregoing document entitled (*specify*) **STATUS CONFERENCE REPORT**  will be served
or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner
stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
**05/01/19**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Baruch C Cohen**    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- **Todd S Garan**    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- **Nichole Glowin**    nglowin@wrightlegal.net, BKUDGeneralupdates@wrightlegal.net
- **Valerie Smith**    claims@recoverycorp.com
- **David A Tilem**    davidtilem@tilemlaw.com,
  DavidTilem@ecf.inforuptcy.com;malissamurguia@tilemlaw.com;joanfidelson@tilemlaw.com;JoanFidelson@ecf.in
  foruptcy.com;MalissaMurguia@ecf.inforuptcy.com;DianaChau@tilemlaw.com
- **Edward A Treder**    cdcaecf@bdfgroup.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Hatty K Yip**    hatty.yip@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)  **05/01/19,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class,
postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will
be completed no later than 24 hours after the document is filed.

Honorable Robert Kwan
United States Bankruptcy Court
255 E. Temple Street, Suite 1682
Los Angeles, CA 90012

David Lee
840 Dunsmuir Ave.
Los Angeles, CA 90036

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| **05/01/2019** | **Malissa Murguia** | /s/Malissa Murguia |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**

**Service List**

Green Lawn Mortgage Loan Trust 1, BYUS Bank
Wright, Finlay & Zak, LLP
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660-1881

Amer Assist ar Solutions, Inc.
P.O. Box 26095
Columbus, OH 43226-0095

Aldrige Pite, LLP
5375 Jutland Drive, Suite 200
San Diego, CA 92101

BSI Financial Services
314 S. Franklin Street, 2nd Floor
Titusville, PA 16354-2168

Comenity-Total Rewards Visa
P.O. Box 659450
San Antonio, TX 78265-9450

Comenity-TotalRewards Visa
P.O. Box 659450
San Antonio, TX 78265-9450

Comenity-TotalRewards Visa
P.O. Box 659450
San Antonio, TX 78265-9450

Chase
P.O. Box 901076
Ft. Worth, TX 76101-2076

Discover Bank
Discover Products, Inc.
P.O. Box 3025
New Albany, OH 43054-3025

Pentagon Federal Credit Union
2930 Eishenhower Avenue
Alexandria, VA 22314

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101

Aztec Financial
2624 West Magnolia Blvd.,
Burbank, CA 91505

CFG Merchant Solutions
180 Maiden Lane, FL 15
New York, NY 10038

Merchants Mortgage & Trust Corp.
7400 E. Crestline Cir #250
Englewood, CO 80111

Rose Hopkins
10023 ½ Grape Street
Los Angeles, Ca 90002

Sandra Miller
10023 Grape Street
Los Angeles, CA 90002

Strategic Funding Source
120 W 45th Street
New York, NY 10036

Target
P.O. Box 108
Saint Louis, MO 63166

CFG Merchant Solutions
180 Maiden Lane, FL 15
New York, NY 10038-5150

Discover Card
P.O. Box 51908
Los Angeles, CA 90051

Discover it Miles Card
P.O. Box 51908
Los Angeles, CA 90051-6208

Franchise Tax Board
Bankruptcy Section MS A340
P.O. Box 2952
Sacramento, CA 95812-2952

First National Bank
P.O. Box 2557
Omaha, FL 68103-2557

Franchise Tax Board
P.O. Box 942840
Sacramento, CA 94240-0001

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

JP Morgan Chase Bank, N.A.
National Bankruptcy Department
P.O. Box 29505 AZ1-1191
Phoenix, AZ 85038-9505

LA DWP
111 N. Hope Street
Los Angeles, CA 90012-2607

LA County Treasurer and Tax Collector
P.O. Box 54110
Los Angeles, CA 90054-0110

Loancare a Service Link Company
P.O. Box 8068
Virginia Beach, VA 23450-8068

Los Angeles County Treasurer and Tax Collector
Attn: Bankruptcy Unit
P.O. Box 54110
Los Angeles, CA 90054-0110

LVNV Funding, LLC
Resurgent Capital Services
P.O. Box 10587
Greenville, SC 29603-0587

Mercury Payments Services, LLC
Card Services
P.O. Box 70168
Philadelphia, PA 19176-0168

Orbitz
P.O. Box 659450
San Antonio, TX 78265-9450

Pacific Private Money, Inc.
1555 Grant Avenue
Novato, CA 94945-3120

Pentagon Federal Credit Union
2930 Eishenhower Avenue
Alexandria, VA 22314-4557

Pentagon Federal Credit Union
9494 Miramar Road
San Diego, CA 92126-4417

Pentagon Federal Credit Union
Attn: Bankruptcy Department
P.O. Box 1432
Alexandria, VA 22313-1432

