David A. Tilem (SBN 103825)
LAW OFFICES OF DAVID A. TILEM
206 North Jackson Street, Suite 201
Glendale, California 91206
Tel: 888-257-7648 * 818-507-6000
     Fax: 818-507-6800
DavidTilem@TilemLaw.com

Attorneys for Debtor and Debtor-
    In-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

In re:

DAVID LEE,

                    Debtor.

|  |  |
|---|---|
| ) | **Case No. 2:19-bk-10119-RK** |
| ) | Chapter 11 |
| ) | **DEBTOR'S OPPOSITION TO RELIEF FROM STAY MOTION (DKT. #108) FILED BY YCCS, LLC** |
| ) | Hearing |
| ) | Date: July 30, 2019 |
| ) | Time: 10:30 A.M. |
| ) | Place: Courtroom 1675 |
| ) |     255 E. Temple St. |
| ) |     Los Angeles, CA 90012 |

Debtor David Lee submits the following in opposition to this relief from stay motion ("Motion") filed by YCCS, LLC ("YCCS").

Dated: July 16, 2019

LAW OFFICES OF DAVID A. TILEM

By: _____
David A. Tilem, Attorneys
for Debtor and Debtor-in-
Possession

**I.**

**INTRODUCTION**

This Chapter 11 case was voluntarily filed on January 7, 2019 (the "Petition Date").  This relief from stay motion by YCCS concerns Debtor's residence located at 840 Dunsmuir Ave., Los Angeles, CA 90036 (the "Residence").

On June 26, 2019 Debtor moved for leave to employ an appraiser pursuant to Local Bankruptcy Rule 9013-1(o)(4) to appraise the Residence.  The notice period expires on Saturday, July 13 which means that a proposed Order cannot be lodged until Tuesday, July 16.  Opposition to this motion, however, is due the same day leaving insufficient time for the appraisal work to be done.

Given the significance of the Residence to the Debtor and this reorganization process, Debtor submits that unless the Court is inclined to deny the motion outright for the reasons specified below, the initial hearing should be treated as preliminary so that the Debtor has adequate time to obtain the appraisal and develop a full record for the Court to consider.

YCCS seeks relief from stay on alternative grounds: (1) for cause under §362(d)(1) including lack of adequate protection; or (2) under §362(d)(2) for lack of equity and as not necessary to an effective reorganization.  As evidenced by the information provided in the moving papers themselves, YCCS is not entitled to relief under any of these theories.  The motion should be denied - without the need for a subsequent hearing and valuation expert testimony.

/ / /

/ / /

/ / /

## UNDISPUTED FACTS

There is no dispute that the Residence is currently and was, at the inception of the case, Debtor's place of abode.

There is no dispute that the value of the Residence is at least $1.55 million. YCCS attached to its moving papers excerpts from Debtor's schedules (Exhibit 3, pg. 17) valuing the Residence at $1.69 million, and a broker price opinion (Exhibit 6, pg. 70) valuing the Residence at $1.55 million.[1],[2]

There is no dispute that the Residence is encumbered by a senior Deed of Trust securing an obligation of approximately $670,000.

There is no dispute that the Residence is encumbered by a junior Deed of Trust which secures a promissory note held by YCCS in the original principal balance of $365,000.

The terms of the loan stated in the note in favor of YCCS are not in dispute and they speak for themselves. In brief, this is a 2 year loan at 11.5%, all due and payable December 1, 2019. There is a default interest rate of 16.5%.

There is no dispute that the last payment made to YCCS was June, 2018.

There is no dispute that the amount of the YCCS claim as of

---

[1] While the broker price opinion is not competent evidence, no objection is made at this time to its consideration. Debtor reserves the right to object to Exhibit 6 after completing an appraisal of the Residence. If an objection is made, it will be based on various rules of evidence including, but not limited to hearsay and improper opinion testimony.

[2] Because the moving papers are not Bates Stamped, references to the moving papers are based on the pdf page number.

the Petition Date in this case was $416,545.91.[3]

**III.**

**ARGUMENT**

The basic principals of law are not controversial. Equity is calculated based on fair market value less all liens and encumbrances. Adequate protection is calculated based on fair market value less the amount owed to the moving party and those holding liens senior to the moving party.

In this Circuit, an equity "cushion" of at least 20% is sufficient, though not necessary, to establish "adequate protection", In re Mellor, 734 F. 2d 1396 (9th Cir 1984). (See Motion at p. 20). Smaller equity cushions, as low as 10%, have also been deemed sufficient as discussed in Mellor.

**A. THE ADEQUATE PROTECTION ARGUMENT – §362(d)(1)**

Based solely on admitted facts, i.e. a value of $1.55 million and liens of $1.1 million, there is an equity cushion of $450,000. This is larger than the amount of the YCCS claim and an equity cushion of 29%. In the moving papers (see pg. 8) YCCS acknowledges an equity cushion of at least 28%. Based on Mellor, this more than sufficient and he motion should be denied.

As explained by the Supreme Court in Timbers (United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365 (1988)), a creditor is not entitled to compensation for the time value of money, i.e. accruing unpaid interest. Unless the value of the collateral is declining, no relief from stay is

---

[3] See Proof of Claim filed by YCCS on March 15, 2019 and specifically the response to question 9 – "Amount necessary to cure any default as of the date of the petition: $416,545.91", a copy of which is attached as Exhibit "A" to the Declaration of David A. Tilem submitted herewith.

appropriate. YCCS presents no evidence that the Residence has declined in value and none to suggest that YCCS is at any risk of such a decline.

Timbers makes it clear that a party seeking relief from stay is NOT entitled to maintain a particular equity cushion just so that it can continue to accrue interest and attorney fees as YCCS is proposing. For purposes of computing the equity cushion (and hence adequate protection), The YCCS claim remains what it was at the Petition Date - in this case about $416,500. Nor is it clear that the Court should consider interest accruing in favor of a senior lienholder (as YCCS has also contended). See Orix Credit Alliance, Inc. v. Delta Resources, Inc. (In re Delta Resources, Inc.), 54 F.3d 722, 730, 33 C.B.C.2d 1484, 1495 (11th Cir. 1995) (an oversecured creditor's interest in property which must be protected "encompasses the decline in the value of the collateral only, rather than perpetuating the ratio of collateral to debt"). Simply put, YCCS is not entitled to relief merely because the equity cushion has declined by the accrual of post-petition interest either on its own claim or, arguably, on the claim of a senior lender.

Including post-petition interest is not the only YCCS error. It has also included in the computation nearly $20,000 of legal fees not supported by any evidence. The equity cushion, standing alone, is more that sufficient to deny the motion.

YCCS has neither argued, nor provided any evidence to demonstrate that its equity cushion is eroding for any reason other than the accrual of interest and attorney fees. As argued above, these factors are not appropriate for consideration.

**B.   OTHER CAUSE - §362(d)(1)**

In what appears to be a "throw-away" argument, YCCS also notes that Debtor has not made any payments in 12 months.  Whether this was intended as a separate argument to the existence of "cause" is unclear.  Certainly YCCS has cited no authority to support its argument that a failure to make payments, standing alone, constitutes "cause" or relief from stay.

Suggesting that a debtor's failure to make payments for a period of one year is a basis for "cause" would lead to immediate stay relief in a substantial percentage of cases currently on the Court's docket.  Many debtors have failed to make payments for years on end.

In <u>Price v. Del. State Police Fed. Credit Union</u> (<u>In re Price</u>), 370 F.3d 362, 373 (3rd Cir. 2004), the 3rd Circuit did state that a "persistent failure to make monthly payments under loan documents can constitute cause for granting relief from the automatic stay", but it does not say that such a failure is per se "cause".  The 3rd Circuit panel concluded in that same paragraph as follows:

> as long as the creditor is adequately protected, i.e., the debtor is not harming the collateral and its value is being maintained (ideally, through the making of regular payments), the substantive provisions of the Bankruptcy Code, and the notice provisions of section 521(2), do not give the secured creditor a right to take any action whatsoever.

It is clear from this additional language that the persistent failure to make payments was, standing alone, not the point.  The point was whether the failure to make payments affected adequate protection.

So long as YCCS is adequately protected by a generous equity cushion, so long as the property is maintained and insured, no

1 relief from stay is appropriate under §362(d)(1).

2 **C.  §362(d)(2)**

3       Section 362(d)(2) presents a two-part test: whether there

4 is equity and whether the property is necessary to an effective

5 reorganization.  While either alone is sufficient, the motion fails

6 on both counts.

7       **1.  EQUITY IN THE PROPERTY**

8       With a value of at least $1.55 million and liens of $1.135

9 million, there is, by all accounts, equity in the property.  YCCS

10 makes this admission in its moving papers (see pg. 8-9).

11       Where the parties disagree is whether an equity determination

12 allows for consideration of the costs of sale.  The Appellate Panel

13 has addressed this issue in In re First Yorkshire Holdings, Inc.,

14 470 B.R. 864, 869-870 (9th Cir. BAP 2012)

15       Equity, for purposes of § 362(d)(2)(A), is the difference
      between the value of the property and all encumbrances on
16       it. Sun Valley Newspapers, Inc. v. Sun World Corp. (In re
      Sun Valley Newspapers, Inc.), 171 B.R. 71, 75 (9th Cir.
17       BAP 1994) (citing Stewart v. Gurley, 745 F.2d 1194, 1196
      (9th Cir.1984)). "The concept of `equity' in property is
18       based on the premise that the property itself has some
      economic value to its owner."  Scripps GSB I, LLC v. A
19       Partners, LLC (In re A Partners, LLC), 344 B.R. 114, 121
      (Bankr.E.D.Cal.2006) (emphasis added). Such conclusion is
20       further supported by the definition of equity: "An
      ownership interest" determined by "the amount by which
21       the value of or an interest in property exceeds secured
      claims or liens." Black's Law Dictionary 560 (7th ed.
22       1999).

23 Nowhere in this definition is there any mention of costs of sale

24 and for good reason – the "owner" does not pay cost of sale until

25 the property is sold.  While a sale may occur in this case, that is

26 not the only possible outcome.  Debtor could refinance the

27 property, rent it or further encumber it.

28       In reorganization syle cases, costs of sale are not to be

considered in valuing property to be retained by the Debtor.  In re
Case, 115 B.R. 666, 670 (9th Cir. BAP 1990) (for Chapter 12 plan
confirmation purposes, hypothetical costs should not be deducted
from fair market value in valuing collateral to be retained by
debtor); Lomas Mortgage USA v. Wiese, 980 F.2d 1279, 1284-86 (9th
Cir. 1992) (the second sentence of § 506(a) precludes deduction of
hypothetical costs of sale in valuing Chapter 13 debtor's real
property to be retained by debtor).

Even if costs of sale were to be considered, YCCS proposes an
unrealistic 10% for costs of sale.  The commonly accepted figure is
7%.  Using the 7% figure adds another $50,000 to the amount of
"equity" in the Residence for a total of about $330,000.

There is simply no dispute that, at the present time, the
estate does have equity in the Residence.  The motion should be
denied.

## 2. __NECESSARY FOR REORGANIZATION__

That a Debtor's residence is "necessary" to an effective
reorganization seems obvious, but in this case, the presence of
equity is conclusive.