Pinnacle Credit Services, LLC
Resurgent Capital Services
P.O. Box 10587
Greenville, SC 29603-0587

Quantum 3 Group, LLC as agent for Comenity Bank
P.O. Box 788
Kirkland, WA 98083-0788

Synchrony Bank
Amazon Store Card
170 W. Election Road, Suite 125
Draper, UT 84020-6425

Synchrony Bank
PRA Receivables Management LLC
P.O. Box 41021
Norfolk, VA 23541-1021

Synchrony Bank
c/o PRA Receivables Management LLC
P.O. Box 41021
Norfolk, VA 23541-1021


Target REDcard
P.O. box 5332
Sioux Falls, SD 57117-5332


US Bank
P.O. Box 5229
Cincinnati, OH 45201-5229


US Bank Home Mortgage
4601 Frederica Street
Owensboro, KY 42301-7439


Virgin America
P.O. Box 659450
San Antonio, TX 78265-7439


YCCS, LLC
a Hawaiian Limited Liability Co.
c/o Baurch C. Cohen Esq.
4929 Wilshire Blvd., #940
Los Angeles, CA 90010-3889

# EXHIBIT - 5

David A. Tilem (SBN 103825)
LAW OFFICES OF DAVID A. TILEM
206 North Jackson Street, Suite 201
Glendale, California 91206
Tel: 888-257-7648 * 818-507-6000
     Fax:(818) 507-6800
DavidTilem@TilemLaw.com

Attorneys for Debtor and Debtor-
     In-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br><br><br><br><br>DAVID LEE,<br><br><br><br><br>          Debtor. | ) **Case No. 2:19-bk-10119-RK**<br>)<br>)<br>) Chapter 11<br>)<br>)<br>) **NOTICE OF  MOTION AND MOTION FOR**<br>) **ORDER AUTHORIZING DEBTOR TO**<br>) **ENTER INTO A MONTH TO MONTH**<br>) **LEASE AND TO PAY FOR MOVING**<br>) **EXPENSES §363; DECLARATION OF**<br>) **DAVID LEE IN SUPPORT**<br>)<br>) [NO HEARING REQUIRED]<br>)<br>) |

**TO THE HONORABLE ROBERT KWAN, UNITED STATES BANKRUPTCY JUDGE,**

**THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES IN**

**INTEREST:**

Movant David Lee. ("Debtor"), has filed a motion entitled

Notice of Motion and Motion for Order Authorizing Debtor to enter

into a month to month rental agreement and to pay one-time moving

expenses of not more than $600.

Movant is asking the court to grant the motion without a

hearing, as provided for in LBR 9013-1(o).

1    The motion is based upon the legal and factual grounds set

2    forth and briefly described in the attached Description of Relief

3    Sought.

4              **X** The full motion is attached hereto; or

5              ☐ The full motion has been filed with the court, and a
               detailed description of the relief sought is attached

6              hereto.

7

8    **DEADLINE FOR FILING AND SERVING OPPOSITION PAPERS AND REQUEST FOR A**

     **HEARING:** Pursuant to LBR 9013-1(o), any party objecting to the

9    motion may request a hearing on the motion. The deadline for filing

10   and serving a written opposition and request for a hearing is 14

11   days after the date of service of this notice, plus an additional 3

12   days unless the notice of motion was served by personal delivery or

13   posting as described in F.R.Civ.P. 5(b)(2)(A)-(B). If you fail to

14   comply with this deadline, the court may treat such failure as

15   waiver of your right to oppose the motion and may grant the motion

16   without further hearing and notice.

17   Dated: June 2̶6̶, 2019

18                                      LAW OFFICES OF DAVID A. TILEM

19                                      By:_____

20                                      David A. Tilem, Attorneys
                                        for Debtor and Debtor-in-
21                                      Possession

22

23

24

25

26

27

28

0306ZilM\Mo2Reolcate&Rent20190625-Mtn2Relocate&Rent.wpd                    2

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### JURISDICTION AND APPLICABLE LAW

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(N). *California State Bd. of Equalization v. Sierra Summit, Inc.*, 490 U.S. 844, 849, 109 S.Ct. 2228, 2232-2233 (1989). Venue is proper in this district pursuant to 28 U.S.C. §§ 1334(e).

The statutory predicates for the relief requested are sections 363(b)(1) of the Bankruptcy Code[1], and Federal Rules of Bankruptcy Procedure ("FRBP") 2002, 4001, 6004, and 9014.

### II.

### BACKGROUND

David Lee is the Debtor ("Debtor") in the above-captioned case.  This case was commenced by filing a voluntary Chapter 11 petition on February 11, 2019 (the "Petition Date"). No trustee has been appointed and Debtors continue to manage the Estate as Debtors-in-Possession.