YCCS be unyielding in its pursuit of a windfall at the expense
of Debtor's residence,[4] but that is not the end of the story.  Nor
is Debtor's status report which was prepared and filed BEFORE YCCS
declared its intransigence.  While YCCS is within its rights, it
merely compels the Debtor to pursue other options – such as renting
the property, selling the Residence or refinancing the YCCS
obligation secured by the Residence.  If YCCS were allowed to

---

[4]     It appears that YCCS, LLC is not satisfied with an 11.5%
nominal interest rate and a default interest rate of more than 15%.
It also wants the equity windfall which a foreclosure would yield.

foreclose, it would prejudice unsecured creditors of the estate and unjustly enrich YCCS.

## IV.

## **YCCS IS NOT ENTITLED TO FURTHER ADEQUATE PROTECTION**

YCCS has, in the alternative, requested adequate protection. As noted above, YCCS is already adequately protected - by an generous equity cushion. There is no basis for providing further adequate protection.

Even if the Court were to require further adequate protection in the form of payments, those payments should be directed to the senior lienholder - not YCCS. The effect on YCCS would be the same.

## V

## **CONCLUSION**

For the reasons set forth above, the motion should be denied. YCCS is adequately protected by the value of the Residence and there is ample equity to benefit the estate.

Dated: July 16, 2019          LAW OFFICES OF DAVID A. TILEM

By: _____
     David A. Tilem, Attorneys for
     Debtor and Debtor-in-Possession

# DECLARATION OF DAVID LEE

I, David Lee, declare and state as follows:

1. I am the Debtor and debtor in possession in the above-entitled Chapter 11 case.

2. This Declaration is based on my personal knowledge. If asked to do so, I would testify to the statements made below.

3. I voluntarily filed this Chapter 11 case on January 7, 2019 (the "Petition Date").

4. This Declaration is submitted in opposition to the relief from stay motion by YCCS, LLC ("YCCS") concerning my residence located at 840 Dunsmuir Ave., Los Angeles, CA 90036 (the "Residence").

5. On June 26, 2019 my counsel filed a motion asking permission for me to hire an appraiser to appraise my home. The objection period expires Tuesday, July 16 - the same day as this opposition is due.

6. The Residence is, and has been my home for many years. I am moving out, temporarily and reluctantly, because I believe it is necessary to save the property and consistent with my responsibilities as a fiduciary to my creditors.

7. The Residence was my home as of the inception of this Chapter 11 case.

8. I think the value of my Residence is $1.69 million and I included this figure in my bankruptcy schedules. I do not believe this value is declining.

9. My residence is encumbered by a senior Deed of Trust securing an obligation of approximately $670,000.

10. My residence is also encumbered by a junior Deed of Trust

which secures a promissory note held by YCCS in the original
principal balance of $365,000.

11. While the terms of the loan stated in the note in favor
of YCCS are not in dispute and speak for themselves, my
understanding is that this was a 2 year loan at 11.5%, all due and
payable December 1, 2019. There is a default interest rate of
16.5%.

12. I do not dispute that the last payment made to YCCS was
June, 2018.

13. I have not carefully reviewed the YCCS Proof of Claim
filed in my bankruptcy case, but the YCCS assertion that I owed
$416,545.91 as of the Petition Date is probably correct.

I declare, under penalty of perjury, that the foregoing is
true and correct and that this Declaration was signed by me on July
1b, 2019 at Los Angeles, California.

DAVID LEE

**DECLARATION OF DAVID A. TILEM**

I, David A. Tilem, declare and state as follows:

1. I am counsel of record for the Debtor and debtor in possession in the above-entitled Chapter 11 case.

2. This Declaration is based on my personal knowledge. If asked to do so, I would testify to the statements made below.

3. Attached as Exhibit "A" is a true and correct copy of the Proof of Claim filed by YCCS, LLC in this case on March 15, 2019 which is designated as Claim #12. I obtained this document from the Court's PACER system.

I declare, under penalty of perjury, that the foregoing is true and correct and that this Declaration was signed by me on July ___, 2019 at Henderson, NV.

_____
DAVID A. TILEM

**"EXHIBIT A"**

| Fill in this information to identify the case: |
| --- |

Debtor 1    <u>In re David Lee</u>

Debtor 2   
(Spouse, if filing)

United States Bankruptcy Court for the: <u>CENTRAL</u>    District of <u>CA</u>
                                                        (State)

Case number <u>2:19-bk-10119-RK</u>

## Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

<u>YCCS LLC, a Hawaiian Limited Liability Company</u>
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor    <u>S.B.S. Trust Deed Network, a California Corporation (servicing agent)</u>

**2. Has this claim been acquired from someone else?**

[x] No

[ ] Yes. From whom?_____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

<u>Baruch C. Cohen, Esq.</u>
Name

<u>4929 Wilshire Boulevard, # 940</u>
Number     Street

<u>Los Angeles, CA 90010</u>
City        State        ZIP Code

Contact phone   <u>323-937-4501</u>

Contact email   baruchcohen@baruchcohenesq.com

Where should payments to the creditor be sent? (if different)

<u>YCCS LLC</u>
Name

<u>47-860 KAMEHAMEHA HWY</u>
Number     Street

<u>KANEOHE, HI 96744</u>
City        State        ZIP Code

Contact phone   <u>808-523-9881</u>

Contact email   cdweese@sunstonecompanies.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

[x] No

[ ] Yes. Claim number on court claims registry (if known)_____       Filed on _____
                                                               MM   / DD   / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

[x] No

[ ] Yes. Who made the earlier filing?   _____

B410

0014

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☒ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:___ ___ ___ ___

**7. How much is the claim?** $ <u>431,018.95</u> . Does this amount include interest or other charges?

☐ No

☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

<u>SECURED REAL ESTATE NOTE & MORTGAGE</u>

**9. Is all or part of the claim secured?**

☐ No

☒ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☒ Other. Describe:  <u>840 South Dunsmuir Avenue, Los Angeles, California 90036</u>

**Basis for perfection:**  <u>Recordation of Lien</u>

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**  $<u>1,500,000.0</u>

**Amount of the claim that is secured:**  $<u>431,018.95</u>

**Amount of the claim that is unsecured:** $<u>0.00</u>          (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $<u>416,545.91</u>

**Annual Interest Rate** (when case was filed)<u>16.50</u> %

☒ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☒ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.  $<u>0.00</u>

**11. Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property:_____

0015

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

[x] No

[ ] Yes. *Check one:*

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

| | | Amount entitled to priority |
|---|---|---|
| [ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ 0.00 |
| [ ] Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ 0.00 |
| [ ] Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ 0.00 |
| [ ] Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ 0.00 |
| [ ] Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ 0.00 |
| [ ] Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | | $ 0.00 |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:   Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

[ ] I am the creditor.

[x] I am the creditor's attorney or authorized agent.

[ ] I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

[ ] I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  3-14-2019
MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Baruch C. Cohen |
|---|---|
| | First name    Middle name    Last name |
| Title | Attorney for Creditor |
| Company | Law Office of Baruch C. Cohen, APLC |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 4929 Wilshire Boulevard, Suite 940 |
| | Number    Street |
| | Los Angeles, CA 90010 |
| | City    State    ZIP Code |
| Contact phone | 323-937-4501 | Email baruchcohen@baruchcohenesq.com |

---

## DECLARATION OF CURTIS DEWEESE

I, CURTIS DEWEESE, declare as follows:

1. I am an adult over the age of 18. The facts stated below are true and correct within the best of my personal knowledge and if called upon to testify to them I could and would competently do so.

2. This declaration is in support of the **PROOF OF CLAIM** filed in the Chapter 11 bankruptcy of David Lee, # 2:19-BK-10119-RK.

3. I am the principal owner of YCCS LLC, a Hawaiian Limited Liability Company (hereinafter referred to as "YCCS"), which holds a 2nd Deed of Trust dated 11-14-2017, that was executed by the Debtor in favor of YCCS as beneficiary, that was recorded on 11-21-2017, as Instrument No. 20171343125, on the Debtor's property located at 840 South Dunsmuir, Los Angeles, CA 90036.

4. David Lee, the Debtor executed a promissory note in the amount of $365,000.00 secured by a mortgage or deed of trust.[1] The promissory note is either made payable to YCCS or has been duly indorsed. YCCS  directly or through an agent, has possession of the promissory note. YCCS is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

5. YCCS had a duly-noticed foreclosure sale of the property scheduled for 1-8-2019, and as you know, the Debtor filed his Chapter 11 bankruptcy on 1-7-2019, thus thwarting YCCS' foreclosure.[2]

6. The Debtor's *Schedule D* lists YCCS's 2nd trust deed at $400,000.00 but incorrectly identified YCCS under Pacific Private Money, which was  the original Trustee which was

---

[1]A true and correct copy of the *Note Secured By a Deed of Trust* & the *Deed of Trust* is attached hereto as Exhibit "1" and is incorporated herein by this reference.

[2]A true and correct copy of the *Notice of Default* and the Notice of Trustee's Sale is attached hereto as Exhibit "2" and is incorporated herein by this reference.

*Declaration of Curtis Deweese in Support of Proof oif Claim*

1    substituted to S.B.S. Trust Deed Network, a California Corporation on 9-4-2018.

2

3    I declare under penalty of perjury under the laws of the State of California that the

4    foregoing is true and correct.

5    Executed March 14, 2019, at Honolulu, Hawaii.

6                                    By ___/S/ *Curtis Deweese*___

7                                        CURTIS DEWEESE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Declaration of Curtis Deweese in Support of Proof oif Claim*

2

0018

## Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

### Part 1: Mortgage and Case Information

Case number: 2:19-bk-101
Debtor 1: David Lee
Debtor 2:
Last 4 digits to identify: _ _ _ _
Creditor:
Servicer:
Fixed accrual/daily simple interest/other: $167.29 Daily Fixed

### Part 2: Total Debt Calculation

Principal balance: 365,000.00
Interest due: 47,754.15
Fees, costs due: 18,264.80
Escrow deficiency for funds advanced:
Less total funds on hand: −
Total debt: 431,018.95

### Part 3: Arrearage as of Date of the Petition

Principal & interest due: 407,324.63
Prepetition fees due: 9,221.28
Escrow deficiency for funds advanced:
Projected escrow shortage:
Less funds on hand: −
Total prepetition arrearage: 416,545.91

### Part 4: Monthly Mortgage Payment

Principal & interest: 5,018.75 Int. Only
Monthly escrow:
Private mortgage insurance:
Total monthly payment: 5,018.75