Debtor is an individual who reside in the Central District of California. The Debtor's residence is located at 840 Dunsmuir Ave. Los Angeles, CA 90036 ("Property"). Monthly mortgage payments total approximately $8,330/month on the Property.

To generate income for the Estate, Debtor is prepared to relocate to an apartment on a month to month basis at a cost of $3,000/month and rent out his residence for approximately $6,000/month.  The estate will net approximately $3,000/month as a

---

[1]   Title 11, United States Code § 101, et seq. – referred to here as the "Bankruptcy Code" or, simply the "Code".

1  month.

2      Debtor proposes to relocate to 3150 Wilshire Blvd., Los

3  Angeles, California by sub-leasing an apartment from a friend.

4  There is no formal rental agreement between the Debtor and his

5  friend, however, the amount which Debtor proposes to pay is

6  approximately what his friend is paying to rent the apartment.

7      To engage in this transaction, Debtor will require approval

8  under §363(b) to relocate and to pay relocation expenses.

9                          **III.**

10                     **RELIEF REQUESTED**

11     By this motion, Debtor seeks an Order:

12     1.   Authorizing the Debtor to relocate to a rental property

13  and enter into a month to month sub-lease agreement, and

14     2.   Authorizing the Debtor to pay not more than $600 for

15  relocation expenses.

16                          **IV.**

17                   **ARGUMENT AND AUTHORITIES**

18  **A.   DEBTOR'S RELOCATION AND PROPOSED USE OF FUNDS SHOULD BE**

19      **APPROVED**

20     Debtor seeks Court approval to pay relocation expenses.  The

21  Bankruptcy Code authorizes the "use" of estate property, in this

22  instance funds, either in the ordinary course of business without

23  further Court approval (§363(b)), or with Court approval (§363(c)).

24     **1.   IDENTIFYING ORDINARY COURSE TRANSACTIONS**

25     Identifying what qualifies as ordinary course is not always

26  simple. Courts have applied both a "horizontal test" and a

27  "vertical test" to attempt to identify when something is "ordinary

28  course". <u>In re Straightline Investments, Inc.</u>, 525 F.3d 870, 879-

881 (9ᵗʰ Cir., 2008); <u>In re Dant & Russell, Inc.</u>, 853 F.2d 700, 704-05 (9th Cir. 1988)(*superseded by statute on other grounds*); <u>In re Seely</u>, 492 B.R. 284 (Bankr. C.D. Cal. 2013).

The "vertical test" asks whether the proposed transaction subjects a hypothetical creditor to economic risks different from those the creditor accepted when deciding to extend credit.  This compares the debtor's proposed post-petition transaction with the debtor's pre-petition conduct to see if there is a history of similar transactions.  <u>Straightline</u>, 525 F.3d at 879; <u>Dant & Russell</u>, 853 F.2d at 704-05.  This Debtor does not have a history of relocating, hence the proposed expense is probably not in the "ordinary course".

The "horizontal test" asks whether people similarly situated to the debtor would ordinarily engage in similar transactions.  <u>Straightline</u>, 525 F.3d at 880-1; <u>Dant & Russell</u>, 853 F.2d at 704.  Once again, while Americans are somewhat infamous for moving more than most, this is not a daily, or even an annual occurrence.

Based on both the horizontal and vertical tests, the proposed expenditure of relocation funds is, in all liklihood, NOT an ordinary course transaction.  Thus Court approval of the proposed expenditure is necessary.

**2.    COURT APPROVAL OF THE PROPOSED EXPENDITURE IS APPROPRIATE**

Transactions not in the ordinary course require Court approval, §363(b).  This triggers the "business judgment" rule.  <u>In re 240 North Brand Partners, Ltd.</u> 200 B.R. 653, 659 (9th Cir. BAP 1996) <u>In re Walter</u>, 83 B.R. 14, 19-20 (9ᵗʰ Cir. BAP 1988); <u>In re Lionel Corporation</u>, 722 F.2d 1063, 1066 (2ⁿᵈ Cir. 1983); <u>In re Continental Air Lines, Inc.</u>, 780 F.2d 1223 (5ᵗʰ Cir. 1986); <u>In re</u>

1  Baldwin United Corporation, 43 B.R. 888, 905 (S.D. Ohio W.D.1984).

2  The Court may also look to determine whether the proposed

3  transaction is in good faith.  In re Wilde Horse Enterprises, Inc.,

4  136 B.R. 830, 841 (Bankr. C.D.Cal. 1991).