### Part 5: Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 4/9/18 | 3,497.92 | (3497.92) | 349.80 | NSF | 3/1/18 | 368,497.92 | | 3497.92 | | 349.80 | | 365,000.00 | 3,497.92 | | 349.80 | |
| 4/9/18 | | (349.80) | | Late Fee Paid | 3/10/18 | 368,497.92 | | | | (349.80) | | 365,000.00 | 3497.92 | | 0.00 | |
| 4/9/18 | | | 25.00 | NSF Fee | | 368,497.92 | | | | 25.00 | | 365,000.00 | 3,497.92 | | 25.00 | |
| 4/1/18 | 5,018.75 | 0.00 | 349.80 | Late Fee | 4/10/18 | 373,516.67 | | 5018.75 | | 349.80 | | 365,000.00 | 8,516.67 | | 374.80 | |
| 4/20/18 | | (3,497.92) | | Feb 2018 Int. | 3/1/18 | 370,018.75 | | (3497.92) | | | | 365,000.00 | 5018.75 | | 374.80 | |
| 4/20/18 | | (349.80) | | Feb 2018 LF | 3/1/18 | 370,018.75 | | | | (349.80) | | 365,000.00 | 5,018.75 | | 25.00 | |
| 5/1/18 | 5,018.75 | | | April 2018 Int. | 5/1/18 | 375,037.50 | | 5018.75 | | | | 365,000.00 | 10,037.50 | | 25.00 | |
| 5/10/18 | | | 349.80 | Late Fee | 5/10/18 | 375,037.50 | | | | 349.80 | | 365,000.00 | 10,037.50 | | 374.80 | |
| 5/2/18 | | (3,497.92) | | March 2018 Int | 4/1/18 | 371,539.58 | | (3497.92) | | | | 365,000.00 | 6,539.58 | | 374.80 | |
| 5/2/18 | | (349.80) | | Mar 2018 LF | 4/10/18 | 371,539.58 | | | | 349.80 | | 365,000.00 | 6539.58 | | 25.00 | |
| 5/31/18 | | (5018.75) | | April 2016 Int. | 5/1/18 | 366,520.83 | | (5018.75) | | | | 365,000.00 | 1520.83 | | 25.00 | |
| 6/1/18 | | 501.88 | | Apr 2018 LF | 5/10/18 | 366,520.83 | | | | 501.88 | | 365,000.00 | 1520.83 | | 526.88 | |
| 6/8/18 | | (501.88) | | May 2018 LF | 6/10/18 | 366,520.83 | | | | (501.88) | | 365,000.00 | 1520.83 | | 25.00 | |
| 6/8/18 | | 5018.75 | | NSF | 5/1/18 | 371,539.58 | | 5018.75 | | | | 365,000.00 | 6,539.58 | | 25.00 | |
| 6/8/18 | | 25.00 | | NSF Fee | 6/8/18 | 371,539.58 | | | | 25.00 | | 365,000.00 | 6,539.58 | | 50.00 | |
| 6/1/18 | 5018.75 | | | May 2018 Int. | 6/1/18 | 376,558.33 | | 5018.75 | | | | 365,000.00 | 11,558.33 | | 50.00 | |

Official Form 410A                          Mortgage Proof of Claim Attachment                          page 1 of 2

## Mortgage Proof of Claim Attachment: Additional Page
(12/15)

Case number: **2:19-bk-101**

Debtor 1: **David Lee**

### Part 5 : Loan Payment History from First Date of Default

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 6/10/18 | | | 501.88 | May 2018 LF | 6/10/18 | 376,558.33 | | | | 501.88 | | 365,000.00 | 11,558.33 | | 551.88 | |
| 7/1/18 | 5,018.75 | | | June 2018 Int. | 7/1/18 | 381,577.08 | | 5018.75 | | | | 365,000.00 | 16,577.08 | | 551.88 | |
| 7/5/18 | | (5,018.75) | | May 2018 IP | 6/1/18 | 376,558.33 | | (5081.75) | | | | 365,000.00 | 11,558.33 | | 551.88 | |
| 7/5/18 | | (8,972.93) | | June/July Int. | 7/1/18 | 367,585.20 | | (8,972.93) | | | | 365,000.00 | 2,585.40 | | 551.88 | |
| 7/10/18 | | | 501.88 | June 2018 LF | 7/10/18 | 367,585.40 | | | | 501.88 | | 365,000.00 | 2,585.40 | | 1,053.76 | |
| 7/13/18 | | 5018.75 | | NSF Return Pmt | | 372,604.15 | | 5018.75 | | | | 365,000.00 | 7,604.15 | | 1,053.76 | |
| 7/13/18 | | | 25.00 | NSF Fee | | 372,604.15 | | | | 25.00 | | 365,000.00 | 7,604.15 | | 1,078.76 | |
| 8/1/18 | 5,018.75 | | | July 2018 Int. | 8/1/18 | 377,622.90 | | 5018.75 | | | | 365,000.00 | 12,622.90 | | 1,078.76 | |
| 8/10/18 | | | 501.88 | July Late Fee | 8/10/18 | 377,622.90 | | | | 501.88 | | 365,000.00 | 12,622.90 | | 1,580.64 | |
| 9/1/18 | 5,018.75 | | | Aug 2018 Int | 9/10/18 | 382,641.65 | | 5018.75 | | | | 365,000.00 | 17,641.65 | | 1,580.64 | |
| 9/10/18 | | | 501.88 | Aug 2018 LF | 9/10/18 | 382,641.65 | | | | 501.88 | | 365,000.00 | 17,641.65 | | 2082.52 | |
| 10/1/18 | 5,018.75 | | | Sept 2018 Int | 10/1/18 | 387,660.40 | | 5018.75 | | | | 365,000.00 | 22,660.40 | | 2,082.52 | |
| 10/10/18 | | | 501.88 | Sept 2018 LF | 10/10/18 | 387,660.40 | | | | 501.88 | | 365,000.00 | 22,660.40 | | 2,584.40 | |
| 11/1/18 | 5018.75 | | | Oct 2018 Int. | 11/1/18 | 392,679.15 | | 5018.75 | | | | 365,000.00 | 27,679.15 | | 2584.40 | |
| 11/10/18 | | | 501.88 | Oct 2018 LF | 11/10/18 | 392,679.15 | | | | 501.88 | | 365,000.00 | 27,679.15 | | 3086.28 | |
| 12/1/18 | 5018.75 | | | Nov 2018 Int | 12/1/18 | 397,697.90 | | 5018.75 | | | | 365,000.00 | 32,697.90 | | 3086.28 | |
| 12/10/18 | | | 501.88 | Nov 2018 LF | 12/10/18 | 397,697.90 | | | | 501.88 | | 365,000.00 | 32,697.90 | | 3588.16 | |
| 1/1/19 | 5018.75 | | | Dec 2018 Int | 1/1/19 | 402,716.65 | | 5018.75 | | | | 365,000.00 | 37,716.65 | | 3588.16 | |
| 1/10/19 | | | 501.88 | Dec 2018 LF | 1/10/19 | 402,716.65 | | | | 501.88 | | 365,000.00 | 37,716.65 | | 4090.04 | |
| 2/1/19 | 5018.75 | | | Jan 2019 Int | 2/1/19 | 407,735.40 | | 5018.75 | | | | 365,000.00 | 42,735.40 | | 4090.04 | |
| 2/10/19 | | | 501.88 | Jan 2019 LF | 2/10/19 | 407,735.40 | | | | 501.88 | | 365,000.00 | 42,735.40 | | 4591.92 | |
| 3/1/19 | 5018.75 | | | Feb 2019 Int | 2/1/19 | 412,754.15 | | 5018.75 | | | | 365,000.00 | 47,754.15 | | 4591.92 | |
| 3/10/19 | | | 501.88 | Feb 2019 LF | 2/10/19 | 412,754.15 | | | | 501.88 | | 365,000.00 | 47,754.15 | | 5093.80 | |
| 1/15/19 | | | 5,446.00 | Foreclosure Fees | | 412,754.15 | | | | 5,446.00 | | 365,000.00 | 47,754.15 | | 10,539.80 | |
| 3/13/19 | | | 7,725.00 | BK Attny Fees | | 412,754.15 | | | | 7,725.00 | | 365,000.00 | 47,754.15 | | 18,264.80 | |

# EXHIBIT - 1

# NOTE SECURED BY A DEED OF TRUST

Loan Number: 2017-0925
APN # 5089-020-012

November 14, 2017

LOS ANGELES, California

840 South Dunsmuir Avenue Los Angeles CA 90036
*Property Address*

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay $365,000.00 (*THREE HUNDRED SIXTY-FIVE THOUSAND AND 00/100 DOLLARS*), (this amount will be called "principal"), plus interest, to the order of **YCCS LLC, a Hawaiian limited liability company** (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

### 2. INTEREST

I will pay interest at a yearly rate as described in paragraph 3 below.

Interest commences on **date Lender funds are received**, and if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.

Interest will be charged in arrears on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

### 3. PAYMENTS

My payments are ☒ Interest Only  ☐ Fully Amortized  ☐ Other
I will make my payments each month as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 23 | Monthly beginning January 1, 2018 | 11.50% | $3,497.92 |
| 1 | December 1, 2019 | 11.50% | $368,497.92 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on *12/01/2019* ("**Due Date**") I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.

I will make my payments payable to **\*Pacific Private Money, Inc., 1555 Grant Avenue Novato CA 94945\***, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

### 4. EXTENSION OF TERM UPON MATURITY

Borrower does not have the unilateral right to extend the term of this loan beyond the loan Due Date. However, on the condition that Borrower is in Good Standing (defined below), lender may, in its sole determination, agree to grant an extension of time on the loan Due Date. In the event of Lender's approval, the extension of time allowed shall be for up to two 90-day extensions at a cost of processing fee of $1,495.00 plus One point (1.00%) for each 90 days (the "**Extension Fee**"), calculated on the outstanding principal loan balance. The Extension Fee shall be charged automatically, without notice, and shall be added to Lender's demand upon payoff. The Extension Fee shall be due and payable whether or not Lender formally approves the extension.

For this purpose, Good Standing is defined as 1) all monthly payments have been made on time as agreed, and 2) property taxes and property insurance are paid current.

Borrower's Initials

### 5. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) **Late Charge For Overdue Payments.** If I do not pay the full amount of each monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 10.000% of my overdue payment or U.S. $349.80, whichever is more. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than 10 days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

I agree that the late charge payable pursuant to this paragraph represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional expenses Note Lender will incur by reason of such late payment. The late charge is payable in addition to, and not in lieu of, any interest payable at the Default Rate pursuant to Paragraph 4(B).

0022

**(B) Default and Acceleration**

I unconditionally agree NOT to defer or accrue any interest on any note, mortgage or lien that is senior to the Deed of Trust securing this loan. In the event I allow any interest to accrue or be deferred of an existing Note, which is in superior lien position, then such an event, whether by omission or commission, shall be deemed a material default under the Promissory Note and Deed of Trust, and Lender shall be entitled to all remedies available to Lender under said Note, Deed of Trust and any other remedies available at law or in equity. If the superior Note accelerates the maturity date or calls the note for any reason, then this Note shall become immediately due and payable.

Borrower's Initials

If I do not pay the full amount of each monthly payment due under this Note by the date stated in Section 3 above, I will be in default, and the Note Lender may demand that I pay immediately all amounts that I owe under this Note.

Even if, at a time when I am in default, the Note Lender does not require me to pay immediately in full as described above, the Note Lender will still have the right to do so if I am in default at a later time.

In the event of a default under the terms of this Note, including but not limited to: (a) non-payment of any installment of principal or interest within Ten (10) days of its designated due date; (b) failure to pay insurance premiums or property taxes when they become due; (c) transfer of title; or (d) that this Note is not paid in full on or before the due date, then any unpaid principal balance of the loan at the time of default shall bear interest at the rate of FIVE percent (5.000%) (the "Default Rate") above the herein stated note rate, automatically and without notice, from the time of default, until this Note has been paid in full, or until the specific default has been cured. If I do not pay the full amount of the outstanding balance of the loan at maturity (the "balloon balance" referenced in Paragraph 3 above), the Default Rate will automatically apply to all interest accrued thereafter without demand by the Note Lender. I further agree that the increase in the rate of interest payable under this Note to the default rate represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional cost and expense Note Lender will incur by reason of my delinquent payment and the additional compensation Note Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan.

Failure to Pay at Maturity Date - Default Rate. Should Borrower fail to pay all sums due under this Note at the Maturity Date set forth above, the unpaid principal shall bear interest at the herein stated rate set forth above plus FIVE percent (5.000%) ("Default Rate"), automatically and without notice."

(C) Payment of Note Lender's Costs and Expenses

If the Note Lender has required me to pay immediately in full as described above, the Note Lender will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees and expert's fees. A default upon any interest of any Note Lender shall be a default upon all interests.