5       The "business judgment" asks the Court to assess whether there

6  is a valid, or sound business justification which is in the best

7  interests of creditors for the proposed transaction.  Here the

8  Debtor's motivation to relocate and rent his home is transparent.

9  The goal is to "net" $3,000/month for the Estate.  This is

10 transparently a sound justification and clearly benefits creditors.

11      The proposed transactions, i.e. relocation and funding

12 relocation expenses, should be approved.

13 **B.    CONCLUSION**

14      Debtor submits that his proposal to relocate and generate

15 $3,000/month for the Estate is prudent, reasonable and in the best

16 interests of creditors.  This "use" of estate assets should be

17 approved.

18 Dated: June  2/6  2019                    LAW OFFICES OF DAVID A. TILEM

19

20                                          By:

21                                              David A. Tilem, Attorneys
                                                for Debtor

22

23

24

25

26

27

28

03062\M\Mo2Reolcate&Rent20190625-Mtn2Relocate&Rent.wpd              6

**<u>DECLARATION OF DAVID LEE</u>**

I, David Lee, declare and state as follows:

    1.   I am the debtor and debtor-in-possession in this bankruptcy case.

    2.   This statement is based on my personal knowledge.  If asked to do so, I could and would testify to the statements made below.

    3.   I own and currently live at 840 Dunsmuir Avenue, Los Angeles which is a single family residence.  The property has about 2,100 square feet and I have lived there for about 21 years.

    4.   The monthly mortgages on this property total approximately $8,330.  This includes impounds for insurance and property taxes.

    5.   After consulting with a real estate broker, I believe I can rent my home for $6,000/month.

    6.   I have located an apartment at 3150 Wilshire Blvd., Los Angeles, California which I am willing to rent.  The cost would be about $3,000/month.  I would be sub-leasing from a friend on a month to month basis.

    7.   My "rent" is within a few dollars of my friend's cost to rent the apartment.

    8.   To relocate I believe I would need to spend approximately $600.

/ / /

/ / /

/ / /

/ / /

/ / /

9.    By relocating I am trying to raise additional funds to keep my home and pay my creditors.

I declare, under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this statement was signed by me on June 26, 2019 at Los Angeles, California.

David Lee

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**206 North Jackson Street, Suite 201, Glendale, CA 91206**

A true and correct copy of the foregoing document entitled (*specify*)  **NOTICE OF  MOTION AND MOTION FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO A MONTH TO MONTH LEASE AND TO PAY FOR MOVING EXPENSES §363; DECLARATION OF DAVID LEE IN SUPPORT**  will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **6/26/19**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Baruch C Cohen**   bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- **Todd S Garan**   ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- **Nichole Glowin**   nglowin@wrightlegal.net, BKUDGeneralupdates@wrightlegal.net
- **Valerie Smith**   claims@recoverycorp.com
- **David A Tilem**   davidtilem@tilemlaw.com,
  DavidTilem@ecf.inforuptcy.com;malissamurguia@tilemlaw.com;joanfidelson@tilemlaw.com;JoanFidelson@ecf.inforuptcy.com;MalissaMurguia@ecf.inforuptcy.com;DianaChau@tilemlaw.com
- **Edward A Treder**   cdcaecf@bdfgroup.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Hatty K Yip**   hatty.yip@usdoj.gov   ☐   Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **6/26/19,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Robert Kwan                                David Lee
United States Bankruptcy Court                  840 Dunsmuir Ave.
255 E. Temple Street, Suite 1682              Los Angeles, CA 90036
Los Angeles, CA 90012

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **_____**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| **6/26/2019** | **Malissa Murguia** | /s/ Malissa Murguia |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

**Service List**

Green Lawn Mortgage Loan Trust 1, BYUS Bank
Wright, Finlay & Zak, LLP
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660-1881

Amer Assist ar Solutions, Inc.
P.O. Box 26095
Columbus, OH 43226-0095

Aldrige Pite, LLP
5375 Jutland Drive, Suite 200
San Diego, CA 92101

BSI Financial Services
314 S. Franklin Street, 2nd Floor
Titusville, PA 16354-2168