(D) Payment with Good Funds. If any check used to make any payment is returned unpaid by my bank, I agree to pay a Returned Check charge of $50.00 plus any late charge that may become due because of the returned check. I further agree that if any payment is made by a personal check that is not honored by my bank, at the option of the Note Lender, to make all future payments by Cashier's Check, Money Order or other certified funds.

(E) Advancing Fee. For any advance made to senior encumbrances, property taxes, insurance premiums, and/or other obligations to protect the Note Lender's interest in this Note, including, but not limited to, attorneys' fees and costs, there will be an Advancing fee of $50.00 for each such advance. Advances will bear interest at the same rate that is charged on the principal of this Note from the date of advancement to such date when that certain advance and advance fee is paid in full in the form of a Cashier's Check, Money Order, or other certified funds.

## 6.    BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT FEES

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows:

Borrower hereby agrees:

Beneficiary is guaranteed to receive a minimum of SIX (6) months interest based on the original principal balance together with any odd days interest due or paid through escrow.

For an amount of _$20,987.52_, plus any odd days interest paid through escrow.

In the event Borrower wishes to prepay or payoff the Loan prior to _06/01/2018_, Borrower agrees to pay Lender the difference between the interest previously received by Lender and the amount that was guaranteed and agreed to listed above. There shall be no prepayment penalty for any prepayment(s) due that are made after 06/01/2018.

Borrower's Initials

## 7. WAIVER OF STATUTORY REGULATIONS

Pacific Private Money, Inc. Cal BRE #01897444 ; NMLS #945582
PPM Note

By initialing below, I waive any rights to and under the California Civil Code 2954.10 or otherwise to prepay this Note, in whole or in part, without a prepayment penalty as described in Paragraph 5 hereinabove. I further acknowledge that prepayment of this Note may result in Note Lender's incurring additional losses, costs, expenses, and liabilities, including, but not limited to, lost revenue and lost profits. I, therefore, agree to pay the prepayment penalty as described in Paragraph 5 hereinabove, if any principal amount is prepaid, whether voluntarily, or by reason of an acceleration of the Maturity Date on default (including, but not limited to, acceleration on any transfer or conveyance of any right, title, or interest in the Mortgaged Property (as defined in Paragraph 9 below) giving Note Lender the right to accelerate the maturity of this Note as provided in the Security Instrument, as defined in Paragraph 9 below).

**I AGREE THAT LENDER'S WILLINGNESS TO OFFER TO ME THE INTEREST RATE DESCRIBED ABOVE IS SUFFICIENT AND INDEPENDENT CONSIDERATION, GIVEN INDIVIDUAL WEIGHT BY LENDER, FOR THIS WAIVER. I FURTHER UNDERSTAND THAT LENDER WOULD NOT OFFER SUCH AN INTEREST RATE TO ME ABSENT THIS WAIVER.**

Borrower's Initials

### 8. OTHER BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

### 9. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

### 10. THIS NOTE IS SECURED BY A DEED OF TRUST

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note against **840 South Dunsmuir Avenue Los Angeles CA 90036**, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, enter into a contract of sale, lease for a term of more than one (1) year (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, including the creation of a lien or encumbrance subordinate to this Deed of Trust, but excluding a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

All of the agreements, conditions, covenants, provisions and stipulations contained in the Deed of Trust and the loan documents which are to be kept and performed by Borrower are hereby made a part of this Note to the same extent and with the same force and effect as if they were fully set forth herein, and Borrower covenants and agrees to keep and perform them, or cause them to be kept and performed, strictly in accordance with their terms. If any Borrower is not also a trustor of the Deed of Trust, such Borrower makes all covenants, representations, warranties and indemnities contained in the Deed of Trust, jointly and severally with the trustor of the Deed of Trust to and for the benefit of Lender.

Borrower acknowledges and agrees that as further set forth in Section 19 of the Deed of Trust, the provisions of which are incorporated herein, Lender shall have the right to accelerate the indebtedness evidenced by this Note in the event that the Property or any part thereof or interest therein is sold (including any installment sales agreement), conveyed, disposed of, alienated, hypothecated, leased, assigned, pledged, mortgaged, further encumbered or otherwise transferred, or Borrower is divested of its title to the Property or any interest therein, in any manner or way, whether voluntarily or involuntarily, without the prior written consent of Lender being first obtained, which consent may be withheld in Lender's sole discretion. Furthermore, for the purposes of the foregoing, the sale, conveyance, transfer, disposition, alienation, hypothecation, pledge or encumbering (whether voluntarily or involuntarily) of all or any portion of the ownership interest in (or, directly or indirectly through constituent parties, any of the ultimate beneficial ownership interest in) Borrower shall be deemed to be a transfer of an interest in the Property, subject to the limited exceptions set forth in Section 19 of the Deed of Trust.

**11. USURY SAVINGS CLAUSE**

The terms of this Loan are hereby expressly limited so that in no contingency or event whatsoever shall the amount paid or agreed to be paid to Lender for the use, forbearance, or detention of the money to be loaned exceed the maximum amount or rate permissible under applicable law. If, for any reason whatsoever, fulfillment of any provision of this Loan, at the time fulfillment of such provision shall be due, is prohibited by law, the obligation to be fulfilled shall be reduced to the maximum not so prohibited; and if for any reason whatsoever Lender should ever receive as interest an amount which would exceed the highest lawful rate, such amount as would be excessive interest shall be applied to the reduction of the principal of the Note and not to the payment of interest. This provision shall control every other provision contained in the Loan Documents.

**12. LOAN ARRANGED BY REAL ESTATE BROKER**

This loan was arranged by Pacific Private Money, Inc. a California Bureau of Real Estate Licensed Brokerage, license #01897444 and NMLS license #945582 and is thus exempt from usury laws pursuant to Section 1 of Article 15 of the California Constitution.

**13. RIGHT TO ASSIGN**

The holder of this Note shall have the right to sell, assign, or otherwise transfer, either in part or in its entirety, this Note, the Deed of Trust, and other instruments evidencing or securing the indebtedness of this Note to one or more investors without Borrower's consent.

**14. GENERAL PROVISIONS**

(A) Time is of the essence of this Note.

(B) This Note may not be changed, amended, or modified except by a further written agreement between Borrower and Note Lender.

(C) Any failure of Note Lender to exercise any of its rights under this Note shall not constitute a waiver of those rights by Note Lender or a waiver by Note Lender of any other rights.

(D) This Note and the rights and duties of Borrower and Note Lender shall be governed by the laws of the State of California for all purposes.

(E) Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but, if any provision of this Note shall be prohibited or invalid under applicable law, such provisions shall be ineffective only to the extent of such prohibitions or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Note.

**BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants by contained in this Financial Instrument and in any addendums or rider(s) executed by Borrower.**

David D. Lee, an unmarried man

| Borrower    David D. Lee | Date | Borrower | Date |

---

## ASSIGNMENT OF NOTE
## SECURED BY A DEED OF TRUST

Date: _____

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:

all beneficial interest under the within Note, without recourse, and Deed of Trust securing same

_____          _____

_____          _____

**DO NOT DESTROY THIS NOTE:** When paid it must be surrendered to the Trustee, together with the Deed of Trust securing same for cancellation, before reconveyance will be made.

Recording Requested By
Pacific Private Money, Inc. c/o Mark Hanf

**When Recorded Mail To**
Pacific Private Money, Inc. c/o Mark Hanf
1555 Grant Avenue
Novato  CA  94945

Loan # 2017-0925
Escrow # 100-1904973-62

APN # 5089-020-012



Orange Coast Title Company                    Space above this line for recorder's use
Order No. 100-1904973-62

# DEED OF TRUST
## ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

This Deed of Trust, made this  14th  day of  November 2017, among David D. Lee, an unmarried man, whose address is 840 South Dunsmuir Avenue Los Angeles CA 90036 (herein "Borrower or Trustor"), Pacific Private Money, Inc. (herein "Trustee"), and the Beneficiary, YCCS LLC, a Hawaiian limited liability company  c/o Pacific Private Money, Inc., whose address is 1555 Grant Avenue Novato CA 94945 (herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the county of Los Angeles, State of California:

**See Legal Description attached as "EXHIBIT A"**

**APN: 5089-020-012**, which has the address of **840 South Dunsmuir Avenue Los Angeles CA 90036**
(herein "Property Address");

TOGETHER with all buildings, improvements and tenements now or hereafter erected on the property, and all heretofore or hereafter vacated alleys and streets abutting the property, and all policies of insurance, all awards if damages and compensation as a result of condemnation, easements, rights, appurtenances, rents (subject however to the assignment of rents to Lender herein), royalties, mineral, oil and gas rights and profits, water, water rights, and water stock appurtenant to the property, and all fixtures, machinery, equipment, engines, boilers, incinerators, building materials and appliances, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light; and all elevators, and related machinery and equipment, fire prevention and extinguishing apparatus, security equipment and dishwashers, disposals, awnings, storm windows, storm doors, screens, mirrors, cabinets, paneling, attached floor coverings, antennas and trees and other fixtures under the UCC (if applicable) and all existing and future leases, licenses and agreements together will all guarantees; all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the real property covered by this Instrument; and all of the foregoing, together with said property (or the leasehold estate in the event this Instrument is on a leasehold) are herein referred to as the "Property":

**THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:**

(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated 11/14/2017, in the principal sum of $365,000.00 *(THREE HUNDRED SIXTY-FIVE THOUSAND AND 00/100 DOLLARS)*, with interest thereon, with the balance of the indebtedness, if not sooner paid, due and payable on 12/1/2019, and all renewals, extensions and modifications thereof; (b) the repayment of any future advances, with interest thereon, made by Lender to Borrower  (herein "Future Advances"); (c) the performance of the covenants and agreements of Borrower contained in a Construction Loan Agreement between Lender and Borrower dated <u>N/A</u>, if any, as provided in paragraph 25 hereof; (d) the payment of all other sums, with interest thereon advanced in accordance herewith to protect the security of this Instrument; and (e) the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant, convey and assign the Property (and, if this instrument is on a leasehold, that the ground lease is in full force and effect without modification except as noted above and without default on the part of either lessor or lessee thereunder), and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

**UNIFORM COVENANTS.**

**Borrower and Lender covenant and agree as follows:**

0026

**1. PAYMENT OF PRINCIPAL AND INTEREST.** Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, any prepayment and late charges provided in the Note, and all other sums secured by this Instrument or any other obligation secured by a lien which is senior in priority to this Instrument.

**2. FUNDS FOR TAXES, INSURANCE AND OTHER CHARGES.** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. APPLICATION OF PAYMENTS.** Unless applicable law provides otherwise, all payments received by Lender from Borrower under the Note or this Instrument shall be applied by Lender in the following order of priority: (i) any late charges (ii) amounts payable to Lender by Borrower under paragraph 2 hereof if applicable; (iii) interest payable on the Note; (iv) principal of the Note; (v) interest payable on advances made pursuant to paragraph 8 hereof; (vi) principal of advances made pursuant to paragraph 8 hereof; (vii) interest payable on any Future Advance, provided that if more than one Future Advance is outstanding, Lender may apply payments received among the amounts of interest payable on the Future Advances in such order as Lender, in Lender's sole discretion, may determine; (viii) principal of any Future Advance, provided that if more than one Future Advance is outstanding, Lender may apply payments received among the principal balances of the Future Advances in such order as Lender, in Lender's sole discretion, may determine; and (ix) any other sums secured by this Instrument in such order as Lender, at Lender's option, may determine; provided, however, that Lender may, at Lender's option, apply any sums payable pursuant to paragraph 8 hereof prior to interest on and principal of the Note, but such application shall not otherwise affect the order of priority or application specified in this paragraph 3.