Comenity-Total Rewards Visa
P.O. Box 659450
San Antonio, TX 78265-9450

Comenity-TotalRewards Visa
P.O. Box 659450
San Antonio, TX 78265-9450

Comenity-TotalRewards Visa
P.O. Box 659450
San Antonio, TX 78265-9450

Chase
P.O. Box 901076
Ft. Worth, TX 76101-2076

Discover Bank
Discover Products, Inc.
P.O. Box 3025
New Albany, OH 43054-3025

Pentagon Federal Credit Union
2930 Eishenhower Avenue
Alexandria, VA 22314

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101

Aztec Financial
2624 West Magnolia Blvd.,
Burbank, CA 91505

CFG Merchant Solutions
180 Maiden Lane, FL 15
New York, NY 10038

Merchants Mortgage & Trust Corp.
7400 E. Crestline Cir #250
Englewood, CO 80111

Rose Hopkins
10023 ½ Grape Street
Los Angeles, Ca 90002

Sandra Miller
10023 Grape Street
Los Angeles, CA 90002

Strategic Funding Source
120 W 45th Street
New York, NY 10036

Target
P.O. Box 108
Saint Louis, MO 63166

CFG Merchant Solutions
180 Maiden Lane, FL 15
New York, NY 10038-5150

Discover Card
P.O. Box 51908
Los Angeles, CA 90051

Discover it Miles Card
P.O. Box 51908
Los Angeles, CA 90051-6208

Franchise Tax Board
Bankruptcy Section MS A340
P.O. Box 2952
Sacramento, CA 95812-2952

First National Bank
P.O. Box 2557
Omaha, FL 68103-2557

Franchise Tax Board
P.O. Box 942840
Sacramento, CA 94240-0001

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

JP Morgan Chase Bank, N.A.
National Bankruptcy Department
P.O. Box 29505 AZ1-1191
Phoenix, AZ 85038-9505

LA DWP
111 N. Hope Street
Los Angeles, CA 90012-2607

LA County Treasurer and Tax Collector
P.O. Box 54110
Los Angeles, CA 90054-0110

Loancare a Service Link Company
P.O. Box 8068
Virginia Beach, VA 23450-8068

Los Angeles County Treasurer and Tax Collector
Attn: Bankruptcy Unit
P.O. Box 54110
Los Angeles, CA 90054-0110

LVNV Funding, LLC
Resurgent Capital Services
P.O. Box 10587
Greenville, SC 29603-0587

Mercury Payments Services, LLC
Card Services
P.O. Box 70168
Philadelphia, PA 19176-0168

Orbitz
P.O. Box 659450
San Antonio, TX 78265-9450

Pacific Private Money, Inc.
1555 Grant Avenue
Novato, CA 94945-3120

Pentagon Federal Credit Union
2930 Eishenhower Avenue
Alexandria, VA 22314-4557

Pentagon Federal Credit Union
9494 Miramar Road
San Diego, CA 92126-4417

Pentagon Federal Credit Union
Attn: Bankruptcy Department
P.O. Box 1432
Alexandria, VA 22313-1432

Pinnacle Credit Services, LLC
Resurgent Capital Services
P.O. Box 10587
Greenville, SC 29603-0587

Quantum 3 Group, LLC as agent for Comenity
Bank
P.O. Box 788
Kirkland, WA 98083-0788

Synchrony Bank
Amazon Store Card
170 W. Election Road, Suite 125
Draper, UT 84020-6425

Synchrony Bank
PRA Receivables Management LLC
P.O. Box 41021
Norfolk, VA 23541-1021

Synchrony Bank
c/o PRA Receivables Management LLC
P.O. Box 41021
Norfolk, VA 23541-1021


Target REDcard
P.O. box 5332
Sioux Falls, SD 57117-5332


US Bank
P.O. Box 5229
Cincinnati, OH 45201-5229


US Bank Home Mortgage
4601 Frederica Street
Owensboro, KY 42301-7439


Virgin America
P.O. Box 659450
San Antonio, TX 78265-7439


YCCS, LLC
a Hawaiian Limited Liability Co.
c/o Baurch C. Cohen Esq.
4929 Wilshire Blvd., #940
Los Angeles, CA 90010-3889

# EXHIBIT - 6

Broker Opinion Values -  July 1, 2019

840 S. Dunsmuir Ave.
Los Angeles, CA  90036

| | | |
|---|---|---|
| Chase.com | $ | 1,532,000 |
| Eppraisal.com | $ | 1,661,510 |
| Realestateabc.com | $ | 1,562,371 |
| Realtor.com | $ | 1,565,100 |
| Redfin.com | $ | 1,667,219 |
| Remax.com | $ | 1,322,800 |
| Trulia.com | $ | 1,562,890 |
| Zillow.com | $ | 1,562,371 |
| | | |
| Value - Average | $ | 1,554,533 |

  Sign in

**Home Value Estimator**     Home Equity Line of Credit Calculator     Debt Consolidatic

# Home Value Estimator

What is your home or dream home worth? Use the Chase Home Value Estimator to get a free estimated market value of your home or a home you are interested in. We'll calculate our best estimated home valuation using the millions of home records in our database. Simply enter the address and choose "Get Value". Thinking of doing improvements? Add your proposed projects and estimate how your home's value will increase. Using Google maps, pinpoint the exact location of your home or an area you have your eyes set on.