**4. CHARGES; LIENS.** Borrower shall promptly discharge any lien not approved by Lender in writing, and Borrower shall pay, when due, the claims of all persons supplying labor or materials to or in connection with the Property. Without Lender's prior written permission, Borrower shall not allow any lien inferior to this Instrument to be perfected against the Property. Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. HAZARD INSURANCE.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured by carriers at all times satisfactory to Lender against loss by fire, hazards included within the term "extended coverage", rent loss and such other hazards, casualties, liabilities and contingencies as Lender (and, if this Instrument is on a leasehold, the ground lease) shall require and in such amounts and for such periods as Lender shall require.

All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in form acceptable to Lender. Lender shall have the right to hold the policies, and Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums. At least thirty days prior to the expiration date of a policy, Borrower shall deliver to Lender a renewal policy in form satisfactory to Lender.

In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to Lender. Borrower hereby authorizes and empowers Lender as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claim under insurance policies, to appear in and prosecute any action arising from such insurance policies, to collect and receive insurance proceeds, and to deduct therefrom Lender's expenses incurred in the collection of such proceeds; provided however, that nothing contained in this paragraph 5 shall require Lender to incur any expense or take any action hereunder. Borrower further authorizes Lender, at Lender's option, (i) to hold the balance of such proceeds to be used to reimburse Borrower for the cost of reconstruction or repair of the Property if, in its sole discretion, Lender determines that its security will not be materially impaired, or (ii) to apply the balance of such proceeds to the payment of the sums secured by this Instrument, whether or not then due, in the order of application set forth in paragraph 3 hereof (subject, however, to the rights of the lessor under the ground lease if this Instrument is on a leasehold).

If the insurance proceeds are held by Lender to reimburse Borrower for the cost of restoration and repair of the Property, the Property shall be restored to the equivalent of its original condition or such other condition as Lender may approve in writing. Lender may, at Lender's option, condition disbursement of said proceeds on Lender's approval of plans and specifications of an architect satisfactory to Lender, contractor's cost estimates, architect's certificates, waivers of liens, sworn statements of mechanics and materialmen and such other evidence of costs, percentage completion of construction, application of payments, and satisfaction of liens as Lender may reasonably require. If the insurance proceeds are applied to the payment of the sums secured by this Instrument, any such application of proceeds to principal shall not extend or postpone the due dates of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amounts of such installments. If the Property is sold pursuant to paragraph 27 hereof or if Lender acquires title to the Property, Lender shall have all of the right, title and interest of Borrower in and to any insurance policies and unearned premiums thereon and in and to the proceeds resulting from any damage to the Property prior to such sale or acquisition.

If Borrower obtains earthquake, flood, or any other hazard insurance or any other insurance on the Property, and such insurance is not specifically required by the Lender, then such insurance shall : (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

6. PRESERVATION AND MAINTENANCE OF PROPERTY; LEASEHOLDS. Borrower (i) shall not commit waste or permit impairment or deterioration of the Property, (ii) shall not abandon the Property, (iii) shall restore or repair promptly and in a good and workmanlike manner all or any part of the Property to the equivalent of its original condition, or such other condition as Lender may approve in writing, in the event of any damage, injury or loss thereto, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair, (iv) shall keep the Property, including improvements, fixtures, equipment, machinery and appliances thereon, in good repair and shall replace fixtures, equipment, machinery and appliances on the Property when necessary to keep such items in good repair, (v) shall comply with all laws, ordinances, regulations and requirements of any governmental body which are applicable to the Property, (vi) shall provide, if it is a multifamily dwelling, for professional management of the Property by a residential rental property manager satisfactory to Lender pursuant to a contract approved by Lender in writing, unless such requirement shall be waived by Lender in writing, (vii) shall generally operate and maintain the Property in a manner to ensure maximum rentals, if it is a multifamily dwelling, and (viii) shall give notice in writing to Lender of and, unless otherwise directed in writing by Lender, appear in and defend any action or proceeding purporting to affect the Property, the security of this Instrument or the rights or powers of Lender. Neither Borrower nor any tenant or other person shall remove, demolish or alter any improvement now existing or hereafter erected on the Property or any fixture, equipment, machinery or appliance in or on the Property except when incident to the replacement of fixtures, equipment, machinery and appliances with items of like kind.

If this Instrument is on a leasehold, Borrower (i) shall comply with the provisions of the ground lease, (ii) shall give immediate written notice to Lender of any default by lessor under the ground lease or of any notice received by Borrower from such lessor of any default under the ground lease by Borrower, (iii) shall exercise any option to renew or extend the ground lease and give written confirmation thereof to Lender within thirty days after such option becomes exercisable, (iv) shall give immediate written notice to Lender of the commencement of any remedial proceedings under the ground lease by any party thereto and, if required by Lender, shall permit Lender as Borrower's attorney-in-fact to control and act for Borrower in any such remedial proceedings and (v) shall within thirty days after request by Lender obtain from the lessor under the ground lease and deliver to Lender the lessor's estoppel certificate required thereunder, if any. Borrower hereby expressly transfers and assigns to Lender the benefit of all covenants contained in the ground lease, whether or not such covenants run with the land, but Lender shall have no liability with respect to such covenants nor with respect to any other covenants contained in the ground lease.

Borrower shall not surrender the leasehold estate and interests herein conveyed nor terminate or cancel the ground lease creating said estate and interests, and Borrower shall not, without the express written consent of Lender, alter or amend said ground lease. Borrower covenants and agrees that there shall not be a merger of the ground lease, or of the leasehold estate created thereby, with the fee estate covered by the ground lease by reason of said leasehold estate or said fee estate, or any part of either, coming into common

ownership, unless Lender shall consent in writing to such merger; if Borrower shall acquire such fee estate, then this Instrument shall simultaneously and without further action be spread so as to become a lien on such fee estate.

7. USE OF PROPERTY. Unless required by applicable law or unless Lender has otherwise agreed in writing, Borrower shall not allow changes in the use for which all or any part of the Property was intended at the time this Instrument was executed. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Property without Lender's prior written consent.

8. PROTECTION OF LENDER'S SECURITY. If Borrower fails to perform any of the covenants and agreements contained in this Instrument, or if any action or proceeding is commenced which affects the Property or title hereto or the interest of Lender therein, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such action as Lender deems necessary, in its sole discretion, to protect Lender's interest, including, but not limited to, (i) disbursement of attorney's fees, (ii) entry upon the Property to make repairs, (iii) procurement of satisfactory insurance as provided in paragraph 5 hereof, and (iv) if this Instrument is on a leasehold, exercise of any option to renew or extend the ground lease on behalf of Borrower and the curing of any default of Borrower in the terms and conditions of the ground lease.

Any amounts disbursed by Lender pursuant to this paragraph 8, with interest thereon, shall become additional indebtedness of Borrower secured by this Instrument. Unless Borrower and Lender agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note unless collection from Borrower of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law. Borrower hereby covenants and agrees that Lender shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the indebtedness secured hereby. Nothing contained in this paragraph 8 shall require Lender to incur any expense or take any action hereunder.

9. INSPECTION. Lender may make or cause to be made reasonable entries upon and inspections of the Property.

10. BOOKS AND RECORDS. Borrower shall keep and maintain at all times at Borrower's address stated below, or at such other place as Lender may approve in writing, complete and accurate books of account and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases and other instruments which affect the Property. Such books, records, contracts, leases and other instruments shall be subject to examination and inspection at any reasonable time by Lender. Upon Lender's request, Borrower shall furnish to Lender, within one hundred twenty days after the end of each fiscal year of Borrower, a balance sheet, a statement of income and expenses of the Property and a statement of changes in financial position, each in reasonable detail and certified by Borrower and, if Lender shall require, by an independent certified public accountant. Borrower shall furnish, together with the foregoing financial statements and at any other time upon Lender's request, a rent schedule for the Property, certified by Borrower, showing the name of each tenant, and for each tenant, the space occupied, the lease expiration date, the rent payable and the rent paid.

11. CONDEMNATION. Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Lender in writing. Borrower authorizes Lender, at Lender's option, as attorney-in-fact for Borrower, to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any condemnation or other taking of the Property, whether direct or indirect, and to settle or compromise any claim in connection with such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Lender subject, if this Instrument is on a leasehold, to the rights of lessor under the ground lease.

Borrower authorizes Lender to apply such awards, payments, proceeds or damages, after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to restoration or repair of the Property or to payment of the sums secured by this Instrument, whether or not then due, in the order of application set forth in paragraph 3 hereof, with the balance, if any, to Borrower. Unless Borrower and Lender otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amount of such installments. Borrower agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Lender may require.

12. BORROWER AND LIEN NOT RELEASED. From time to time, Lender may, at Lender's option, without giving notice to or obtaining the consent of Borrower, Borrower's successors or assigns or of any junior lienholder or guarantors, without liability on Lender's part and notwithstanding Borrower's breach of any covenant or agreement of Borrower in this Instrument, extend the time for payment of said indebtedness or any part thereof, reduce the payments thereon, release anyone liable on any of said indebtedness, accept a renewal note or notes therefor, modify the terms and time of payment of said indebtedness, release from the lien of this Instrument any part of the Property, take or release other or additional security, reconvey any part of the Property, consent to any map or plan of the Property, consent to the granting of any easement, join in any extension or subordination agreement, and agree in writing with

Borrower to modify the rate of interest or period of amortization of the Note or change the amount of the monthly installments payable thereunder. Any actions taken by Lender pursuant to the terms of this paragraph 12 shall not affect the obligation of Borrower or Borrower's successors or assigns to pay the sums secured by this Instrument and to observe the covenants of Borrower contained herein, shall not affect the guaranty of any person, corporation, partnership or other entity for payment of the indebtedness secured hereby, and shall not affect the lien or priority of lien hereof on the Property. Borrower shall pay Lender a reasonable service charge, together with such title insurance premiums and attorney's fees as may be incurred at Lender's option, for any such action if taken at Borrower's request.

**13. FORBEARANCE BY LENDER NOT A WAIVER.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy. The acceptance by Lender of payment of any sum secured by this Instrument after the due date of such payment shall not be a waiver of Lender's right to either require prompt payment when due of all other sums so secured or to declare a default for failure to make prompt payment. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Instrument, nor shall Lender's receipt of any awards, proceeds or damages under paragraphs 5 and 11 hereof operate to cure or waive Borrower's default in payment of sums secured by this Instrument.

**14. ESTOPPEL CERTIFICATE.** Borrower shall within ten days of a written request from Lender furnish Lender with a written statement, duly acknowledged, setting forth the sums secured by this Instrument and any right of set-off, counterclaim or other defense which exists against such sums and the obligations of this Instrument.

**15. UNIFORM COMMERCIAL CODE SECURITY AGREEMENT.** This Instrument is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and Borrower hereby grants Lender a security interest in said items. Borrower agrees that Lender may file this Instrument, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Instrument or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, upon Lender's request, any financing statements, as well as extensions, renewals and amendments thereof, and reproductions of this Instrument in such form as Lender may require to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in said items, including replacements and additions thereto.

Upon Borrower's breach of any covenant or agreement of Borrower contained in this Instrument, including the covenants to pay when due all sums secured by this Instrument, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in paragraph 27 of this Instrument as to such items. In exercising any of said remedies, Lender may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in paragraph 27 of this Instrument.