📍 **840 S DUNSMUIR AVE LOS ANGELES, CA 90036**

🔍 Search for new address here or click a parcel on the map

**$1,532,000 Estimated Value** ⓘ






# » 840 S Dunsmuir Ave Los Angeles, CA 90036



Road View  |  Street View  |  Larger

Off Market Home Value Estimates:   ?

| epraisal.com | Zillow.com |
|:---:|:---:|
| $1,661,510 | $1,562,371 |

Public Record Information:

Beds/Baths: 4 / 2

Tax Assessment: n/a

Est. Tax: $11,689.61

Built: 1924

Sqft: 1850

Region: West

Munic/Township: -

Subdivision: 4464

RealEstateABC > Home Values > California Home Values > Los Angeles Home Values > 840 S Dunsmuir Ave



Free Home Values and Home Comparables Nationwide
Real Estate & Mortgage Resources

Find a Realtor  |  **Home Values**  |  Buying a Home  |  Home Selling  |  Property Listings  |  Mortgage  |  Articles  |  Calculators  |  Agent Section

## Home Values

Subject Property | Mortgage

### 840 S Dunsmuir Ave, Home Value

Enter address: _____  Enter City & State, or Zip: _____  [SEARCH]



840 S Dunsmuir Ave
Los Angeles, CA 90036

Zestimate® ▶ **$1,562,371**
$ Per Square Foot: **$292**
For deeper insights, contact a local Real Estate Expert.

| | |
|---|---|
| Last Sale: | 08-30-2001 |
| Sales Price: | $540,000 |
| Year Built: | 1924 |
| BR: | 4 |
| BA: | 2 |
| BLDG SQ FTP: | 1,850 |
| LOT SQ FT: | 8,322 |

See more property facts at Zillow
Provided by
Zillow.com.





**Resources & Tools**
Search Homes for Sale
Free Credit Report
Moving Quotes
Get a Property Report
Free Mortgage Quotes
Assisted Living
Financial Advisors
Real Estate Attorneys



**Get UP TO 4 FREE**
Mortgage Quotes
○ Purchase
◉ Refinance
○ Equity
[SEARCH]

RealEstateABC
Newsletter
[email address]
[Subscribe]

Home Equity
Line of Credit

$100,000+
$50,000
How much do you need?
$25,000 ▲

Calculate Payment
Terms & Conditions apply. NMLS#113E

Advertisement

### TODAY'S MORTGAGE RATES from Ethical Lenders



| Ethical Lender Name | sort | Rate | Points | Fees | Lock | APR | Monthly Payment | Last Updated |
|---|---|---|---|---|---|---|---|---|
| HighTechHomeLoans | | 4.250% | 0.000 | $2,455 | 30 | 4.250% | $6149 | 07/01/2019 |
| HighTechHomeLoans | | 4.125% | 0.177 | $595 | 30 | 4.144% | $6058 | 07/01/2019 |
| HighTechHomeLoans | | 3.875% | 1.127 | $595 | 30 | 3.971% | $5878 | 07/01/2019 |

⚠ Powered by Loan.com



Advertisement

PUBLIC
RECORDS
SEARCH

⬇

First Name
[ ]

Last Name
[ ]