**16. LEASES OF THE PROPERTY.** As used in this paragraph 16, the word "lease" shall mean "sublease" if this Instrument is on a leasehold. Borrower shall comply with and observe Borrower's obligations as landlord under all leases of the Property or any part thereof. Borrower will not lease any portion of the Property for non-residential use except with the prior written approval of Lender. Borrower, at Lender's request, shall furnish Lender with executed copies of all leases now existing or hereafter made of all or any part of the Property, and all leases now or hereafter entered into will be in form and substance subject to the approval of Lender. All leases of the Property shall specifically provide that such leases are subordinate to this Instrument; that the tenant attorns to Lender, such attornment to be effective upon Lender's acquisition of title to the Property; that the tenant agrees to execute such further evidences of attornment as Lender may from time to time request; that the attornment of the tenant shall not be terminated by foreclosure; and that Lender may, at Lender's option, accept or reject such attornments. Borrower shall not, without Lender's written consent, execute, modify, surrender or terminate, either orally or in writing, any lease now existing or hereafter made of all or any part of the Property providing for a term of one year or more, permit an assignment or sublease of such a lease without Lender's written consent, or request or consent to the subordination of any lease of all or any part of the Property to any lien subordinate to this Instrument. If Borrower becomes aware that any tenant proposes to do, or is doing, any act or thing which may give rise to any right of set-off against rent, Borrower shall (i) take such steps as shall be reasonably calculated to prevent the accrual of any right to a set-off against rent, (ii) notify Lender thereof and of the amount of said set-off, and (iii) within ten days after such accrual, reimburse the tenant who shall have acquired such right to set-off or take such other steps as shall effectively discharge such set-off and as shall assure that rents thereafter due shall continue to be payable without set-off or deduction.

Upon Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all leases now existing or hereafter made of all or any part of the Property and all security deposits made by tenants in connection with such leases of the Property. Upon assignment by Borrower to Lender of any leases of the Property, Lender shall have all of the rights and powers possessed

0030

by Borrower prior to such assignment and Lender shall have the right to modify, extend or terminate such existing lease and to execute new leases, in Lender's sole discretion.

17. **REMEDIES CUMULATIVE.** Each remedy provided in this Instrument is distinct and cumulative to all other rights or remedies under this Instrument or afforded by law or equity, and may be exercised concurrently, independently, or successively, in any order whatsoever.

18. **ACCELERATION IN CASE OF BORROWER'S INSOLVENCY.** If Borrower shall voluntarily file a petition under the Federal Bankruptcy Act, as such Act may from time to time be amended, or under any similar or successor Federal statute relating to bankruptcy, insolvency, arrangements or reorganizations, or under any state bankruptcy or insolvency act, or file an answer in an involuntary proceeding admitting insolvency or inability to pay debts, or if Borrower shall fail to obtain a vacation or stay of involuntary proceedings brought for the reorganization, dissolution or liquidation of Borrower, or if Borrower shall be adjudged a bankrupt, or if a trustee or receiver shall be appointed for Borrower or Borrower's property, or if the Property shall become subject to the jurisdiction of a Federal bankruptcy court or similar state court, or if Borrower shall make an assignment for the benefit of Borrower's creditors, or if there is an attachment, execution or other judicial seizure of any portion of Borrower's assets and such seizure is not discharged within ten days, then Lender may, at Lender's option, declare all of the sums secured by this Instrument to be immediately due and payable without prior notice to Borrower, and Lender may invoke any remedies permitted by paragraph 27 of this Instrument. Any attorney's fees and other expenses incurred by Lender in connection with Borrower's bankruptcy or any of the other aforesaid events shall be additional indebtedness of Borrower secured by this Instrument pursuant to paragraph 8 hereof.

19. **TRANSFERS OF THE PROPERTY OR INTERESTS IN BORROWER; ASSUMPTION; FURTHER ENCUMBRANCES.** In the event that the Property, or any part thereof or interest therein, shall be sold (including any installment sales agreement), transferred, conveyed, disposed of, alienated, hypothecated, leased (except to tenants of space in the Improvements in accordance with the provisions of paragraph 16 hereof), assigned, pledged, mortgaged, further encumbered or otherwise transferred or any ownership or beneficial interest in Borrower or any guarantor (directly or indirectly through constituent parties) shall be sold, transferred, conveyed, disposed of, alienated, hypothecated, assigned, pledged, or encumbered, including but not necessarily limited to any lien or encumbrance subordinated to the note or to this deed of trust without the prior written consent of Lender being first obtained, which consent may be withheld in Lender's sole discretion, then the same shall constitute an Event of Default hereunder and Lender may, at Lender's option, declare all of the sums secured by this Instrument to be immediately due and payable, and Lender may invoke any remedies permitted by paragraph 27 of this Instrument. Notwithstanding the foregoing, Lender's prior written consent shall not be required in the event of the following:

(a) transfers by devise or descent or by operation of law upon the death of a joint tenant or a partner;

(b) sales or transfers when the transferee's creditworthiness and management ability are satisfactory to Lender, consent for which may be withheld in the lender's sole and absolute discretion and the transferee has executed, prior to the sale or transfer, a written assumption agreement containing such terms as Lender may require, including, if required by Lender, an increase in the rate of interest payable under the Note or an assumption fee to be determined by Lender;

(c) the grant of a leasehold interest in a part of the Property of one year or less (or such longer lease term as Lender may permit by prior written approval) not containing an option to purchase (except any interest in the ground lease, if this Instrument is on a leasehold);

(d) sales or transfers of beneficial interests in Borrower, provided that such sales or transfers, together with any prior sales or transfers of beneficial interests in Borrower, but excluding sales or transfers under paragraphs (a) and (b) above, do not result in more than 49% of the beneficial interests in Borrower having been sold or transferred since commencement of interest payments under the Note; and

(e) sales or transfers of fixtures or any personal property pursuant to the first paragraph of paragraph 6 hereof.

20. **NOTICE.** Except for any notice required under applicable law to be given in another manner, any notice to Borrower provided for in this Instrument or in the Note shall be given by mailing such notice by certified mail addressed to Borrower at Borrower's address stated above or at such other address as Borrower may designate by notice to Lender as provided herein, and any notice to Lender shall be given by certified mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Instrument or in the Note shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

21. **SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; AGENTS; CAPTIONS.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 19 hereof. All covenants and agreements of Borrower shall be joint and several. In exercising any rights hereunder or taking any actions provided for herein, Lender may act through its employees, agents or independent contractors, as authorized by Lender. The captions and headings of the paragraphs of this Instrument are for convenience only and are not to be used to interpret or define the provisions hereof.

**22. DEED OF TRUST; GOVERNING LAW; SEVERABILITY.** This form of instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property and related fixtures and personal property. This Instrument shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision of this Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Instrument or the Note which can be given effect without the conflicting provisions, and to this end the provisions of this Instrument and the Note are declared to be severable. In the event that any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower is interpreted so that any charge provided for in this Instrument or in the Note, whether considered separately or together with other charges levied in connection with this Instrument and the Note, violates such law, and Borrower is entitled to the benefit of such law, such charge is hereby reduced to the extent necessary to eliminate such violation. The amounts, if any, previously paid to Lender in excess of the amounts payable to Lender pursuant to such charges as reduced shall be applied by Lender to reduce the principal of the indebtedness evidenced by the Note. For the purpose of determining whether any applicable law limiting the amount of interest or other charges permitted to be collected from Borrower has been violated, all indebtedness which is secured by this Instrument or evidenced by the Note and which constitutes interest, as well as all other charges levied in connection with such indebtedness which constitute interest, shall be deemed to be allocated and spread over the stated term of the Note. Unless otherwise required by applicable law, such allocation and spreading shall be effected in such a manner that the rate of interest computed thereby is uniform throughout the stated term of the Note.

**23. WAIVER OF STATUTE OF LIMITATIONS.** Borrower hereby waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce the Note or any other obligation secured by this Instrument.

**24. ORDER OF REMEDIES AND SATISFACTION OF INDEBTEDNESS; WAIVER OF MARSHALING.** Notwithstanding the existence of any other security interests in the Property held by Lender or by any other party, Lender shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. Lender shall have the right to determine the order in which any or all portions of the indebtedness secured hereby are satisfied from the proceeds realized upon the exercise of the remedies provided herein. Borrower, any party who consents to this Instrument, and any party who now or hereafter acquires a security interest in the Property and who has actual or constructive notice hereof hereby waive any and all right to require the marshaling of assets in connection with the exercise of any of the remedies permitted by applicable law or provided herein.

**25. CONSTRUCTION LOAN PROVISIONS.** Borrower agrees to comply with the covenants and conditions of the Construction Loan Agreement, if any, which is hereby incorporated by reference in and made a part of this Instrument. All advances made by the Lender pursuant to the Construction Loan Agreement shall be indebtedness of Borrower secured by this Instrument, and such advance may be obligatory as provided in the Construction Loan Agreement. All sums disbursed by Lender prior to completion of the improvements to protect the security of this Instrument up to the principal amount of the Note shall be treated as such disbursements pursuant to the Construction Loan Agreement. All such sums shall bear interest from the date of disbursement at the rate stated in the Note, unless collection from Borrower of interest at such rate would be contrary to applicable law in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law and shall be payable upon notice from Lender to Borrower requesting payment therefor.

From time to time as Lender deems necessary to protect Lender's interests, Borrower shall, upon request of Lender, execute and deliver to Lender, in such form as Lender shall direct, assignments of any and all rights or claims which relate to the construction of the Property and which Borrower may have against any party supplying or who has supplied labor, materials or services in connection with construction of the Property. In case of breach by Borrower of the covenants and conditions of the Construction Loan Agreement, Lender, at Lender's option, with or without entry upon the Property, (i) may invoke any of the rights or remedies provided in the Construction Loan Agreement, (ii) may accelerate the sums secured by this Instrument and invoke those remedies provided in paragraph 27 hereof, or (iii) may do both. If, after the commencement of interest payments due under the Note, the Note and this Instrument are sold by Lender, from and after such sale the Construction Loan Agreement shall cease to be a part of this Instrument and Borrower shall not assign any right of set-off, counterclaim or other claim or defense arising out of or in connection with the Construction Loan Agreement against the obligations of the Note and this Instrument.

**26. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** As part of the consideration for the indebtedness evidenced by the Note, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues of the Property, including those now due, past due, or to become due by virtue of any lease or other agreement for the occupancy or use of all or any part of the Property, regardless of to whom the rents and revenues of the Property are payable. Borrower hereby authorizes Lender or Lender's agents to collect the aforesaid rents and revenues and hereby agrees to direct each tenant of the Property to pay such rents to Lender or Lender's agents; provided, however, that prior to written notice given by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower, to apply the rents and revenues so collected to the sums secured by this Instrument in the order provided in paragraph 3 hereof with the balance, so long as no such breach has occurred, to the account of Borrower, it being intended by Borrower and Lender that this assignment of rents constitutes an absolute assignment and not an assignment for additional security only. Upon delivery of written notice by Lender to Borrower of the breach by

0032

Borrower of any covenant or agreement of Borrower in this Instrument, and without the necessity of Lender entering upon and taking and maintaining full control of the Property in person, by agent or by a court appointed receiver, Lender shall immediately be entitled to possession of all rents and revenues of the Property as specified in this paragraph 26 as the same become due and payable, including but not limited to rents then due and unpaid, and all such rents shall immediately upon delivery of such notice be held by Borrower as trustee for the benefit of Lender only; provided, however, that the written notice by Lender to Borrower of the breach by Borrower shall contain a statement that Lender exercises its rights to such rents. Borrower agrees that commencing upon delivery of such written notice of Borrower's breach by Lender to Borrower, each tenant of the Property shall make such rents payable to and pay such rents to Lender or Lender's agents on Borrower's or Lender's written demand to each tenant therefor, delivered to each tenant personally, by mail or by delivering such demand to each rental unit, without any liability on the part of said tenant to inquire further as to the existence of a default by Borrower.