Start Search

Powered By

| Location | | History | | Built In | Room Count | | Square Feet | | |
|---|---|---|---|---|---|---|---|---|---|
| Property Address | Proximity | Sale Date | Sale Price | | Beds | Baths | Building | Price Per | Lot |
| **Subject Property** | | | | | | | | | |
| 840 S Dunsmuir Ave | 0 mi | 08-30-2001 | $540,000 | 1924 | 4 | 2 | 1,850 | $292 | 8,322 |
| **Recent Sales in this Area** | | | | | | | | | |
| A | 1029 Meadowbrook Ave | 0.2 mi | 09-13-2018 | $1,525,000 | 1924 | 9 | 8 | 3,377 | $452 | 7,200 |
| B | 1206 S Sycamore Ave | 0.4 mi | 10-19-2018 | $2,075,000 | 1923 | 3 | 6 | 3,016 | $688 | 6,568 |
| C | 1215 S Cloverdale Ave | 0.4 mi | 07-16-2018 | $1,037,000 | 1935 | 3 | 2 | 1,498 | $692 | 5,523 |
| D | 1113 Hauser Blvd | 0.4 mi | 07-20-2018 | $1,210,000 | 1926 | 5 | 2 | 2,078 | $582 | 6,019 |
| E | 1056 S Ridgeley Dr | 0.3 mi | 12-06-2018 | $1,350,000 | 1925 | 3 | 3 | 1,594 | $847 | 6,433 |
| F | 1126 S Ridgeley Dr | 0.3 mi | 12-01-2018 | $930,000 | 1925 | 2 | 1 | 1,538 | $605 | 6,364 |
| G | 1130 S Burnside Ave | 0.3 mi | 07-26-2018 | $1,268,000 | 1925 | 3 | 2 | 1,300 | $975 | 6,891 |
| H | 1039 S Cochran Ave | 0.2 mi | 06-14-2019 | $1,275,000 | 1927 | 4 | 3 | 2,700 | $472 | 7,161 |
| I | 844 S Curson Ave | 0.2 mi | 08-10-2018 | $2,010,000 | 1933 | 4 | 3 | 1,500 | $1,340 | 7,026 |
| J | 851 Masselin Ave | 0.3 mi | 05-21-2019 | $1,670,000 | 1925 | 3 | 3 | 1,824 | $916 | 7,000 |
| K | 850 Masselin Ave | 0.2 mi | 04-15-2019 | $2,157,574 | 1928 | 4 | 3 | 3,498 | $617 | 7,000 |
| L | 843 Hauser Blvd | 0.2 mi | 10-26-2018 | $1,483,500 | 1925 | 3 | 3 | 1,897 | $782 | 7,000 |
| M | 933 Hauser Blvd | 0.2 mi | 05-01-2019 | $1,230,000 | 1927 | 3 | 3 | 1,922 | $640 | 7,000 |
| N | 934 S Dunsmuir Ave | 0.1 mi | 07-10-2018 | $1,650,000 | 1924 | 3 | 3 | 2,067 | $798 | 7,627 |
| O | 929 S Dunsmuir Ave | 0.1 mi | 08-22-2018 | $1,275,000 | 1924 | 3 | 3 | 1,650 | $773 | 7,930 |
| P | 908 S Ridgeley Dr | 0.1 mi | 08-29-2018 | $1,280,000 | 1925 | 3 | 2 | 1,647 | $777 | 7,039 |
| Q | 1117 S Ridgeley Dr | 0.3 mi | 11-20-2018 | $1,208,000 | 1927 | 3 | 3 | 1,927 | $627 | 6,320 |
| R | 851 S Cloverdale Ave | 0.0 mi | 06-20-2019 | $1,760,000 | 1924 | 5 | 5 | 3,510 | $501 | 5,575 |
| S | 1021 S Dunsmuir Ave | 0.2 mi | 05-22-2019 | $1,450,000 | 1924 | 2 | 2 | 1,419 | $1,022 | 7,352 |
| T | 1021 S Ridgeley Dr | 0.2 mi | 05-21-2019 | $1,532,000 | 1923 | 3 | 3 | 1,801 | $851 | 6,372 |
| U | 823 Masselin Ave | 0.2 mi | 06-24-2019 | $1,785,000 | 1925 | 3 | 3 | 2,341 | $762 | 7,004 |

Provided by

Zillow.com.



Est. **$1,565,100** ⓘ

 Track Your Home Value


Map

**4** beds    **2** baths    **1,850** sq ft    **8,323** sqft lot

Commute Time

## 840 S Dunsmuir Ave,

Los Angeles, CA 90036

Get Up To 4 Free Moving Quotes

**Property Overview** - 840 S Dunsmuir Ave, Los Angeles, CA 90036 is a single family home built in 1924. This property was last sold for $540,000 in 2001 and currently has an estimated value of $1,565,100. The median sales price for the Mid - Wilshire area is $852,000. The $1,565,100 estimated value is 58.11% greater than the median listing price of $989,900 for the Mid - Wilshire area.

According to the Los Angeles public records, the property at 840 S Dunsmuir Ave, Los Angeles, CA 90036 has approximately 1,850 square feet, 4 beds and 2 baths with a lot size of 8,323 square feet. Nearby schools include Wilshire Crest Elementary School, John Burroughs Middle School and Fairfax Senior High School.



**58.11%**
More expensive than nearby properties ⓘ



**$1.03M**
Since last sold in 2001 ⓘ



**$5,930**
Rental Estimate ⓘ

## Own this home?

Check out your owner dashboard to:

· Track your home's value and comps
· Update the important details and photos
· Easily compare similar homes in your area

## 🏠 Home Value for 840 S Dunsmuir Ave

840 S Dunsmuir Ave is likely to appreciate by 6% in the next year, based on the latest home price index. In the last 4 years, this home has increased its value by 13%.