Borrower hereby covenants that Borrower has not executed any prior assignment of said rents, that Borrower has not performed, and will not perform, any act or has not executed, and will not execute, any instrument which would prevent Lender from exercising its rights under this paragraph 26, and that at the time of execution of this Instrument there has been no anticipation or prepayment of any of the rents of the Property for more than two months prior to the due dates of such rents. Borrower covenants that Borrower will not hereafter collect or accept payment of any rents of the Property more than two months prior to the due dates of such rents. Borrower further covenants that Borrower will execute and deliver to Lender such further assignments of rents and revenues of the Property as Lender may from time to time request.

Upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Lender may in person, by agent or by a court appointed receiver, regardless of the adequacy of Lender's security, enter upon and take and maintain full control of the Property in order to perform all acts necessary and appropriate for the operation and maintenance thereof including, but not limited to, the execution, cancellation or modification of leases, the collection of all rents and revenues of the Property, the making of repairs to the Property and the execution or termination of contracts providing for the management or maintenance of the Property, all on such terms as are deemed best to protect the security of this Instrument. In the event Lender elects to seek the appointment of a receiver for the Property upon Borrower's breach of any covenant or agreement of Borrower in this Instrument, Borrower hereby expressly consents to the appointment of such receiver. Lender or the receiver shall be entitled to receive a reasonable fee for so managing the Property.

All rents and revenues collected subsequent to delivery of written notice by Lender to Borrower of the breach by Borrower of any covenant or agreement of Borrower in this Instrument shall be applied first to the costs, if any, of taking control of and managing the Property and collecting the rents, including, but not limited to, attorneys' fees, receivers' fees, premiums on receivers' bonds, costs of repairs to the Property, premiums on insurance policies, taxes, assessments and other charges on the Property, and the costs of discharging any obligation or liability of Borrower as lessor or landlord of the Property, and then to the sums secured by this Instrument. Lender or the receiver shall have access to the books and records used in the operation and maintenance of the Property and shall be liable to account only for those rents actually received. Lender shall not be liable to Borrower, anyone claiming under or through Borrower or anyone having an interest in the Property, by reason of anything done or left undone by Lender under this paragraph 26.

If the rents of the Property are not sufficient to meet the costs, if any, of taking control of and managing the Property and collecting the rents, any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by this Instrument pursuant to paragraph 8 hereof. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Borrower under applicable law.

Any entering upon and taking and maintaining of control of the Property by Lender or the receiver and any application of rents as provided herein shall not cure or waive any default hereunder or invalidate any other right or remedy of Lender under applicable law or provided herein. This assignment of rents of the Property shall terminate at such time as this Instrument ceases to secure indebtedness held by Lender.

NON-UNIFORM COVENANTS.

Borrower and Lender further covenant and agree as follows:

27. DEFAULT; RIGHTS AND REMEDIES; TRUSTEE

A. DEFAULT. Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Deed of Trust:

0033

(1) **Default on Indebtedness.** Failure of Trustor to make any payment when due on the indebtedness secured by this Instrument ("Indebtedness").

(2) **Default on Other Payments.** Failure of Trustor within the time required by this Instrument to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien. Taxes shall be paid no later than 10 (ten) days prior to the tax delinquency date.

(3) **Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Instrument, the Note or in any of the other agreements between Trustor and Lender relating to this Instrument and the indebtedness secured hereunder, including without limitation, any applicable Construction Loan Agreement ("Related Documents") within 10 (ten) days written notice.

(4) **Breaches.** Any warranty, representation or statement made or furnished to Lender by or on behalf of Trustor under this Instrument, the Note or the Related Documents is, or at the time made or furnished was, false in any material respect.

(5) **Insolvency.** The insolvency of Trustor, appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor, or the dissolution or termination of Trustor's existence as a going business (if Trustor is a business). Except to the extent prohibited by federal law or California law, the death of Trustor (if Trustor is an individual) also shall constitute an Event of Default under this Instrument.

(6) **Foreclosure, Forfeiture, etc.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any of the Property. However, this subsection shall not apply in the event of a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the foreclosure or forfeiture proceeding, provided that Trustor gives Lender written notice of such claim and furnishes reserves or a surety bond for the claim satisfactory to Lender.

(7) **Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

(8) **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or such Guarantor dies or becomes incompetent or any Guarantor revokes any guaranty of the Indebtedness.

**B. RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Trustee or Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

(1) **Foreclosure by Sale.** Upon an Event of Default under this Instrument, Beneficiary (Lender) may declare the entire Indebtedness secured by this Instrument immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Deed of Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all unpaid sums secured by this Instrument in such order as Beneficiary, in Beneficiary's sole discretion, directs, with accrued interest at the amount established under the Note or, if less, such amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(2) **Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclosure by judicial foreclosure in accordance with and to the full extent provided by California Law.

(3) **Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender

0034

or the purchaser of the Property and shall, at Lender's option, either (a) pay a reasonable rental for the use of the Property, or (b) vacate the Property immediately upon the demand of the Lender.

(4) **Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Instrument or the Note or by law.

(5) **Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Instrument, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal or in arbitration. Whether or not any court action is involved, all reasonable expenses incurred by Lender which in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records obtaining title reports (including foreclosure reports), surveyors' reports, appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

(6) **Protection of Lender's Security.** If Lender's interest in the Property is materially affected by any proceeding under the
Bankruptcy Laws of the United States, Lender, at Lender's option, may take such action, including seeking relief under the Bankruptcy Laws, and disburse such sums, including reasonable attorney's fees, as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or Applicable Law. Any amounts disbursed by Lender pursuant to this Section 27. B. (6) , with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this Section 27. B. (6) shall require Lender to incur any expense or take any action hereunder.

(7) **Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

C. **POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust.

(1) **Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

(2) **Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

(3) **Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

28. **RECONVEYANCE.** Upon payment of all sums secured by this Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Instrument and all notes evidencing indebtedness secured by this Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled thereto. Such person or persons shall pay Trustee's reasonable costs incurred in so reconveying the Property.

29. **SUBSTITUTE TRUSTEE.** Lender, at Lender's option, may from time to time, by an instrument in writing, appoint a successor trustee to any Trustee appointed hereunder, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties where the Property is situated, shall be conclusive proof of proper substitution of such successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. Said instrument shall contain the name of the original Lender, Trustee and Borrower hereunder, the book and page where this Instrument is recorded, and the name and address of the successor trustee. If notice of default has been recorded, this power of substitution cannot be exercised until after the costs, fees and expenses of the then acting Trustee have been paid to such Trustee who shall endorse receipt thereof upon such instrument of substitution. The procedure herein provided for substitution of trustee shall govern to the exclusion of all other provisions for substitution, statutory or otherwise.

0035

30. REQUEST FOR NOTICES. Borrower requests that copies of the notice of default and notice of sale be sent to Borrower at Borrower's address stated above.

31. STATEMENT OF OBLIGATION. Lender may collect a fee not to exceed the maximum allowed by applicable law for furnishing the statement of obligation as provided in Section 2943 of the Civil Code of California

32. SPOUSE'S SEPARATE PROPERTY. Any Borrower who is a married person expressly agrees that recourse may be had against his or her separate property.

**Borrower and Lender further covenant and agree as follows:**

33. RIDERS TO THIS SECURITY INSTRUMENT. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

34. MISCELLANEOUS PROVISIONS. The following miscellaneous provisions are a part of this Deed of Trust:

A. Amendments. This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

B. Annual Reports. If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

C. Acceptance by Trustee. Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

E. Applicable Law. This Deed of Trust has been delivered to Lender and accepted by Lender in the State of California. This Deed of Trust shall be governed by and construed in accordance with the laws of the State of California.

F. Caption Headings. Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

G. Merger. There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

H. Multiple Parties; Corporate Authority. All obligations of Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor. This means that each of the persons signing below is responsible for all obligations in this Deed of Trust.

I. Severability. If a court of competent jurisdiction finds any provision of this Deed of Trust to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of the Deed of Trust in all other respects shall remain valid and enforceable.

J. Successors and Assigns. Subject to the limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the indebtedness by way of forbearance or extension without releasing Trustor from the obligations of the Deed of Trust or liability under the indebtedness.

K. Time is of the Essence. Time is of the essence in the performance of this Deed of Trust.

L. Waivers and Consents. Lender shall not be deemed to have waived any rights under this Deed of Trust (or under the Related Documents) unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Deed of Trust shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or any of

Trustor's obligations as to any future transactions. Whenever consent by Lender is required in this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

**M. Loan arranged by Real Estate Broker.** This loan was arranged by **Pacific Private Money, Inc.** a California Bureau of Real Estate Licensed Brokerage, license #01897444 and NMLS license #945582 and is thus exempt from usury laws pursuant to Section 1 of Article 15 of the California Constitution.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants by contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

David D. Lee, an unmarried man

| | | |
|---|---|---|
| Borrower David D. Lee | Date | Borrower |
| | | Date |

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which the acknowledgment, or jurat is attached, and not the truthfulness, accuracy, or validity of the document.

State of California
County of ___Los Angeles___

On ___Nov. 14, 2017___ before me, ___Daniel Borquez, Notary Public___,
personally appeared ___David D. Lee___

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct

WITNESS my hand and official seal.

_____
Signature                                               (Seal)



DANIEL BORQUEZ
NOTARY PUBLIC · CALIFORNIA
LOS ANGELES COUNTY
COMMISSION # 2077916
MY COMM. EXPIRES AUG. 22, 2018

## REQUEST FOR FULL RECONVEYANCE

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

_____        _____        _____        _____
Signature of Beneficiary (the "LENDER")            Date        Signature of Beneficiary (the "LENDER")            Date

When recorded, mail to

Att: _____

## HAZARDOUS SUBSTANCE RIDER TO DEED OF TRUST

That certain Deed Of Trust dated **11/14/2017** between **David D. Lee, an unmarried man** therein and herein called "Trustor", **Pacific Private Money, Inc.**, therein called "Trustee" and **YCCS LLC, a Hawaiian limited liability company** therein and herein called "Beneficiary" is supplemented in the following particulars only:

1. Trustor represents to Beneficiary that, to the best of Trustor's knowledge after due and diligent inquiry, no hazardous or toxic waste substances are being stored on the property or any adjacent property nor have such substances been stored or used on the property or any adjacent property prior to Trustor's ownership, possession or control of the property. Trustor agrees to provide written notice to Beneficiary immediately upon Trustor's becoming aware that the property or any adjacent property is being or has been contaminated with hazardous or toxic waste or substances. Trustor will not cause or permit any activities on the property that directly or indirectly could result in the property or any other property's being contaminated with hazardous or toxic waste or substances. For the purpose of this Deed of Trust, "hazardous" or "toxic waste" or "substances" means any substance or material defined or designated as hazardous or toxic wastes, hazardous or toxic material, a hazardous, toxic, or radioactive substance, or other similar term by any applicable federal, state, or local statute, regulation, or ordinance now or hereafter in effect.