REDFIN    City, Address, School, Agent, Z    1-844-759-7732    Buy ▾    Sell ▾    Real Estate Agents    Log In    Sign Up

**840 S Dunsmuir Ave**
Los Angeles, CA 90036

| $1,667,219 Redfin Estimate 1,850 Sq. Ft. $901 / Sq. Ft. | $540,000 Last Sold Price | 4 Beds | 2 Baths |
|---|---|---|---|

Built: 1924
Status: Sold  Source: Public Records



**Is This Your Home?**

Track this home's
estimate & nearby sales
activity

I'm the Owner

Sell your home for more,
pay a listing fee as low as 1%

Estimated sale price
$1.58M - $1.75M

Talk to Redfin About Selling

Redfin Estimate for 840 S Dunsmuir Ave
Edit Home Facts to improve accuracy.

Create an Owner Estimate

$1,667,219

Track This Estimate

+$1.1M since sold in 2001                                    1 year   5 years

Redfin Estimate based on recent home sales. ⓘ



**trulia**    Search for City, Neighborhood, Zip, Cou

← Back to Search    Sold › CA › Los Angeles › 90036 › 840 S Dunsmuir Ave



OFF MARKET

Save     Share

## 840 S Dunsmuir Ave
Los Angeles, CA 90036   Mid City

🛏 4 Beds   🛁 2 Baths   📐 1,850 sqft

**$1,562,890**
Trulia Estimate ⓘ
as of Jul 1, 2019

### Homes Nearby For Sale



**$1,799,000**
🛏 3bd 🛁 3ba 📐 2,204 sqft
603 S Highland Ave
Mid Wilshire, Los Angeles, CA



**$1,799,000**
🛏 3bd 🛁 3ba 📐 1,954 sqft
920 S Burnside Ave
Mid City, Los Angeles, CA



**$1,399,000**
🛏 2bd 🛁 2ba 📐 1,466 sqft
827 S Burnside Ave
Mid City, Los Angeles, CA



**$1,380,000**
🛏 4bd 🛁 3ba 📐 2,014 sqft
1068 S Lucerne Blvd
Mid City, Los Angeles, CA

### Local Information








**Map View**
Explore the area around
840 S Dunsmuir Ave.

**Street View**
Take a virtual walk
around the
neighborhood.

**Schools**
1 Elementary School
1 Middle School
1 High School

**Crime**
Lowest crime relative
to the rest of Los Angeles
county.

**Commute**
88% of residents
commute by car.

**Shop & Eat**
293 Restaurants
59 Groceries
50 Nightlife

### Description

This property is no longer available to rent or to buy.



Interested in touring this home?

   o   Get more info

# $1,421,757

**4** bd**2** ba**1,850** sqft

**840 S Dunsmuir Ave, Los Angeles, CA 90036**

**Pre-foreclosure / auctionForeclosure Estimate:** $1,421,757**View Details**

   •   Get more info

# $1,421,757

**4**bd**2**ba**1,850**sqft

| 12/11/2018 | **Foreclosure auction** | unpaid balance |
| 8/29/2018 | **Home in default** | **$19,110** past due |
| 11/20/2017 | **Loan issued** | **$365,000** |

Name:          S B S TRUST DEED NETWORK A CALIFORNIA

Address:       31194 LA BAYA DRIVE 106, THOUSAND OAKS, CA 91362

Phone:         (818) 991-4600

Foreclosure
type:          Non-Judicial

Recorded:      Notice of Default: 18-0892717 on 9/3/2018 Notice of Sale: 18-1247086 on
               12/10/2018

Parcel number:  5089-020-012

• See more foreclosure information

# •Home value

Zestimate®

$1,562,371

Estimated sales range: $1.44M - $1.69M

Zestimate history

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 7/2/2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Sean C Ferry (CR)                sferry@rasflaw.com, sferry@ecf.courtdrive.com
Todd S Garan (IP)                ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com; tgaran@aldridgepite.com
Nichole Glowin (CR)              nglowin@wrightlegal.net, BKUDGeneralupdates@wrightlegal.net
Erica T Loftis Pacheco (CR)      erica.loftispacheco@bonialpc.com
Valerie Smith (IP)               claims@recoverycorp.com
David A Tilem (DB)               davidtilem@tilemlaw.com, DavidTilem@ecf.inforuptcy.com; joanfidelson@tilemlaw.com;
                                 JoanFidelson@ecf.inforuptcy.com; DianaChau@tilemlaw.com;
                                 malissamurguia@tilemlaw.com; MalissaMurguia@ecf.inforuptcy.com
Edward A Treder (IP)             cdcaecf@bdfgroup.com
US Trustee (LA)                  ustpregion16.la.ecf@usdoj.gov
Hatty K Yip (TR)                 hatty.yip@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On 7/2/2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 7/2/2019,, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Robert N. Kwan, USBC, Central District of California, 255 E. Temple Street, Suite 1682, Los Angeles CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 7/2/2019 | Baruch C. Cohen, Esq. | /s/ Baruch C. Cohen |
| _Date_ | _Printed Name_ | _Signature_ |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.