2. Trustor shall promptly comply with all statutes, regulations, and ordinances, and with all orders, decrees, or judgments of governmental authorities or courts having jurisdiction, relating to the use, collection, storage, treatment, control, removal, or cleanup of hazardous toxic waste or substances in, on, or under the property or in, on, or under any adjacent property that becomes contaminated with hazardous or toxic waste or substances as a result of construction, operations, or other activities on, or the contamination of, the property, or incorporated in any improvements thereon, at Trustor's expense. Beneficiary may, but is not obliged to, enter upon the property and take such actions and incur such costs and expenses to effect such compliance as it deems advisable to protect its interest as Beneficiary; and whether or not Trustor has actual knowledge of the existence of hazardous or toxic waste or substances in, on, or under the property or any adjacent property as of the date hereof, Trustor shall reimburse Beneficiary on demand for the full amount of all costs and expenses incurred by Beneficiary prior to Beneficiary's acquiring title to the property through foreclosure or deed in lieu of foreclosure, in connection with such compliance activities.

David D. Lee, an unmarried man.

| | | |
|---|---|---|
| Borrower    David D. Lee | Date    11/14/17 | Borrower _____ Date _____ |

Order No. 100-1904973-62

**Exhibit "A"**

Lot 42 of Tract No. 4464, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 48, Page 51 of Maps, in the Office of the County Recorder of Los Angeles County, California.

Assessor's Parcel Numbers(s):  5089-020-012

0041

# EXHIBIT - 2




**This page is part of your document - DO NOT DISCARD**



## 20180892717



**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**09/04/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 33.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 108.00 |



**L E A D S H E E T**

201809040200048

00015678437

009318261

**SEQ:**
**02**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

E521046

18-208137_9ac....e2-ffd7-4

**FOR REFERENCE ONLY: 20180892717**

RECORDING REQUESTED BY:

**WFG National-Default Services**

WHEN RECORDED MAIL TO:
**S.B.S. Trust Deed Network**
**31194 La Baya Drive, Suite 106**
**Westlake Village, CA 91362**
**Phone: (818) 991-4600**

APN: 5089-020-012
18-208737

TS No.: 2018-1988

SPACE ABOVE THIS LINE FOR RECORDER'S USE

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED\***
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**\*PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$19,110.55** as of **8/30/2018**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

1 of 2
S.B.S. is a debt collector attempting to collect a debt and any information will be used for that purpose.

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

TS No.: **2018-1988**

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:
**YCCS LLC, A HAWAIIAN LIMITED LIABILITY COMPANY**
**C/O S.B.S. TRUST DEED NETWORK**
**31194 LA BAYA DRIVE #106**
**WESTLAKE VILLAGE, CA 91362**
**Phone: 818-991-4600**

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **S.B.S. TRUST DEED NETWORK, A CALIFORNIA CORPORATION** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **11/14/2017**, executed by **DAVID D. LEE, AN UNMARRIED MAN**, as Trustor, to secure certain obligations in favor of **YCCS LLC, A HAWAIIAN LIMITED LIABILITY COMPANY**, as beneficiary, recorded **11/21/2017**, as Instrument No. **20171343125**, in Book XX, Page XX, of Official Records in the Office of the Recorder of **Los Angeles** County, California describing land therein as: As more fully described in the Deed of Trust

Including **1 NOTE(S) FOR THE ORIGINAL** sum(s) of **$365,000.00**, and any extension(s), renewal(s) and/or modification(s) thereof, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred as stated below:
**THE INSTALLMENT WHICH BECAME DUE ON 6/1/2018 PLUS LATE CHARGES AND ALL SUBSEQUENT INSTALLMENTS AND LATE CHARGES; ATTORNEY'S FEES INCURRED IN THE PROTECTION OF THE SECURITY HEREIN; AND ANY RECURRING OBLIGATIONS.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**Dated: 8/30/2018**

**S.B.S. TRUST DEED NETWORK, A CALIFORNIA CORPORATION**

BY:_____
**COLLEEN IRBY, TRUSTEE SALE OFFICER**

2 of 2
S.B.S. is a debt collector attempting to collect a debt and any information will be used for that purpose.

# Declaration of Mortgage Servicer Pursuant to Civil Code § 2923.5(b)

| | |
|---|---|
| **Borrower(s):** | DAVID D. LEE |
| **Mortgage Servicer:** | PACIFIC PRIVATE MONEY LOANS |
| **Property Address:** | 840 DUNSMUIR AVENUE |
| | LOS ANGELES, CA 90036 |
| **T.S.No.:** | 2018-1988 |

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☑ The mortgage servicer has contacted the borrower pursuant to California Civil Code § 2923.5(a)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☐ The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.5(e) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

4. ☐ The requirements of Cal. Civil Code § 2923.5 do not apply because the loan is not secured by a first lien mortgage or first deed of trust that secures a loan, or that encumbers real property, described in Civil Code § 2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

PACIFIC PRIVATE MONEY LOANS

Dated: _8/17/2018_

By: RYAN THOMPSON, AUTHORIZED SIGNER




**This page is part of your document - DO NOT DISCARD**



## 20180892716

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**09/04/18 AT 08:00AM**

Pages:
0003

| | |
|---|---|
| FEES: | 23.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 98.00 |



**L E A D S H E E T**



201809040200048

00015678436

009318261

**SEQ:
01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

18-208137_9a........2-ffd7-4

FOR REFERENCE ONLY: 20180892716

RECORDING REQUESTED BY:

**WFG National-Default Services**

AND WHEN RECORDED MAIL TO:
S.B.S. Trust Deed Network
31194 La Baya Drive, Suite 106
Westlake Village, California 91362
(818) 991-4600

_18-208137_

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: **5089-020-012**
TS No.: **2018-1988**

## SUBSTITUTION OF TRUSTEE

WHEREAS, **DAVID D. LEE, AN UNMARRIED MAN** was the original Trustor, **PACIFIC PRIVATE MONEY, INC.** was the original Trustee, and **YCCS LLC, A HAWAIIAN LIMITED LIABILITY COMPANY** was the original Beneficiary under that certain Deed of Trust dated **11/14/2017** and recorded on **11/21/2017** as Instrument No. **20171343125**, in book **XX**, page **XX** of Official Records of **Los Angeles** County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes **S.B.S. TRUST DEED NETWORK, A CALIFORNIA CORPORATION**, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

1 OF 2

S.B.S. is a debt collector attempting to collect a debt and any information obtained will be used for that purpose

Dated:    **AUG 2 2 2018**

**YCCS LLC, A HAWAIIAN LIMITED LIABILITY COMPANY**

CURTIS D. DEWEESE, AUTHORIZED SIGNER

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF Hawaii
City :
COUNTY OF Honolulu

On **AUG 2 2 2018** before me, **Cathleen Y.I. Baclaan**, Notary Public, personally appeared, Curtis D. Deweese who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Hawaii that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

NOTARY'S CERTIFICATION

I certify that the foregoing Substitution of Trustee
☑ dated August 22, 2018
☐ undated at the time of notarization,
consists of 2 pages and was notarized
in the First Judicial Circuit of Hawaii.

8-22-2018

Cathleen Y.I. Baclaan                Date
Notary Public, State of Hawaii
my commission expires: 04-17-2020

2 OF 2

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:
**S.B.S. Trust Deed Network**
**31194 La Baya Drive, Suite 106**
**Westlake Village, California 91362**

---

APN: **5089-020-012**                    T.S. No. **2018-1988**

SPACE ABOVE THIS LINE FOR RECORDER'S USE
Order No. **18-208137**

# NOTICE OF TRUSTEE'S SALE

### NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED*
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### *PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 11/14/2017. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

Will sell at a public auction sale to the highest bidder, payable at time of sale in lawful money of the United States, by a cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Trustor: **DAVID D. LEE, AN UNMARRIED MAN**
Duly Appointed Trustee: **S.B.S. TRUST DEED NETWORK, A CALIFORNIA CORPORATION**
Deed of Trust recorded **11/21/2017** as Instrument No. **20171343125** in book **XX**, page **XX** of Official Records in the office of the Recorder of **Los Angeles** County, California,
Date of Sale :**1/8/2019 at 11:00 AM**
Place of Sale:      **BEHIND THE FOUNTAIN LOCATED IN CIVIC CENTER PLAZA, 400 CIVIC CENTER PLAZA, POMONA, CA 91766**

1 of 2

T.S. No. **2018-1988**                    Order No. **18-208137**

# NOTICE OF TRUSTEE'S SALE

Amount of unpaid balance and other reasonable estimated charges: **$416,545.91**
Street Address or other common designation of purported real property:
**840 DUNSMUIR AVENUE**
**LOS ANGELES, CA 90036**
A.P.N.: **5089-020-012**

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the trustee within 10 days of the date of first publication of this Notice of Sale.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **FOR SALES INFORMATION, PLEASE CALL (855) 986-9342** or visit this Internet Web site **www.superiordefault.com**, using the file number assigned to this case **2018-1988**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Date: 12/5/2018

**S.B.S. TRUST DEED NETWORK, A CALIFORNIA CORPORATION**
**31194 La Baya Drive, Suite 106**
**Westlake Village, California 91362**
**(818) 991-4600**

**COLLEEN IRBY, TRUSTEE SALE OFFICER**

WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE.

2 of 2

0051

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

A true and correct copy of the foregoing document entitled: **PROOF OF CLAIM** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 3/15/2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Baruch C Cohen (IP)        bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
Todd S Garan (IP)          ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com; tgaran@aldridgepite.com
Nichole Glowin (CR)        nglowin@wrightlegal.net, BKUDGeneralupdates@wrightlegal.net
Renee E Sanders (DB)       reneesandlaw@gmail.com, opmanago@omanago.com
Valerie Smith (IP)         claims@recoverycorp.com
Edward A Treder (IP)       cdcaecf@bdfgroup.com
US Trustee (LA)            ustpregion16.la.ecf@usdoj.gov
Hatty K Yip (TR)           hatty.yip@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On 3/15/2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 3/15/2019,, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/15/2019 | Baruch C. Cohen, Esq. | /s/ Baruch C. Cohen |
|-----------|------------------------|----------------------|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**206 North Jackson Street, Suite 201, Glendale, CA 91206**

A true and correct copy of the foregoing document entitled (*specify*)  **DEBTOR'S OPPOSITION TO RELIEF FROM STAY MOTION (DKT. #108) FILED BY YCCS, LLC**  will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **7/16/19**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **7/16/19,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Robert Kwan
United States Bankruptcy Court
255 E. Temple Street, Suite 1682
Los Angeles, CA 90012

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **_____**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/16/2019 | Malissa Murguia | /s/ Malissa Murguia |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                          **F 9013-3.1.PROOF.SERVICE**

<u>**ECF Service List:**</u>

- **Baruch C Cohen**    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- **Sean C Ferry**    sferry@rasflaw.com, sferry@ecf.courtdrive.com
- **Todd S Garan**    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- **Nichole Glowin**    nglowin@wrightlegal.net, BKUDGeneralupdates@wrightlegal.net
- **Erica T Loftis Pacheco**    erica.loftispacheco@bonialpc.com
- **Valerie Smith**    claims@recoverycorp.com
- **David A Tilem**    davidtilem@tilemlaw.com,
  DavidTilem@ecf.inforuptcy.com;malissamurguia@tilemlaw.com;joanfidelson@tilemlaw.com;JoanFidelson@ecf.inforuptcy.com;MalissaMurguia@ecf.inforuptcy.com;DianaChau@tilemlaw.com
- **Edward A Treder**    cdcaecf@bdfgroup.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Hatty K Yip**    hatty.yip@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.