5David A. Tilem (SBN 103825)
LAW OFFICES OF DAVID A. TILEM
206 North Jackson Street, Suite 201
Glendale, California 91206
Tel: 888-257-7648 * 818-507-6000
    Fax: 818-507-6800
DavidTilem@TilemLaw.com

Attorney for Debtor and Debtor-
    in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | ) **Case No. 2:19-bk-10119-RK** |
| | ) |
| | ) Chapter 11 |
| | ) |
| | ) **NOTICE OF MOTION AND MOTION FOR** |
| | ) **ORDER AUTHORIZING DEBTOR TO** |
| | ) **OBTAIN CREDIT PURSUANT TO** |
| | ) **§364(c)(2); MEMORANDUM OF POINTS** |
| **DAVID LEE,** | ) **AND AUTHORITIES; DECLARATIONS IN** |
| | ) **SUPPORT** |
| | ) |
| | ) <u>Hearing</u> |
| | ) Date: TO BE SET BY COURT |
| | ) Time: |
| Debtor. | ) Place: 1675 (16ᵗʰ Fl.) |
| | )       255 E. Temple St. |
| _____ ) | Los Angeles, CA 90012 |

   **TO THE HONORABLE ROBERT KWAN, UNITED STATES BANKRUPTCY JUDGE,**

**THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES IN**

**INTEREST:**

   **NOTICE IS HEREBY GIVEN** that Movant David Lee ("Debtor"), has

filed this motion entitled:

   NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING DEBTOR
   TO OBTAIN CREDIT PURSUANT TO §364(c)(2); MEMORANDUM OF
   POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT.

   Debtor seeks authorization under 11 U.S.C. § 364(c)(2) to

1  refinance the junior loan secured by his principal residence

2  located at 840 Dunsmuir Ave. Los Angeles, CA 90036.

3      Debtor is separately requesting that this motion be heard on

4  an expedited basis.  If that request is granted, you will receive a

5  copy of the Court's Order setting the hearing date and time.  The

6  Order will also specify the deadline, if any, for filing objections

7  or opposition to this motion.

8      If the request to have this motion heard quickly is not

9  granted, you will receive a later notice giving you the date and

10  time of the hearing.  The notice will also provide you with the

11  deadline for filing objections or opposition to the motion.

12  Dated: November 7, 2019              LAW OFFICES OF DAVID A. TILEM

13

14                                       By: _____

15                                          David A. Tilem, Attorneys
                                            for Debtor and Debtor-in-
16                                          Possession

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

3     I.    FACTS AND BACKGROUND.. . . . . . . . . . . . . . . . .    3

4                 1.    The Selene Claim.. . . . . . . . . . . . . .    3

5                 2.    The YCCS Claim . . . . . . . . . . . . . . .    4

6                 3.    The Proposed Financing . . . . . . . . . . .    5

7     II.   DISCUSSION.. . . . . . . . . . . . . . . . . . . . . .    6

8                 A.    APPLICABLE LAW . . . . . . . . . . . . . . .    6

9                 B.    THE PROPOSED LOAN TERMS. . . . . . . . . . .    7

10                 C.    THE PROPOSED TRANSACTION BENEFITS
                         THE ESTATE . . . . . . . . . . . . . . . . .    8

11

12                 D.    THE PROPOSED FINANCING IS FAIR,
                         REASONABLE AND ADEQUTE . . . . . . . . . . .    9

13    III. PROCEDURAL REQUIREMENTS . . . . . . . . . . . . . . .    9

14    IV.   CONCLUSION.. . . . . . . . . . . . . . . . . . . . . .   10

15    DECLARATION OF DAVID LEE .. . . . . . . . . . . . . . . .   11

16    DECLARATION OF DANIEL RAUCH . . . . . . . . . . . . . . .   15

17

18

19

20

21

22

23

24

25

26

27

28

<div align="center">

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**FACTS AND BACKGROUND**

</div>

This Chapter 11 case was voluntarily filed on January 7, 2019. The motion concerns Debtor's principal residence located at 840 Dunsmuir Ave. Los Angeles, CA 90036 (the "Residence").

As evidenced by a Preliminary Title Report, a copy of which is attached to Debtor's Declaration as Exhibit "1", the Residence is encumbered by only two deeds of trust: a senior lien securing a claim held by Selene Finance, LP ("Selene"), and a junior lien securing a claim held by YCCS, LLC ("YCCS").

**1.    The Selene Claim**

Pursuant to a notice of Transfer of Claim filed April 23, 2019 (Dkt. #63), the senior lien secures a note now held by Selene Finance, LP ("Selene").  A copy of the Selene Promissory Note is attached to Debtor's Declaration as Exhibit "2".  A copy of the Transfer of Claim assigning the claim to Selene is attached to the Debtor's Declaration as Exhibit "3".

On October 10, 2019 Debtor received a loan statement from Selene dated October 2, 2019 reflecting an arrearage of $86,390.64 and a principal balance due of $602,259.64.  The interest rate on the loan is fixed at 4.875%.  There is no default rate of interest. A copy of this loan statement is attached to the Debtor's Declaration as Exhibit "4".  The total amount due Selene is something less than the sum of these two figures as the some portion of the arrearage also includes principal balance.  The statement further reflects that the arrearage continues to grow at

1    the rate of $6,685.88 per month – a figure which also includes some

2    portion of the loan principal balance.

3        **2.    The YCCS Claim**

4        The junior lien secures a note held by YCCS, LLC.  On July 2,

5    2019 YCCS filed a relief from stay motion (Dkt. #108) (the "YCCS

6    M362").  The Court conducted a hearing on the YCCS M362 on July 30,

7    2019 and set the matter for continued hearing on November 12, 2019

8    at 11:00 a.m.  In the YCCS M362, YCCS contended that the principal

9    balance of its claim is $365,000 and that, as of March 15, 2019,

10   there was accrued interest of $47,754, and costs (including

11   attorney fees) of $18,265.[1]  A copy of the YCCS motion (excluding

12   the exhibits) is attached to the Debtor's Declaration as Exhibit

13   "5".  The interest rate on the loan is fixed at 11.5% and the Note

14   includes a number of expensive "bells and whistles" such as an

15   extension fee, a 10% late payment fee and more.  A copy of the Note

16   is attached to the Debtor's Declaration as Exhibit "6".  Debtor is

17   now informed that YCCS believes the payoff amount on its loan to be

18   just under $500,000.

19       As reflected in the moving papers, YCCS contends that the

20   obligation is all due and payable on December 1, 2019 and that,

21   because the obligation is secured solely by Debtor's principal

22   residence, the obligation cannot be cured or modified.[2]

23   ───────────────

24       [1]    Debtor has not received any records describing the costs
     and reserves the right to object to the same at an appropriate
25   time.

26       [2]    Given that the obligation is a "hard money loan" and that
     modification of such a loan would not offend the spirit of
27   §1123(b)(5) as described in numerous cases, an argument to modify
     or extend existing law could be made to permit modification.
28   Fortunately, if this motion is granted, that issue will not need to
     be resolved.

### 3.    The Proposed Financing

To resolve both the YCCS M362 and any later dispute concerning the impact of §1123(b)(5), Debtor proposes to replace them both with new financing with terms and conditions specified on the Loan Detail Report, a copy of which is attached as an Exhibit to the Debtor's Declaration as Exhibit "7." The new lender would secure the replacement loan with a new first position Deed of Trust against the Residence.

Granting this motion would significantly advance Debtor's effort to reorganize – eliminating what could be an immovable impediment to plan confirmation.

Finally, because of the manner in which YCCS has approached this case (as evidenced in part by the statement which appears on p. 12, line 10 of the YCCS M362) that "YCCS will not consent to any modification of the Note", Debtor is concerned that the true motives of YCCS are to acquire the Residence at a steep discount so as to realize a substantial windfall. To minimize the risks of this from occurring, Exhibit 7 has been redacted to eliminate the name and all contact information for the proposed lender. If Debtor has misjudged the motivations of YCCS, no harm is done by redacting this information since the "name" and other identifying or contact information for the lender are not relevant to whether the terms of the proposed transaction are reasonable, or whether the proposed financing should be approved.

/ / /

/ / /

/ / /

/ / /

1

**II.**

2

**DISCUSSION**

3 **A.   APPLICABLE LAW**

4          Section 364 of the Bankruptcy Code authorizes trustees (and

5 debtors-in-possession pursuant to §1107(a)), after "notice and a

6 hearing" to obtain credit.   In re Harbin, 486 F.3d 510, 521 (9th

7 Cir. 2007), Thompson v. Margen (In re McConville), 110 F.3d 47, 50

8 (9th Cir. 1997).

9          In this instance, Debtor seeks to obtain credit pursuant to

10 §364(c)(2) which states as follows:

11               (c)   If the trustee is unable to obtain unsecured
               credit allowable under section 503(b)(1) of this title
12               as an administrative expense, the court, after notice and
               a hearing, may authorize the obtaining of credit or the
13               incurring of debt –
                    (2) secured by a lien on property of the estate
14               that is not otherwise subject to a lien;

15          There is scant case-law establishing the standards related to

16 such motions.   In Harbin, the Court stated that Movant must

17 demonstrate that the proposed "financing transaction benefits the

18 bankruptcy estate."   Id., at 486 at 523.   A Bankruptcy Court in

19 Pennsylvania sought evidence that "the terms of the transaction are

20 fair, reasonable, and adequate, given the circumstances of the

21 debtor-borrower and the proposed lender." In re Crouse Grp., Inc.,

22 71 B.R. 544, 549 (Bcy. E.D.Pa. 1987) see also In re Aqua Assoc.,

23 123 B.R. 192, 195 (Bcy. E.D.Pa. 1991).   For borrowing requests

24 under §363(c), the Crouse Court added that there must be some

25 showing that the debtor could not obtain credit on an unsecured

26 basis.   The business judgment test and whether the proposed

27 financing is the best interests of the Estate was utilized in In re

28

1  Simasko Production Co., 47 B.R. 444, 448-9 (D. Colo.1985) and In re

2  Ames Dept. Stores, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990).

3      A Court asked to consider a motion under §364 should act based

4  on its informed discretion, Ames, 115 B.R. at 37.  The Court should

5  give broad deference to the business decision of a Chapter 11

6  debtor, particularly with respect to a Debtor's business judgment

7  regarding the need for and proposed use of funds.  Richmond Leasing

8  Co. v. Capital Bank N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).  As

9  was noted in Ames, 115 B.R. at 40, "the court's discretion under

10 section 364 is to be utilized on the grounds that permit the

11 reasonable business judgment [of the Debtor] to be exercised . . ."

12     The facts in this case lead to the conclusion that the

13 Debtor's request to enter into the proposed financing is a

14 reasonable exercise of Debtor's business judgment and in the best

15 interests of the Estate.

16 **B.    THE PROPOSED LOAN TERMS**

17     To reiterate, the proposed loan would replace, i.e. take-out

18 or completely satisfy all of the existing debt secured by the

19 Residence.[3]  All of the existing debt would be paid in full.  If

20 the proposed loan amount is not sufficient to do that (based on the

21 beneficiary demands to be submitted to escrow), the Debtor may need

22 to supplement the loan proceeds.  If that is not possible, the new

23 lender will not fund and the proposed financing will not move

24 forward.

25

26 ─────────────

27     [3]     If some portion of the amounts sought by Selene or YCCS
   are disputed by Debtor, Debtor seeks authorization to complete the
   loan transaction by paying all undisputed amounts, and leave all
28 remaining loan proceeds in escrow until such time as the dispute is
   either resolved by agreement or by the Court.

1   The specific terms of the new financing are set forth on

2   Exhibit "7" to Debtor's Declaration.  Subject to those specifics,

3   Debtor will borrow $1,226,000 secured by the Residence to be repaid

4   in a fully amortized loan over 30 years at an interest rate of 8.5%

5   (see Ex. 7, p. 1) with an APR of 8.76%) (see Ex. 7, p. 5).  The

6   interest rate will be fixed for five (5) years before adjusting

7   (see Ex. 7, p. 1).  The loan anticipates approximate costs of

8   $49,570.69 with $24,520 of that for broker fees, $8,391.48 for

9   property taxes, $1,328 for property insurance and $1,157.89 of pre-

10  paid interest).  (See Ex. 7, p. 2).

11  **C.   THE PROPOSED TRANSACTION BENEFITS THE ESTATE**

12  As matters now stand, the Residence secures a senior loan

13  which is significantly in arrears, and a junior loan which,

14  according to the lender, cannot be modified or cured when it

15  matures on December 1, 2019.  After the proposed financing, the

16  Residence would secure only the new loan which would be current and

17  in good standing.

18  Debtor believes that he could propose a Plan which cures the

19  default on the loan to Selene, but for the reasons stated above,

20  there is considerable doubt whether he could do the same with the

21  YCCS loan.

22  Allowing the financing would preserve the Residence for the

23  Estate.  This is a significant benefit to the estate because,

24  according to the new lender (see Exhibit "7") who is making a

25  substantial lending decision based on its appraisal of the

26  Residence, the Residence has a value of $1,785,000.  (See Ex. 7, p.

27  1).  In other words, this proposed financing preserves more than

28  $500,000 of equity for the estate.

1  The proposed financing is also a reasonable exercise of the

2  Debtor's business judgment and in the best interests of the Estate

3  because the blended rate of the Selene and YCCS loans is 7.5%.[4]

4  The interest rate offered for the financing is 8.5%, but will

5  adjust after a five (5) year term.

6  **D.    THE PROPOSED FINANCING IS FAIR, REASONABLE AND ADEQUTE**

7  Unlike the "hard-money" short term loan made by YCCS, the

8  proposed financing is "conventional" - repayment is fully amortized

9  over 30 years and the interest rate will be 8.5%.

10  The proposed financing is based on "full documentation" which

11  means that the lender has undertaken due diligence and determined

12  that Debtor can afford, under normal underwriting standards, to

13  make the loan payments.

14  Finally, with this refinance complete, Debtor will be in a

15  position to propose his Plan and Disclosure Statement within 60

16  days.

17  **III.**

18  **PROCEDURAL REQUIREMENTS**

19  As required by Local Rule 4001-2, Debtor has completed and

20  separately filed/served Form F4001-2.Stmt.Finance, a copy of which

21  is attached to Debtor's Declaration as Exhibit "8".

22  In brief, there are no special terms of the proposed

23  financing.  Any disputes over an amount owed to an existing

24  lienholder will be "provided for" with net loan proceeds to pay the

25  disputed amount held in escrow.  The lender will receive a new

26  _____

27  [4]    This does not take into consideration any of the many
fees which YCCS may be entitled to charge under its Note or any
28  default rate of interest which may be applicable - all of which
would increase the effective blended rate.

first mortgage on what would then be unencumbered real property of the estate.

## IV.

### CONCLUSION

For the reasons set forth above, the Debtor requests that the Court enter an order

(i) granting the Motion in its entirety;

(ii) authorizing the Debtor to enter into the proposed loan transaction on the terms and conditions set forth therein - including allowing Debtor to complete the loan transaction and escrow any net loan proceeds needed to satisfy any disputed portion of a lender demand to escrow; and

(iii) granting such other and further relief that is just and proper.

Dated: November 7, 2019                    LAW OFFICES OF DAVID A. TILEM

By: _____
                                           David A. Tilem, Attorneys
                                           for Debtor and debtor in
                                           possession

### DECLARATION OF DAVID LEE

I, DAVID LEE, hereby declare as follows:

    1.   I am the debtor and debtor-in-possession in this Chapter 11 case.

    2.   If called upon to testify concerning the facts contained in this declaration I could and would testify to those facts based upon my own personal knowledge.

    3.   I am an accountant and I have been investing in real property for about 10 years.  I am familiar with real estate financing and various loan terms.

    4.   I voluntarily filed this Chapter 11 case on January 7, 2019.

    5.   The motion concerns my principal residence located at 840 Dunsmuir Ave. Los Angeles, CA 90036 (the "Residence").

    6.   The Residence secures only two loans.  This is further evidenced by a Preliminary Title Report, a copy of which is attached as Exhibit "1": a senior lien securing a claim now held by Selene Finance, LP ("Selene"), and a junior lien securing a claim held by YCCS, LLC ("YCCS").

    7.   I received and have reviewed a copy of a notice of Transfer of Claim filed April 23, 2019 (Dkt. #63) which represents that the current holder of the senior lien is Selene Finance, LP. A copy of the Selene Promissory Note for this loan is attached as Exhibit "2".  A copy of the Transfer of Claim is attached as Exhibit "3".

    8.   I also received and have reviewed a loan statement from Selene dated October 2, 2019 reflecting an arrearage of $86,390.64 and a principal balance due of $602,259.64.  The Selene loan

1  carries a fixed interest rate of 4.875%.  There is no default rate

2  of interest.  A copy of this loan statement is attached as Exhibit

3  "4".

4      9.    The total amount due Selene is something less than the

5  sum of those two figures because some portion of the arrearage also

6  includes principal balance.  The loan statement further reflects

7  that the arrearage continues to grow at the rate of $6,685.88 per

8  month – a figure which also includes some portion of the loan

9  principal balance.

10     10.   On July 2, 2019 YCCS filed a relief from stay motion

11 (Dkt. #108) in my Chapter 11 case.  The Court conducted a hearing

12 on July 30, 2019 and scheduled the matter for another hearing on

13 November 12, 2019 at 11:00 a.m.  In its motion YCCS contends that

14 the principal balance of its claim is $365,000 and that, as of

15 March 15, 2019, there was accrued interest of $47,754, and costs

16 (including attorney fees) of $18,265.[5]  A copy of the YCCS motion

17 (excluding the exhibits) is attached as Exhibit "5".

18     11.   The interest rate on the YCCS loan is fixed at 11.5% and

19 the Note includes a number of expensive "bells and whistles" such

20 as an extension fee, a 10% late payment fee and more.  A copy of

21 the Note is attached as Exhibit "6".  As a result, the effective

22 interest rate is very high.

23     12.   As reflected in its motion, YCCS contends that the

24 obligation is all due and payable on December 1, 2019 and that,

25 because the obligation is secured solely by Debtor's principal

26 residence, the obligation cannot be cured or modified.  This may,

27

28     [5]    I have not received any records describing the costs and
reserve the right to object to the same at an appropriate time.

1  or may not be true, but I do not want to spend the money or take

2  the risk associated with fighting this legal battle.

3      13.   Instead, it seems more reasonable for me to refinance the

4  Residence and replace the YCCS loan with a fully amortized,

5  conventional loan.  This would remove what I understand to be a

6  significant impediment to confirming a Chapter 11 Plan.

7      14.   Finally, because of the manner in which YCCS has

8  approached this case, I believe that YCCS is more interested in

9  acquiring the Residence and realizing a windfall from the equity,

10  than it is in being repaid the loan.  While I may be wrong, I want

11  to minimize, as much as possible, any risk that the proposed new

12  financing might be obstructed or impaired for that reason.

13      15.   The specific terms of the new proposed financing are set

14  forth on Exhibit "7".  I will be borrowing $1,226,000 secured by

15  the Residence to be repaid in a fully amortized loan over 30 years

16  at an interest rate of (see Ex. 7, p. 1) with an APR of 8.76%) (see

17  Ex. 7, p. 5).  The interest rate will be fixed for five (5) years

18  before adjusting (see Ex. 7, p. 1).  The loan anticipates

19  approximate costs of $49,570.69 (with $24,520 for broker fees,

20  $8,391.48 for property taxes, $1,328 for property insurance and

21  $1,157.89 of pre-paid interest).  (See Ex. 7, p. 2).

22      16.   The proposed financing is "full documentation" which

23  means I had to provide a lot of financial information to the lender

24  to qualify for the loan.

25      17.   I believe I could propose a Reorganization Plan which

26  would cure the default on the first mortgage to Selene, but for the

27  reasons discussed in the motion, I do not know whether I could do

28  the same with the YCCS loan.

1    18.   Allowing the financing would preserve the Residence for

2    the Estate.   This is a benefit to the estate because, according to

3    the new lender (see Exhibit "7") who is making a substantial

4    lending decision based on its appraisal of the Residence, the

5    Residence has a value of $1,785,000.   In other words, this proposed

6    financing preserves substantial equity for the estate.

7    19.   While it should not matter, I wish to make clear that do

8    not know the lender and did not business with the lender prior to

9    this transaction.   I am not associated or affiliated in any way

10   with the lender.   I was introduced to the lender by a Court-

11   approved loan broker.

12   20.   I am not aware of any place I could borrow a loan of this

13   size on an unsecured basis.

14   21.   Attached as Exhibit "8" is a true and correct copy of the

15   Court's Form F4001-2.StmtFinance.   The representations which appear

16   on that form are true and correct.

17   I declare under penalty of perjury under the law of the State

18   of California and the United States of America, that the foregoing

19   is true and correct and that this Declaration was executed on

20   November _7_, 2019 in _Los Angeles_, California.

21

22

23                                              David Lee

24

25

26

27

28

## **DECLARATION OF DANIEL RAUCH**

I, DANIEL RAUCH, hereby declare as follows:

1.   I am a licensed real estate broker in the State of California.

2.   If called upon to testify concerning the facts contained in this declaration I could and would testify to those facts based upon my own personal knowledge.

3.   On August 29, 2019, the Court entered an Order (Dkt. #166) authorizing me to act as the loan broker for David Lee in this Chapter 11 case.

4.   I located the proposed financing which is the subject of this motion.

5.   I do not believe it would be possible for Mr. Lee to borrow $1.2 million on an unsecured basis. The proposed loan is reasonable given the current market and his financial situation.

6.   The lender has insisted that this loan close no later than November 22, 2019. Attached as Exhibit "7" is a true and correct copy of the Loan Detail Report.

I declare under penalty of perjury under the law of the State of California and the United States of America, that the foregoing is true and correct and that this Declaration was executed in the City of  Los Angeles           , California on November  07 , 2019.


_____
                        Daniel Rauch

**"EXHIBIT 1"**



NORTH
AMERICAN
TITLE
COMPANY

Like Clockwork ®

520 N. Central Avenue, 2nd Floor
Glendale, California 91203
Office Phone:  (818)240-4912
Office Fax: (818)551-5311
Email: teamej@nat.com

DR Financial Inc.
2245 Fern Dell Place
Los Angeles, CA 90068

Your Ref:
Our Order No.: ████████
Property Address: 840 South Dunsmuir Avenue
                                    Los Angeles, CA 90036

Attention:  Daniel Rauch

---

**Preliminary Report** Dated as of May 28, 2019 at 7:30 A.M.

In response to the above referenced application for a Policy of Title Insurance,

### North American Title Insurance Company

Hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and limitations on covered risks of said Policy or Policies are set forth in Exhibit A attached. The Policy to be issued may contain an Arbitration Clause.  When the amount of insurance is less than that set forth in the Arbitration Clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the Parties.  Limitations on covered risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a deductible amount and a maximum dollar limit of liability for certain coverages are also set forth in Exhibit A.  Copies of the Policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions  shown  or referred  to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

The form of Policy of title insurance contemplated by this report is:  ALTA Extended Loan Policy and No Product Issued

Please note that the America First Homeowner's Policy (CLTA/ ALTA Homeowner's Policy) can only be issued on transactions involving individuals as purchasers and residential 1-4 properties.  Any indication that the America First Homeowner's Policy (CLTA/ ALTA Homeowner's Policy) will be issued in a transaction that does not meet these criteria is hereby revised to state that the policy contemplated is a Standard Coverage Policy.

Elsie Guerra and Jay Najera Team, Title Officer

Rev. NAT 8/15/15

Order No. ████████ 0017

**SCHEDULE A**

1.  The estate or interest in the land hereinafter described or referred to covered by this report is:

    Fee simple.

2.  Title to said estate or interest at the date hereof is vested in:

        David D. Lee, an unmarried man, subject to proceedings pending in the Bankruptcy Court of the
        Central District of the U. S. District Court, California entitled in re: David Lee, debtor, Case No. 2:19-
        bk-10119-RK, wherein a petition for relief was filed on 01/07/2019.

3.  The Land referred to in this report is situated in the City of Los Angeles State of California, County of Los
    Angeles, and is described as follows:

    **See attached Legal Description**

Rev. NAT 8/15/15

Order No. ████████

**0018**

**LEGAL DESCRIPTION**

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 42 OF TRACT NO. 4464, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 48, PAGE 51 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, CALIFORNIA.

APN: **5089-020-012**

Rev. NAT 8/15/15

Order No. ▬▬▬▬

**0019**

# SCHEDULE B

At the date hereof exceptions to coverage in addition to the printed exceptions and exclusions in the policy form designated on the face page of this report would be as follows:

1.  General and special taxes and assessments for the fiscal year 2019-2020, a lien not yet due or payable.

2.  Taxes for proration purposes only for the fiscal year 2018-2019.
    First Installment:             $8,326.33, PAID
    Second Installment:            $8,326.31, PAID
    Tax Rate Area:                 00067
    APN:                           5089-020-012

3.  The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

4.  Covenants, conditions and restrictions in instruments recorded in the Official Records of said County and any amendments thereto, which provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or deed of trust made in good faith and for value, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, or national origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(C).

5.  Easements and servitudes as they appear on maps, or in documents recorded in the Official Records of said County.

6.  A Deed of Trust to secure an original indebtedness of $625,000.00 recorded February 18, 2016 as Instrument No. 20160179417 of Official Records.

    Dated:        February 01, 2016
    Trustor:      David D. Lee, an unmarried man
    Trustee:      Old Republic Title Company
    Beneficiary:  Mortgage Electronic Registration Systems, Inc., as nominee for
    Lender:       Gotmortgage. com

    According to the public records, the beneficial interest under the deed of trust was assigned to Selene Finance Lp by assignment recorded March 20, 2019 as Instrument No. 20190248892 of Official Records.

7.  A Deed of Trust to secure an original indebtedness of $365,000.00 recorded November 21, 2017 as Instrument No. 20171343125 of Official Records.
    Dated:        November 14, 2017
    Trustor:      David D. Lee, an unmarried man
    Trustee:      Pacific Private Money, Inc
    Beneficiary:  YCCS LLC, a Hawaiian Limited Liability Company c/o Pacific
                  Private Money, Inc

Rev. NAT 8/15/15

Order No. ▮▮▮▮▮▮▮

**0020**

A document recorded September 04, 2018 as Instrument No. 20180892716 of Official Records provides that S.B.S Trust Deed Network, a California Corporation was substituted as trustee under the deed of trust.

A notice of default recorded September 04, 2018 as Instrument No. 20180892717 of Official Records.

A notice of trustee's sale recorded December 11, 2018 as Instrument No. 20181247086 of Official Records.

8.    Any defects, liens, encumbrances or other matters which name parties with the same or similar names as David D. Lee. The name search necessary to ascertain the existence of such matters has not been completed.  In order to complete this preliminary report or commitment, we will require a statement of information.

9.    Proceedings pending in the Bankruptcy Court of the Central District of the U.S. District Court, California, entitled in re: David Lee, debtor, Case No. 2:19-bk-10119-RK, wherein a petition for relief was filed under Chapter 11  on  01/07/2019.

********** END OF REPORT **********

Rev. NAT 8/15/15

Order No. ███████████

**0021**

## * * * * *   N O T E S   * * * * *

1.  City Transfer Tax: The following City Charged Transfer Tax is in addition to the Normal Transfer Tax. The tax is based on the full value of the transfer without allowance for liens or encumbrances assumed the fee shown is the fee per thousand dollars of value or fraction thereof.  The rates shown are subject to change by city at any time.

|CITY|FEE|
|---|---|
|Culver City|$ 4.50|
|Los Angeles|$ 4.50|
|Pomona|$ 2.20|
|Redondo Beach|$ 2.20|
|Santa Monica|$ 3.00|

2.  NOTICE OF RECORDING PROCEDURE

Pursuant to Cal. Revenue & Tax Code §480.3, all Deeds and other Documents that reflect a change in ownership must be accompanied by a Preliminary Change of Ownership Report to be completed by the transferee. If this special report is not presented at the time of recording, an additional recording fee of $20.00, as required by law, will be charged. Preliminary Change in Ownership forms, instructions on how to complete them, and a nonexclusive list of documents that are affected by this change, are available from the County Recorder's Office or the Office of the County Assessor.

Effective January 1, 2018, Cal. Government Code §27388.1 imposes an additional fee of $75.00 to be paid at the time of recording for every real estate instrument, paper, or notice required or permitted by law to record, except those expressly exempted from payment.

3.  GOOD FUNDS LAW

Under Section 12413.1 of the California Insurance Code, North American Title Company, Inc. may only make funds available for disbursement in accordance with the following rules:

Same day availability.  Disbursement on the date of deposit is allowed only when funds are deposited to North American Title Company, Inc. by Cash or Electronic Transfer (Wire).  Cash will be accepted only under special circumstances and upon approval by management.

Next business day availability.  If funds are deposited toNorth American Title Company, Inc. by cashier's checks, certified checks or teller's checks, disbursement may be on the next business day following deposit.  A "teller's check" is one drawn by an insured financial institution against another insured financial institution (e.g., a savings and loan funding with a check drawn against a FDIC insured bank).

Second business day availability.  If the deposit is made by checks other than those described in paragraphs 1 and 2 above, disbursement may occur on the day when funds must be made available to depositors under Federal Reserve Regulation CC.  In most cases, these checks will be available on the second business day following deposit.  (For further details, consult California Insurance Code Section 12413, et seq. and Regulation CC).

These are the minimum periods before funds will be made available.  North American Title Company, Inc. is not obligated to disburse funds at the expiration of the time periods above, and expressly reserves the right to require additional time before disbursing on deposited funds.  Close of escrow and final disbursement will not be made based on deposits in the form of personal checks, corporate

checks, credit union checks, money market checks, travelers checks and official checks until confirmation of final clearance of the funds.

North American Title Company, Inc. will not be responsible for accruals of interest or other charges resulting from compliance with the disbursement restrictions imposed by state law.

4. This report is incomplete. We may require a statement of information from the parties indicated below, five (5) days prior to closing, in order to complete this report, based on the effect of Documents, Proceedings, Liens, Decrees, or other matters which do not specifically describe said Land, but which, if any do exist, may affect the title or impose Liens or Encumbrances thereon.

> Borrower:
> Seller:
> All Parties:
>
> NOTE: The statement of information is necessary to complete the search and examination of Title under this order. Any Title Search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the Parties, but in fact affect another Party with the same or similar name.
>
> Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

5. North American Title Company, Inc.'s charges for recording the transaction documents include charges for services performed by North American Title Company, Inc., in addition to an estimate of payments to be made to governmental agencies.

6. Note: The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than the certain dollar amount set forth in any applicable arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. If you desire to review the terms of the policy, including any arbitration clause that may be included, contact the office that issued this Commitment or Report to obtain a sample of the policy jacket for the policy that is to be issued in connection with your transaction.

7. The map attached, if any, may or may not be a survey of the land depicted hereon. North American Title Company, Inc. expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

Rev. NAT 8/15/15

Order No. ▮▮▮▮▮▮▮▮

**0023**

# AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE

Referring Party:    North American Title Company, North American Title Company,
Inc., North American Title Company of Colorado, North American Title, LLC, North
American Title Agency, Inc., or North American Title Company, LLC, as applicable
("NAT")

This is to give notice that NAT has a business relationship with North American Title Insurance Company
("NATIC").  NAT and NATIC, directly or indirectly, are wholly owned subsidiaries of States Title Holding, Inc.
Because of this relationship, this referral of services may provide NAT a financial or other benefit.

Set forth below are the estimated charges or range of charges for the settlement services provided by NATIC.
You are NOT required to use NATIC as a condition for closing your transaction.

THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR
SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST
SERVICES AND THE BEST RATE FOR THESE SERVICES.

---

### Title Insurance Fees

NAT provides closing services and title insurance through numerous title insurance underwriters, one of
which is NATIC.  If NATIC is selected as the title insurer, the following fees apply:

> 10% - 40% of costs for lender's and/or owner's title insurance, as applicable, depending on the
> property state, and as shown on the Loan Estimate and/or Closing Disclosure provided by your
> lender.

Contact your local NAT representative for a more detailed title insurance quote based on your specific
transaction.

---

Rev. NAT 8/15/15

Order No.    0024

## Affiliated Business Arrangement Disclosure Statement

**Acknowledgement**

I/we have read this disclosure form, and understand that NAT is referring me/us to purchase the above-described settlement service and may receive a financial or other benefit as the result of this referral.

**Buyer/Borrower:**                                   **Seller:**

_____
David D. Lee


Date: _____           Date: _____

Rev. NAT 8/15/15                                              Order No. ███████  **0025**

# NORTH AMERICAN TITLE COMPANY, INC.

520 N. Central Avenue, 2nd Floor , Glendale, CA 91203
(818)240-4912  Fax:  (818)551-5311    Email:  teamej@nat.com

<mark>**Closing Protection  Letters can be ordered directly by emailing  cacpl@nat.com
with your title order number and property address.**</mark>

Greenbox Loans, Inc.
3250 Wilshire Blvd., #1600
Los Angeles, CA 90010
Attention: Kim Abraham

Your Ref:  ████████
Our Order No.:  ████████

## LENDERS SUPPLEMENTAL REPORT

Dated as of May 28, 2019  AT 7:30 A.M.

Title Officer: Elsie Guerra and Jay Najera Team

The above numbered report (including any supplements or amendments thereto) is hereby modified and/or
supplemented in order to reflect the following additional items relating to the issuance of an American Land
Title Association loan form policy of Title Insurance:

Our ALTA Loan Policy, when issued, will contain Endorsement Nos. 100 and 116.

There is located on said land a Single Family Residence
Known as:  840 South Dunsmuir Avenue
City of Los Angeles
County of Los Angeles
State of California.

According to the public records, there has been no conveyance of the land within a period of twenty-four months
prior to the date of this report, except as follows:

None

Rev. NAT 8/15/15

Order No.  **0026**████

**Privacy Policy**                                                                    Rev. 01/07/2019

**The States Title Family of Companies**

| FACTS | WHAT DOES THE STATES TITLE FAMILY OF COMPANIES DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information.  Federal law gives consumers the right to limit some, but not all, sharing.  Federal law also requires us to tell you how we collect, share, and protect your personal information.  Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us.  This information can include:<br>• Social Security number and income<br>• Transaction history and payment history<br>• Purchase history and account balances |
| How? | All financial companies need to share customers' personal information to run their everyday business.  In the section below, we list the reasons financial companies can share their customers' personal information, the reasons the States Title Family of Companies ("ST") chooses to share, and whether you can limit this sharing. |

| Reasons we can share your personal information | Does ST share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes**<br>Such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes**<br>To offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes**<br>Information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes**<br>Information about your creditworthiness | No | We don't share |
| **For our affiliates to market to you** | No | We don't share |
| **For nonaffiliates to market to you** | No | We don't share |

| Questions? | Call 1 (650) 419-3827 |
|---|---|

Rev. NAT 8/15/15                                    Order No.    0027

| Who we are | |
|---|---|
| Who is providing this notice? | The States Title Family of Companies (identified below), which offers title insurance and settlement services. |

| What we do | |
|---|---|
| How does ST protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law.  These measures include computer safeguards and secure files and buildings. |
| How does ST collect my personal information? | We collect your personal information, for example, when you<br>• Apply for insurance;<br>• Apply for financing;<br>• Give us your contact information<br>• Provide your mortgage information<br>• Show your government-issued ID<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br>• Sharing for affiliates' everyday business purposes – information about your creditworthiness<br>• Affiliates from using your information to market to you<br>• Sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your account – unless you tell us otherwise. |

| Definitions | |
|---|---|
| Affiliates | Companies related by common ownership or control.  They can be financial and nonfinancial companies. |
| Nonaffiliates | Companies not related by common ownership or control.  They can be financial and nonfinancial companies.<br>• Nonaffiliates we share with can include collection agencies, IT service providers, companies that perform marketing services on our behalf, and consumer reporting agencies. |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• ST doesn't jointly market. |

The States Title Family of Companies consists of the following entities:

| | |
|---|---|
| States Title Holding Inc. | North American Title Company |
| States Title, Inc. | North American Title Company, Inc. |
| States Title Insurance Company | North American Title Company of Colorado |
| States Title Insurance Company of California | North American Title Insurance Company |
| States Title Agency, Inc. | North American Services, LLC |
| Spear Agency Acquisition Inc. | North American Title Agency, Inc. |
| Title Agency Holdco, LLC | North American Title, LLC |
| | North American Title Company, LLC |
| | NASSA LLC |
| | North American Asset Development, LLC |

Rev. NAT 8/15/15

Order No.            0028

CLTA Preliminary Report Form - Exhibit A (Rev. 05-06-16)

## CLTA STANDARD COVERAGE POLICY - 1990
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy; or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims;  (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof;  (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   a. building;
   b. zoning;
   c. land use;
   d. improvements on the Land;
   e. land division; and
   f. environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes.  This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it.  This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
   c. that result in no loss to You; or
   d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5. Failure to pay value for Your Title.
6. Lack of a right:
   a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b. in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

Page 13

Rev. NAT 8/15/15

Order No.

0029

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $10,000 |
| Covered Risk 18: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 19: | 1% of Policy Amount Shown in Schedule A or $5,000 (whichever is less) | $25,000 |
| Covered Risk 21: | 1% of Policy Amount Shown in Schedule A or $2,500 (whichever is less) | $5,000 |

## 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i)   the occupancy, use, or enjoyment of the Land;
   (ii)  the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv)  environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b). The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

[Except as provided in Schedule B - Part II,[ t[or T]his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

#### [PART I]
[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the Public Records. ]

#### PART II
In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:

## 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i)   the occupancy, use, or enjoyment of the Land;
   (ii)  the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv)  environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

Rev. NAT 8/15/15

Order No. ████████

**0030**

(b)    Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage
provided under Covered Risk 6.
1.    Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
2.    Defects, liens, encumbrances, adverse claims, or other matters
(a)    created, suffered, assumed, or agreed to by the Insured Claimant;
(b)    not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to
the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured
under this policy;
(c)    resulting in no loss or damage to the Insured Claimant;
(d)    attaching or created subsequent to Date of Policy (however, this does not modify or limit the
coverage provided under Covered Risk 9 and 10); or
(e)    resulting in loss or damage that would not have been sustained if the Insured Claimant had paid
value for the Title.
3.    Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as
shown in Schedule A, is
(a)    a fraudulent conveyance or fraudulent transfer; or
(b)    a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
4.    Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date
of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.
The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the
Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:
[The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the
Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:
1.    (a)    Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or
by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown
by the records of such agency or by the Public Records.
2.    Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be
asserted by persons in possession of the Land.
3.    Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.    Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land
survey of the Land and that are not shown by the Public Records.
5.    (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water,
whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.    Any lien or right to a lien for services, labor or material not shown by the Public Records.
7.    [Variable exceptions such as taxes, easements, CC&R's, etc. shown here.]

**ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY - ASSESSMENTS PRIORITY (04-02-15)**
**EXCLUSIONS FROM COVERAGE**
The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses
which arise by reason of:
1.    (a)    Any law, ordinance, permit, or governmental regulation (including those relating to building and
zoning) restricting, regulating, prohibiting, or relating to
(i)    the occupancy, use, or enjoyment of the Land;
(ii)    the character, dimensions, or location of any improvement erected on the Land;
(iii)    the subdivision of land; or
(iv)    environmental protection;
or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided
under Covered Risk  5, 6, 13(c), 13(d), 14 or 16.
(b)    Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2.    Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.    Defects, liens, encumbrances, adverse claims, or other matters
(a)    created, suffered, assumed, or agreed to by the Insured Claimant;
(b)    not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to
the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c)    resulting in no loss or damage to the Insured Claimant;
(d)    attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18,
19, 20, 21, 22, 23, 24, 27 or 28); or
(e)    resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.    Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the
state where the Land is situated.
5.    Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage
and is based upon usury, or any consumer credit protection or truth-in-lending law.  This Exclusion does not modify or limit the coverage provided in
Covered Risk 26.
6.    Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has
Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or
limit the coverage provided in Covered Risk 11.
7.    Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This
Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8.    The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable
building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9.    Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the
Insured Mortgage, is
(a)    a fraudulent conveyance or fraudulent transfer, or
(b)    a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.
10.    Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
11.    Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

Page 15

Rev. NAT 8/15/15

Order No.

**0031**

Rev. NAT 8/15/15

Order No.  **0032**

**"EXHIBIT 2"**

# ORIGINAL

## NOTE

MIN: ▮▮▮▮▮▮                    Loan Number: ▮▮▮▮▮▮

FEBRUARY 1, 2016          FOUNTAIN VALLEY          CALIFORNIA
[Date]                    [City]                   [State]

840 SOUTH DUNSMUIR AVENUE, LOS ANGELES, CALIFORNIA 90036

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 625,000.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is GOTMORTGAGE.COM, A CALIFORNIA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      4.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

#### (A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on APRIL 1         ,
2016   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MARCH 1, 2046         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 17220 NEWHOPE STREET #213, FOUNTAIN VALLEY, CALIFORNIA 92708

or at a different place if required by the Note Holder.

#### (B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 3,307.55         .

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

---

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

DocMagic *eForms*
www.docmagic.com

0034

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

---

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Page 2 of 3

DocMagic *eForms*
www.docmagic.com

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_____ (Seal)        _____ (Seal)
DAVID D LEE                    -Borrower                                     -Borrower


_____ (Seal)        _____ (Seal)
                               -Borrower                                     -Borrower


_____ (Seal)        _____ (Seal)
                               -Borrower                                     -Borrower


Loan Originator: ANDREA PARK, NMLSR ID
Loan Originator Organization: GOTMORTGAGE.COM, NMLSR ID


*[Sign Original Only]*


MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Page 3 of 3

DocMagic *eForms*
www.docmagic.com

036

**"EXHIBIT 3"**

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISON**

IN RE:

CASE NO.: 2:19-bk-10119-RK
**CHAPTER 11**

David Lee,
  Debtor.

_____/

### TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

SELENE FINANCE LP
Name of Transferee

U.S. BANK NATIONAL ASSOCIATION
Name of Transferor

Name and Address where notices to Transferee
should be sent:
Selene Finance, LP
9990 Richmond Ave. Suite 400 South
Attn: BK Dept
Houston, TX  77042

Court Claim # (if known): 9-1
Amount of Claim: $641,070.61
Date Claim Filed: 2/26/2019

Phone: 877-735-3637
Last Four Digits of Acct #: 0242

Phone: 800-365-7772
Last Four Digits of Acct #: 4007

Name and Address where Transferee payments
should be sent (if different from above):
Selene Finance, LP
9990 Richmond Ave. Suite 400 South
Attn: BK Dept
Houston, TX  77042

Phone: 877-735-3637
Last Four Digits of Acct #: 0242

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: /s/ Sean C. Ferry

Date: 4/23/2019

Transferee/Transferee's Agent

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.*

**0038**

# CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that on April 23, 2019, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, and a true and correct copy has been served via

CM/ECF or United States Mail to the following parties:

DAVID A TILEM
LAW OFFICES OF DAVID A TILEM
206 N JACKSON ST STE 201
GLENDALE, CA 91206

DAVID LEE
840 DUNSMUIR AVENUE
LOS ANGELES, CA 90036

UNITED STATES TRUSTEE (LA)
915 WILSHIRE BLVD, SUITE 1850
LOS ANGELES, CA 90017

                    RAS CRANE, LLC
                    Authorized Agent for Secured Creditor
                    10700 Abbott's Bridge Road, Suite 170
                    Duluth, GA 30097
                    Telephone: 470-321-7112
                    Facsimile: 404-393-1425

                    By: /s/ Sean C. Ferry
                       Sean C. Ferry, Esquire
                       Email: sferry@rasflaw.com

**0039**

Selene Finance LP
9990 Richmond Avenue
Suite 400 South
Houston, TX 77042

**SELENE**®
FINANCE

Temp-Return Service Requested

DAVID D LEE
840 S DUNSMUIR AVE
LOS ANGELES, CA 90036-4732

**SELENE** FINANCE®

9990 Richmond Avenue
Suite 400 South
Houston, TX 77042
Telephone (877) 735-3637
Fax (866) 926-5496
www.selenefinance.com

Hours of Operation (CT)
Monday - Thursday: 8 a.m. - 9 p.m.
Friday: 8 a.m. - 5 p.m.

## SERVICING TRANSFER INFORMATION

04/01/2019

DAVID D LEE
840 S DUNSMUIR AVENUE
LOS ANGELES, CA  90036

Selene Finance Account #: ▮▮▮▮
Current UPB:          $604,821.41
Mortgagor(s):         DAVID D LEE
Property:             840 S DUNSMUIR AVENUE
                      LOS ANGELES, CA  90036

Dear Mortgagor (s):

**Our records indicate the above referenced mortgagor(s) is/are either in bankruptcy or has/have received a discharge in bankruptcy. If the mortgagor(s) has/have received a discharge in bankruptcy, Selene fully acknowledges that the mortgagor(s) has/have no personal liability for the debt. THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY.**

Welcome to Selene Finance LP ("Selene"). The servicing of your mortgage is transferring from US Bank Home Mortgage to Selene. Please review the following important information regarding your account.

Effective 03/18/2019, please begin sending your mortgage payments to Selene using one of the options below.

| Payment Options: | **Mail** | **Phone** |
|---|---|---|
| | Selene Finance LP | Loss Mitigation Department |
| | Attention: Cashiering Department | (877) 768-3759 |
| | P. O. Box 71243 | |
| | Philadelphia, PA 19176-6243 | |

*Where allowed by state law, Selene charges a nonrefundable convenience fee of $8.00 for payments made through the automated phone system or $12.00 when made with an agent.  No convenience fee will be assessed for payments made by mail, automatic payment service via ACH, or through www.selenefinance.com.

Please contact your insurance agent to ensure that Selene receives proof that your property is insured with a Hazard Policy and for Flood and Windstorm, where applicable.  Please take the necessary steps to have all future bills and proof of insurance forwarded to the addresses below:

| **Insurance Department** | **Property Taxes** |
|---|---|
| Selene Finance LP | Selene Finance LP #11740 |
| P. O. Box 461470 | P. O. Box 9217 |
| San Antonio, TX 78246 | Coppell, TX 75019 |
| Tel: (866) 318-1084 | |
| Fax: (866) 816-6837 | |

Selene will send you a Billing Statement each month; however, if you do not receive the statement before your 05/01/2018 payment is due, please send your payment with one of the Temporary Coupons enclosed.

If more than one account is transferring to Selene, this letter refers only to account number ▮▮▮▮  Selene will send you a Welcome Letter and Temporary Coupons for each account.  When making payments, please send the correct amount for each account and include the payment coupon(s) with your remittance.

If your previous servicer automatically drafted payments from your checking or savings account, this service is not transferable.  Enclosed is an automatic drafting authorization form, which will allow you to establish an ACH draft with Selene.  Please return the completed form to Selene Finance LP, Attention: Cashiering Department, P. O. Box 422039, Houston, TX 77242-4239.  Please send payments by check or money order until Selene notifies you in writing that the automatic draft process is complete.

By January 31 of each year, Selene will provide an Annual Tax and Interest Statement for your IRS reporting for the portion of the previous year that Selene serviced your account.

If your account is currently escrowed for taxes and/or insurance, Selene is required by law to analyze your account.  Selene will notify you in writing if your payment amount changes.

Premiums for mortgage life, accidental death, or disability insurance will not be transferred from your previous servicer.  You may contact your carrier for arrangements to maintain your coverage through direct billing.  Please contact your previous servicer if you are unsure of your carrier's name.

NOTICE REGARDING REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA):  Please review the attached Notice of Assignment, Sale or Transfer of Servicing Rights.  This is the official notification required by law from the transferee, Selene Finance LP.  **That notice also includes important information about your consumer rights under federal and state law.**

NOTICE REGARDING FAIR AND ACCURATE CREDIT TRANSACTIONS ACT OF 2003 (FACTA):  Selene may report information about your account to credit bureaus.  Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

NOTICE REGARDING ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT:  The state Rosenthal Fair Debt Collection Practices Act and the Federal Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m.  They may not harass you by using threats of violence or arrest or by using obscene language.  Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work.  For the most part, collectors may not tell another person,

**0041**

other than your attorney or spouse, about your debt.  Collectors may contact another person to confirm your location or enforce a judgment.  For more information about the debt collection activities, you may contact Federal Trade Commission at (877) FTC-HELP or www.ftc.gov.

**Partial Payment Policy** - Your lender may hold partial payments in a separate account until you pay the remainder of the payment, and then apply the full payment to your account.  If this account is sold, your new lender may have a different policy.

Should you have questions, please contact Selene's Customer Service Department at (877) 735-3637 during the hours indicated above or visit our website at www.selenefinance.com.  Any written correspondence should be sent to Selene Finance LP, Attention:  Customer Service Research, P. O. Box 421517, Houston, TX 77242.  You may also contact US Bank Home Mortgage at (800) 365-7772, Monday through Friday 7:00 a.m. - 8:00 p.m. (CST) and Saturday 8 a.m. to 2 p.m. (CST).

Sincerely,

Selene Finance LP

Enclosure:  Notice of Assignment, Sale, or Transfer of Servicing Rights; Authorization Agreement for Pre-Authorized Payments; Temporary Coupon

## NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

**Our records indicate the above referenced mortgagor(s) is/are either in bankruptcy or has/have received a discharge in bankruptcy. If the mortgagor(s) has/have received a discharge in bankruptcy, Selene fully acknowledges that the mortgagor(s) has/have no personal liability for the debt. THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY.**

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold, or transferred from US Bank Home Mortgage to Selene Finance LP, effective 03/18/2019.

The assignment, sale, or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, federal law requires that your present servicer send you this notice at least 15 days before the effective date of transfer or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing.

Your previous servicer was US Bank Home Mortgage. The business address for your previous servicer is 4801 Frederica Street, Owensboro, KY 42301. If you have any questions relating to the transfer of servicing from your previous servicer, call US Bank Home Mortgage at (800) 365-7772, Monday through Friday 7:00 a.m. - 8:00 p.m. (CST) and Saturday 8 a.m. to 2 p.m. (CST). This is a toll-free number.

Your new servicer is Selene Finance LP. The business address for your new servicer is 9990 Richmond Avenue, Suite 400 South, Houston, TX 77042. The toll-free telephone number for your new servicer is (877) 735-3637. If you have any questions relating to the transfer of servicing to your new servicer call Selene Finance LP Customer Service Department toll-free at (877) 735-3637 Monday through Thursday from 8 a.m. to 9 p.m. and Friday from 8 a.m. to 5 p.m. CT.

The date that your previous servicer will stop accepting payments from you is 03/17/2019. The date that your new servicer will start accepting payments from you is 03/18/2019. Send all payments due on or after that date to your new servicer.

The transfer of servicing rights may affect the terms of or the continued availability of mortgage life or disability insurance or any other type of optional insurance in the following manner: premiums for mortgage life, accidental death, or disability insurance will not be transferred from your previous servicer. You may contact your carrier for arrangements to maintain your coverage by direct billing. Please contact your previous servicer if you are unsure of your carrier's name.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 USC 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 USC 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 5 business days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name, account number, and reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to Selene Finance LP, Attention Customer Service Department, P. O. Box 422039, Houston, TX 77242-4239.

Not later than 30 business days after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute. During this 60-business-day period after receiving your request relating to a dispute regarding your payments, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

Selene Finance LP
04/01/2019

Selene Finance LP is a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

Please note that if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally.

**For Servicemembers and their Dependents:** The Federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including, under most circumstances, a prohibition on foreclosure during and twelve months after the servicemember's active duty service. Selene will not foreclose on the property of a servicemember or his or her dependent during that time, except pursuant to a court order. You also may be entitled to other protections under these laws, including interest rate and fee relief. Please contact us to learn more about your rights.

▮▮

## SELENE FINANCE LP
### PREAUTHORIZED AUTOMATIC CLEARING HOUSE (ACH)
### DEBITS AGREEMENT (DIRECT WITHDRAWAL)

| Mortgagor Name | Co-Mortgagor Name |
|---|---|
| Property Address | Phone |
| City, State, Zip | Selene Account #  ▮▮▮▮▮ |

The undersigned hereby authorizes Selene Finance LP ("Selene") to initiate electronic transfers from my (our) account indicated below, and from the financial institution named below (the "Bank"), to debit the same from such account. If funds are mistakenly taken from my (our) account, I (we) authorize Selene to initiate a corrective (credit) entry, and provide such to the Bank.

*The name, address, account number and routing number of my (our) bank is:*

| Bank Name | Bank Routing (ABA #) * |
|---|---|
| Address | Account # |
| City, State, Zip | Type of Account<br>☐ Checking         ☐ Savings |

* How to identify routing/aba # and account number on checks or deposit slips (checking or savings):



I (we) wish to have my (our) monthly contractual payment withdrawn by using one of the following options - please check Option A or Option B, shown below:

- Please note that your account must be current on the day we receive this completed enrollment form in order to begin the program.
- For all options, if your draft day falls on a weekend or holiday the funds will be withdrawn on the next business day.
- Also for all options, your ACH auto-payments will draft on the scheduled draft date regardless of the status of your account.
- Changes to your monthly ACH auto-payments may be completed through our website.

**Payment Change**
If the regular monthly contractual payment changes per your note, Selene will provide written notification at least twenty-five (25) days prior to each scheduled payment change.

☐ **Option A Single Monthly Contractual Payment** This option will draft and apply twelve (12) contractual payments each calendar year. Upon receipt of this form, the draft will begin the next calendar month.

Choose a calendar day below and a payment will be withdrawn the same day each month:

Check one (1): ☐ Due Date ☐ 4 days after due date ☐ 9 days after due date ☐ 14 days after due date
☐ Other _____ (but no later than 14 days after the due date) For example, if your due date is the 1st of the month and you choose 4 days after your due date, your payment will draft on the 5th of each month.

- To begin this option, this completed form must be received by Selene ten (10) days before your next payment is due.
- Any electronic draft attempt by Selene that is not honored by your banking institution shall deem this ACH Debits Agreement null and void and your account may be removed from the ACH program.

☐ **Option B Bi-Weekly Payments** This option will draft an installment equal to half of your monthly contractual payment every fourteen (14) days. Note: ELOC Accounts are not eligible for this option.

- A total of twenty-six (26) auto-draft installments will be applied as twelve (12) contractual payments and the total of one (1) payment to reduce principal within a 12 month period. To begin bi-weekly payments, this completed form must be received at least ten (10) days before your next payment due date. In addition to your account being current, it must be pre-paid by one full contractual monthly payment.
- The first installment will be drafted on the first Friday of the same month the ACH drafting begins.
- The first installment drafted will be held in as an Unapplied Balance until the second installment is drafted. The full contractual payment will then be applied to your account the next business day.
- The bi-weekly payments will auto-draft every other Friday.
- Any electronic draft attempt by Selene that is not honored by your banking institution, shall deem this ACH Debits Agreement null and void and your account may be removed from the ACH program.

☐ **Additional Principal Payment** In addition to the monthly contractual payment due under my (our) account, I (we) wish to have additional funds taken with each contractual payment to be applied to <u>PRINCIPAL</u>. If YES, enter AMOUNT $_____. For Option B a principal payment will be divided into two (2) one-half payments and drafted along with each of your one-half contractual payments.

This authority to perform electronic transfers is to remain in full force and effect until Selene has received <u>written</u> notification from me (or either of us) of its termination in time to afford Selene a reasonable opportunity to act on it, but in no event less than thirty (30) business days prior to the applicable draft date.

Until such request is received by Selene, I (we) agree that Selene shall be fully protected in complying with the terms of this agreement. If your account should become delinquent in excess of 90 days, your account may be removed from the ACH program and you will be required to cure any default and re-qualify for the ACH program.

I (we) acknowledge that if I (we) enter into litigation with regard to an account secured by the referenced property or file for protection under the US Bankruptcy Code, this agreement will immediately become null and void.

Signature(s) as they appear on the promissory note:

_____          _____
MORTGAGOR                    Date          CO-MORTGAGOR                  Date



**Common Reasons for Rejection of ACH Enrollment**

- Account holder did not indicate a draft date on form.
- Account is not sufficiently pre-paid.
- Agreement is not executed and/or dated.
- Active bankruptcy case – account must be contractually current to participate in monthly ACH.
- Certain banks, such as BOA, Chase and Wells Fargo have multiple ABA/Routing numbers, therefore, Selene must have something from the Account holder's bank indicating the bank Routing/ABA Number, account number and the Account holder's name on the account.

<div align="center">

Selene Finance LP
P.O. Box 422039
Houston, TX 77242-4239
Fax:  (866) 926-5496
Attn:  Customer Service

</div>

---

Selene Finance
Temporary Payment
Remittance Coupon

DAVID D LEE
840 S DUNSMUIR AVENUE
LOS ANGELES, CA  90036

Additional Principal:$_____

Escrow/Other/Fees:$_____

Total Enclosed:$_____

Selene Account No.: ▮▮▮▮▮
Payment Amount:  $3,307.58
Due Date:  05/01/2018

Send Payment to:
Selene Finance
P. O. Box 71243
Philadelphia, PA 19176-6243

**"EXHIBIT 4"**

# SELENE® FINANCE

9990 Richmond, Suite 400 South
Houston, TX 77042-4546

RECEIVED
OCT 10 2019
BY: _____

0-755-57540-0000100-001-1-000-010-000-000

DAVID A TILEM
206 N JACKSON ST STE 201
GLENDALE CA 91206-4330

## *Mortgage Statement*

Statement Date: 10/02/2019

If you have questions or concerns about your statement or account, please contact us at (877)735-3637 between the hours of 8:00 am to 9:00 pm Monday through Thursday and 8:00 am to 5:00 pm Friday CT or you can contact us at www.selenefinance.com.

Hearing Impaired call 711 or (800) 735-2989.

| Account Number | |
|---|---|
| Payment Date | **11/01/19** |
| Payment Amount | **$86,390.64** |

**Property Address:** 840 S DUNSMUIR AVENUE
LOS ANGELES CA 90036

---

## Bankruptcy Message

**Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.**

We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.

**If you want to stop receiving statements, write to us at:**

Selene Finance LP, Attn: Customer Service Research, P.O. Box 421517, Houston, TX 77242. **Or you may fax** us at (866) 926-5496, **or email us at:** CustomerService@selenefinance.com.

## **Account History**

**Recent Account History**
- 05/01/19 Payment: Unpaid balance of $6,685.88
- 06/01/19 Payment: Unpaid balance of $6,685.88
- 07/01/19 Payment: Unpaid balance of $6,685.88
- 08/01/19 Payment: Unpaid balance of $6,685.88
- 09/01/19 Payment: Unpaid balance of $6,685.88
- 10/01/19 Payment: Unpaid balance of $6,685.88
- **Total: $86,390.64 unpaid amount that, if paid, would bring the account current.**

**If You Are Experiencing Financial Difficulty:** See back for information about mortgage counseling or assistance.

## Explanation of Payment Amount

| | |
|---|---|
| Principal | $914.85 |
| Interest | $2,392.70 |
| Escrow (taxes and insurance) | $3,378.33 |
| **Regular Monthly Payment** | **$6,685.88** |
| Total Fees and Other Charges | $255.00 |
| Past Unpaid Amount | $80,018.40 |
| Unapplied Balance | -$568.64 |
| **Total Payment Amount** | **$86,390.64** |

## Account Information

| | |
|---|---|
| Outstanding Principal Balance | $602,259.64 |
| Interest Rate | 4.87500% |
| Prepayment Penalty | No |

## Breakdown of Past Payments

| | Paid Last Cycle | Paid Year to Date |
|---|---|---|
| Principal | $857.39 | $2,561.77 |
| Interest | $2,450.16 | $7,360.88 |
| Escrow (taxes and insurance) | $3,378.33 | $6,774.55 |
| Fees and Other Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied) | $3,378.30 | $568.64 |
| **Total** | **$10,064.18** | **$17,265.84** |

---

## Important Messages

Partial Payments: Any partial payments that you make are not applied to your mortgage but instead are held in an unapplied account on your mortgage. Those funds are shown in the Unapplied Balance line. If you pay the Total Payment Amount, the unapplied funds will then be applied to your mortgage.

---

## Transaction Activity (09/20/2019 - 10/02/2019)

| DATE | DESCRIPTION | PRINCIPAL | INTEREST | ESCROW | OPTIONAL | LATE CHARGES | FEES/ OTHER | SUSPENSE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| 09-24-2019 | Property Insurance | $0.00 | $0.00 | $1,372.00 | $0.00 | $0.00 | $0.00 | $0.00 | $1,372.00 |
| 10-02-2019 | Mortgage Payment | $857.39 | $2,450.16 | $3,378.33 | $0.00 | $0.00 | $0.00 | $0.00 | $6,685.88 |
| 10-02-2019 | Unapplied Funds | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | -$3,378.30 | -$3,378.30 |

005-081 4-1100F

---

## FOR INFORMATIONAL PURPOSES ONLY

# SELENE® FINANCE

DAVID D LEE

SELENE FINANCE
PO BOX 71243
PHILADELPHIA, PA 19176-6243

☐ *Please check here if address, phone # or email change is indicated on reverse side.*

Account Number: ▮▮▮▮▮

### Payment Amount

| | |
|---|---|
| **Payment Date:** | **11/01/2019** |
| **Payment Amount:** | **$86,390.64** |
| Additional Principal | $ |
| Additional Escrow | $ |
| **Total Amount Enclosed** | $ |

*If you are sending us a payment, make your check payable to Selene Finance LP.*
*Please refer to the Mortgage Statement for important information regarding your bankruptcy case.*

0600020242 0668588 0668588B    0048

**"EXHIBIT 5"**

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| BARUCH C. COHEN, ESQ SBN 159455<br>LAW OFFICE OF BARUCH C. COHEN, APLC<br>4929 WILSHIRE BLVD #940<br>LOS ANGELES, CA 90010<br>(323) 937-4501 Fax (888) 316-6107<br>E: baruchcohen@baruchcohenesq.com<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>DAVID LEE<br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:19-BK-10119-RK<br>CHAPTER: 11 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| | DATE: 07/23/2019<br>TIME:  10:30 a.m.<br>COURTROOM: 10:30 a.m. |

| **Movant:** YCCS, LLC, a Hawaiian Limited Liability Company |
|---|

1. **Hearing Location**:

   ☒ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701

   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367      ☐ 1415 State Street, Santa Barbara, CA 93101

   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒  This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐  This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

    a.  ☐  An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b.  ☐  An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c.  ☐  An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: 7/2/19 _____

BARUCH C. COHEN, APLC
_____
Printed name of law firm (if applicable)

BARUCH C. COHEN
_____
Printed name of individual Movant or attorney for Movant


/s/  Baruch C. Cohen
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 2                          F 4001-1.RFS.RP.MOTION

0051

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address:* 840 S. DUNSMUIR AVE
   *Unit/suite number:*
   *City, state, zip code:* LOS ANGELES, CA  90036

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit __1__ ):

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter  ☐ 7  ☒ 11  ☐ 12  ☐ 13 was filed on (*date*) __1/7/19__ .

   b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13  was entered on (*date*) _____ .

   c. ☐ A plan, if any, was confirmed on (*date*) _____ .

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

      (1) ☐ Movant's interest in the Property is not adequately protected.

         (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

         (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

         (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

      (2) ☐ The bankruptcy case was filed in bad faith.

         (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

         (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

         (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

         (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

         (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

         (F) ☒ Other (*see attached continuation page*).

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                      Page 3                                      **F 4001-1.RFS.RP.MOTION**

**0052**

(3) ☐ (*Chapter 12 or 13 cases only*)

    (A) ☐ All payments on account of the Property are being made through the plan.
        ☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

(6) ☒ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other (*specify*):


6. **Evidence in Support of Motion: (D*eclaration(s) MUST be signed under penalty of perjury and attached to this motion*)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☒ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit 3____.

d. ☒ Other:
PAPERS FILED IN THE DEBTOR'S BK CASE: STATUS REPORT [DOC-70]; MOTION TO LEASE REAL PROPERTY [DOC-95]; EXHIBITS 4-5

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

F 4001-1.RFS.RP.MOTION

**0053**

**Movant requests the following relief:**

1. Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☒ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☐ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☒ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or  ☒ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☒ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☒ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☒ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☒ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☒ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date: 7/2/13

LAW OFICE OF BARUCH C. COHEN, APLC
_____
Printed name of law firm (*if applicable*)
BARUCH C. COHEN
_____
Printed name of individual Movant or attorney for Movant
/s/ BARUCH C. COHEN
_____
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                Page 5                        F 4001-1.RFS.RP.MOTION

0054

# REAL PROPERTY DECLARATION

CURTIS DEWEESE

I, (*print name of Declarant*) _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

    a. ☐ I am the Movant.

    b. ☐ I am employed by Movant as (*state title and capacity*):

    c. ☒ Other (*specify*): I am the managing member of Movant YCCS, LLC ("YCCS").

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

    b. ☐ Other (*see attached*):

3. The Movant is:

    a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _2_ .

    b. ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit _____.

    c. ☐ Servicing agent authorized to act on behalf of the:

        ☐ Holder.
        ☐ Beneficiary.

    d. ☐ Other (*specify*):

4. a. The address of the Property is:

    *Street address*: 840 S. DUNSMUIR AVE.
    *Unit/suite no.*:
    *City, state, zip code*: LOS ANGELES, CA  90036

    b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**0055**

5. Type of property (*check all applicable boxes*):

   a. ☒ Debtor's principal residence     b. ☐ Other residence
   c. ☐ Multi-unit residential     d. ☐ Commercial
   e. ☐ Industrial     f. ☐ Vacant land
   g. ☒ Other (*specify*): BUSINESS PURPOSE LOAN

6. Nature of the Debtor's interest in the Property:

   a. ☒ Sole owner

   b. ☐ Co-owner(s) (*specify*):

   c. ☐ Lienholder (*specify*):

   d. ☐ Other (*specify*):

   e. ☒ The Debtor ☒ did ☐ did not  list the Property in the Debtor's schedules.

   f. ☐ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☐ trust deed.
      The deed was recorded on (*date*) _____.

7. Movant holds a  ☒ deed of trust  ☐ judgment lien  ☐ other (*specify*) _____
   that encumbers the Property.

   a. ☒ A true and correct copy of the document as recorded is attached as Exhibit 1 ____.

   b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
      attached as Exhibit 2 ____.

   c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
      trust to Movant is attached as Exhibit _____.

8. Amount of Movant's claim with respect to the Property:

|   | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 365,000 |
| b. | Accrued interest: | $ | $ | $ 47,754 |
| c. | Late charges | $ | $ | $ |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 18,265 |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[     ] | $[     ] | $[     ] |
| g. | TOTAL CLAIM as of (*date*): 3-15-2019 | $ | $ | $ 431,019 |

   h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
   has occurred*):

   a. Notice of default recorded on (*date*) 9/11/18 ____ or ☐ none recorded.

   b. Notice of sale recorded on (*date*) 12/11/18 ___ or ☐ none recorded.

   c. Foreclosure sale originally scheduled for (*date*) 1/8/19 _____ or ☐ none scheduled.

   d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

   e. Foreclosure sale already held on (*date*) _____ or ☐ none held.

   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☐ none recorded.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*           Page 7           **F 4001-1.RFS.RP.MOTION**

**0056**

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a. Amount of current monthly payment as of the date of this declaration: $ _5018.75_____ for the month of __JULY_____ 20_19_.

    b. Number of payments that have come due and were not made: _12___. Total amount: $ _60,225_____

    c. Future payments due by time of anticipated hearing date (*if applicable*):

        An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

    d. The fair market value of the Property is $ _1,554,000_____, established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _6___.

        (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

        (3) ☒ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _3___.

        (4) ☒ Other (*specify*):
        SEE ATTACHED DECLARATION OF EIGHT (8) VALUE WEBSITES OF $1,554,000.00

    e. **Calculation of equity/equity cushion in Property:**

        Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | (U.S. BANK) Selena Finance | $ 625,000 | $ 667.814.13 |
| 2nd deed of trust: | YCCS | $ 400,000 | $ 451,094 |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | LA COUNTY TAX | $ 1023 | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $ 1,118,908** | | | |

    f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _3___ and consists of:

        (1) ☐ Preliminary title report.

        (2) ☒ Relevant portions of the Debtor's schedules.

        (3) ☐ Other (*specify*):

    g. ☒ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ _435,092_____ and is _28_____% of the fair market value of the Property.

    h. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ _279,692_____.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 8                        **F 4001-1.RFS.RP.MOTION**

**0057**

i.  ☒ Estimated costs of sale: $ 155,400 _____  (estimate based upon 10 _____ % of estimated gross sales price)

j.  ☒ The fair market value of the Property is declining because:
BORROWER IS NOT PERFORMING DEFERRED MAINTENANCE. MARKET CONDITIONS ARE SOFTENING

12. ☐ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a.  A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date:_____.
A plan was confirmed on the following date (*if applicable*): _____.

b.  Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c.  Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d.  Postpetition advances or other charges due but unpaid:          $
(*For details of type and amount, see Exhibit _____*)

e.  Attorneys' fees and costs:          $
(*For details of type and amount, see Exhibit _____*)

f.  Less suspense account or partial paid balance:          $[                    ]

TOTAL POSTPETITION DELINQUENCY:          $

g.  Future payments due by time of anticipated hearing date (*if applicable*): _____.
An additional payment of $_____ will come due on _____, and on
the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late charge of $_____ will be charged to the loan.

h.  Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
$_____ received on (*date*) _____
$_____ received on (*date*) _____
$_____ received on (*date*) _____

i.  ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                      Page 9                      F 4001-1.RFS.RP.MOTION

0058

13. ☐  Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐  The court determined on (date) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B).  More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐  The Debtor's intent is to surrender the Property.  A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐  Movant regained possession of the Property on (date) _____, which is  ☐ prepetition  ☐ postpetition.

17. ☐  The bankruptcy case was filed in bad faith:

   a.  ☐  Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b.  ☐  Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c.  ☐  The Debtor filed only a few case commencement documents.  Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d.  ☐  Other (specify):



18. ☐  The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a.  ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b.  ☐  Multiple bankruptcy cases affecting the Property include:

      1.  Case name: _____
          Chapter: _____   Case number: _____
          Date dismissed: _____   Date discharged: _____   Date filed: _____
          Relief from stay regarding the Property ☐ was ☐ was not  granted.

      2.  Case name: _____
          Chapter: _____   Case number: _____
          Date dismissed: _____   Date discharged: _____   Date filed: _____
          Relief from stay regarding the Property ☐ was ☐ was not  granted.

      3.  Case name: _____
          Chapter: _____   Case number: _____
          Date dismissed: _____   Date discharged: _____   Date filed: _____
          Relief from stay regarding the Property ☐ was ☐ was not  granted.

   ☐  See attached continuation page for information about other bankruptcy cases affecting the Property.

   ☐  See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**0059**

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/2/19 | CURTIS DEWEESE | SEE ATTACHED |
|--------|----------------|--------------|
| Date | Printed name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**0060**

## (CONTINUED) DECLARATION OF CURTIS DEWEESE

20. Movant is seeking relief for cause under Section 362(d)(1) for lack of adequate protection and Section 362(d)(2) for lack of equity because the Debtor has not made any post-petition payments to Movant,  the Debtor will not be able to pay YCCS all sums which are due under the Note on the maturity date of December 1, 2019 and because the current equity cushion for the secured creditor is only 18% and will shortly be reduced to only 12% as detailed herein.

21. The Note is secured solely by the Property, which is the Debtor's principal residence, and consequently, Section 1123(b)(5) precludes the Debtor's plan from modifying  Movant's rights under the Note.  YCCS will not consent to any modification of the Note.

22. The Debtor's most recent status report ("Report") dated May 1, 2019 [Docket No. 70], a copy of which is attached as Exhibit 4, provides clear information regarding how the Debtor wished to deal with Movant's claim.  In response to the question of what the Debtor hopes to accomplish in the case, the Debtor states, "Debtor intends to negotiate cure agreements with the various lenders and then propose a Chapter 13 style plan,." See Report, 4:14-16.  When addressing principal disputes/problems and proposed solutions, the Debtor claims he "needs a bit of time to negotiate with secured creditors before filing a plan." See Report, 4:18-23. When asked when he intends to file a plan and disclosure statement, the Debtor states he "needs approximately 5 months to contact various lenders in an attempt to negotiate plan terms.  Debtor requests that the Plan due date be set for September 2019." See Report, 6:9-12.

23. All of the Debtor's options are based on negotiating a deal with YCCS. The Debtor and Movant, through counsel, engaged in discussions regarding a possible modification of the Note.  Those discussions were not fruitful.  YCCS does not wish to negotiate with the Debtor regarding a cure agreement or a chapter 13 style plan, which would provide payment over several years.   Movant wants to be paid on or before its note matures on December 1, 2019, as required under the express terms of its Note. Debtor has made no payments to Movant for twelve (12) months.

24. On June 26, 2019, the Debtor filed his Notice of Motion and Motion for Order

**0061**

1    Authorizing Debtor to Enter Into a Month to Month Lease and to Pay for Moving

2    Expenses Section 363 (the "Lease Motion") [Docket No. 95], a copy of which is attached

3    as Exhibit 5. The Lease Motion affects the Property which is the subject of this Stay

4    Motion.  YCCS will be filing an Objection to the Lease Motion and now raises some

5    concerns regarding the Lease Motion.

6    25.    The Lease Motion inaccurately states the explicit language of its underlying exhibit

7    documents.  The exhibits include an Exhibit (Application to Employ the Rental Girl as

8    Broker) to the Lease Motion.  This exhibit contains the proposed lease listing agreement

9    which is for a minimum ONE YEAR tenancy lease, NOT a month-to-month lease as

10    stated in the Lease Motion. Contrary to his assertions in the Lease Motion, the Debtor's

11    having a one year lease or a month-to-month short term lease with a non-debtor is not in

12    the best interests of the proposed tenant, the Estate, and the creditors of the Estate,

13    including YCCS.  Assuming that the Court grants the Stay Motion, the Property could be

14    sold by September 1, 2019, possibly sooner.  A hearing on the Lease Motion will not be

15    heard until late July, at the earliest. What purpose does it serve to have a tenant come to

16    rent the Property for a month, possibly two?  The tenant will have to move a second time

17    and incur additional cost and expense.

18    26.    From the Estate's perspective, there is likewise no benefit. The current monthly property

19    expenses for the 1st and 2nd note holders per their respective proof of claims total

20    $11,705/month. In a best case scenario, the additional rent of a month or two at

21    $6,000/month, less the moving expenses of $600, less one month's leasing commission

22    due per the Debtor's leasing agreement exhibit ($6,000), plus the Debtor's outside

23    housing expense of $3,000/month creates additional negative cash flow to the Estate.[1]

24    This negative cash flow would be exacerbated if the property was not  rented immediately

25    upon being vacated and that there will be no costs or fees in readying the Property for the

26

27    _____

28    [1]The Debtor's Cash Flow exhibit showing $4-5k/month net cash flow; is not
reasonable to expect that the housing expense of $11,705/month can be supported and
therefore another reason for the stay to be lifted.

**0062**

1    new tenants.  A further downside for the Estate is possible liability for tenants occupying

2    the Property, the increased cost of insurance, and potential damage to the Property by

3    individuals who are not owners of the Property.

4    27.    From Movant's perspective, having tenants on the Property adds a level of complexity to

5    what otherwise would be a straightforward foreclosure.  There is no assurance that the

6    tenants would vacate the Property voluntarily; Movant would have to file an adversary

7    proceeding to have the tenants vacate the Property or go to state court and proceed with

8    an unlawful detainer action, both of which procedures are time-consuming and expensive.

9    Then, too, if the tenants damage the Property, there would be costs of repairs and possible

10    delay in the sale of the Property.  Finally, if one was suspicious, one might think that the

11    proposed lease of the Property was a ploy to have the Property be exempt from the

12    requirements of Section 1123(b)(5) because the Property would no longer be Debtor's

13    principal residence. In looking at all the factors, and suspicions aside, it simply is not in

14    anyone's best interest to approve a 1-year lease of the Property.[2]

15    28.    Movant's secured debt equity cushion has been severely reduced and should be granted

16    relief from stay.  Debtor has not received any loan payments for the last  twelve (12)

17    months and further delays are without merit.  Based upon the amounts stated under the

18    proofs of claim filed by the 1st trust deed holder and our 2nd trust deed position, the

19    current amounts due are $1,118,908 with amounts of approximately $11,705 being

20    incurred for each month going forward without relief.  Based upon an average of eight(8)

21    real estate online appraisal value estimates, the property's current market value is

22    $1,554,000 (See Exhibit 6 attached). Should a sale occur for that market value amount,

23    the proceeds would be as follows.

24    ///

25

26    [2]YCCS believes that the Debtor is being disingenuous when he refers to the lease

27    as month-to-month and then seeks to hire a broker (at a cost of $6K not disclosed in the
Motion) for a 1-year lease.  Having it be a year lease violates the existing terms of the

28    deed of trust and provides great opposition to the soon-to-be-filed opposition to the Lease
Motion.

**0063**

| | a. | Sales Price: | $1,554,000 |
|---|---|---|---|
| | b. | Less: Selling Costs @10% | ($155,400) |
| | | Subtotal Proceeds: | $1,398,600 |
| | | Less: 1st TD, US Bank | ($667,814) (7/1/19) |
| | | Less: 2nd TD,YCCS(Movant) | ($451,094) (7/1/19) |
| | c. | Equity Cushion: | $279,692 or 18% as of 7/1/19 |
| | d. | Less: Interim carry due at $11,705/month for est. 6 months | |
| | | ($70,230) | |
| | e. | Less: Est. Legal, misc. 1st/2nd to closing($20,000) | |
| | f. | Equity Cushion at sale | $189,462 or 12% as of 1/1/20 |

29. Should the real estate market continue to soften as has been the case over the last year, the secured debt will be further at risk below this 12-18% equity cushion.

30. YCCS has shown cause to grant relief from stay to proceed with the sale of the Property as soon as possible. The Stay Motion should be granted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on July 2, 2019.

CURTIS DEWEESE

4

**0064**

**"EXHIBIT 6"**

# NOTE SECURED BY A DEED OF TRUST

Loan Number: 2017-0925                    November 14, 2017                    LOS ANGELES, California
APN # 5089-020-012

## 840 South Dunsmuir Avenue Los Angeles CA 90036
Property Address

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay $365,000.00 (*THREE HUNDRED SIXTY-FIVE THOUSAND AND 00/100 DOLLARS*), (this amount will be called "principal"), plus interest, to the order of **YCCS LLC, a Hawaiian limited liability company** (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

### 2. INTEREST

I will pay interest at a yearly rate as described in paragraph 3 below.

Interest commences on **date Lender funds are received**, and if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.

Interest will be charged in arrears on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

### 3. PAYMENTS

My payments are ☑ Interest Only   ☐ Fully Amortized   ☐ Other

I will make my payments each month as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 23 | Monthly beginning January 1, 2018 | 11.50% | $3,497.92 |
| 1 | December 1, 2019 | 11.50% | $368,497.92 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on *12/01/2019* ("**Due Date**") I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.

I will make my payments payable to **\*Pacific Private Money, Inc., 1555 Grant Avenue Novato CA 94945\***, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

### 4. EXTENSION OF TERM UPON MATURITY

Borrower does not have the unilateral right to extend the term of this loan beyond the loan Due Date. However, on the condition that Borrower is in Good Standing (defined below), lender may, in its sole determination, agree to grant an extension of time on the loan Due Date. In the event of Lender's approval, the extension of time allowed shall be for up to two 90-day extensions at a cost of processing fee of $1,495.00 plus One point (1.00%) for each 90 days (the "**Extension Fee**"), calculated on the outstanding principal loan balance. The Extension Fee shall be charged automatically, without notice, and shall be added to Lender's demand upon payoff. The Extension Fee shall be due and payable whether or not Lender formally approves the extension.

For this purpose, Good Standing is defined as 1) all monthly payments have been made on time as agreed, and 2) property taxes and property insurance are paid current.

Borrower's Initials

### 5. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge For Overdue Payments. If I do not pay the full amount of each monthly payment by the end of 10 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 10.000% of my overdue payment or U.S. $349.80, whichever is more. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than 10 days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

I agree that the late charge payable pursuant to this paragraph represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional expenses Note Lender will incur by reason of such late payment. The late charge is payable in addition to, and not in lieu of, any interest payable at the Default Rate pursuant to Paragraph 4(B).

*Pacific Private Money, Inc. Cal BRE #01897444 ; NMLS #945582*
*PPM Note*

2017-0925 / LEE
Page 1 of 4

**0066**

**(B) Default and Acceleration**

I unconditionally agree NOT to defer or accrue any interest on any note, mortgage or lien that is senior to the Deed of Trust securing this loan. In the event I allow any interest to accrue or be deferred of an existing Note, which is in superior lien position, then such an event, whether by omission or commission, shall be deemed a material default under the Promissory Note and Deed of Trust, and Lender shall be entitled to all remedies available to Lender under said Note, Deed of Trust and any other remedies available at law or in equity. If the superior Note accelerates the maturity date or calls the note for any reason, then this Note shall become immediately due and payable.

Borrower's Initials

If I do not pay the full amount of each monthly payment due under this Note by the date stated in Section 3 above, I will be in default, and the Note Lender may demand that I pay immediately all amounts that I owe under this Note.

Even if, at a time when I am in default, the Note Lender does not require me to pay immediately in full as described above, the Note Lender will still have the right to do so if I am in default at a later time.

In the event of a default under the terms of this Note, including but not limited to: (a) non-payment of any installment of principal or interest within Ten (10) days of its designated due date; (b) failure to pay insurance premiums or property taxes when they become due; (c) transfer of title; or (d) that this Note is not paid in full on or before the due date, then any unpaid principal balance of the loan at the time of default shall bear interest at the rate of **FIVE percent (5.000%)** (the "Default Rate") above the herein stated note rate, automatically and without notice, from the time of default, until this Note has been paid in full, or until the specific default has been cured. If I do not pay the full amount of the outstanding balance of the loan at maturity (the "balloon balance" referenced in Paragraph 3 above), the Default Rate will automatically apply to all interest accrued thereafter without demand by the Note Lender. I further agree that the increase in the rate of interest payable under this Note to the default rate represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional cost and expense Note Lender will incur by reason of my delinquent payment and the additional compensation Note Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan.

Failure to Pay at Maturity Date - Default Rate. Should Borrower fail to pay all sums due under this Note at the Maturity Date set forth above, the unpaid principal shall bear interest at the herein stated rate set forth above plus **FIVE percent (5.000%)** ("Default Rate"), automatically and without notice."

(C) Payment of Note Lender's Costs and Expenses

If the Note Lender has required me to pay immediately in full as described above, the Note Lender will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees and expert's fees. A default upon any interest of any Note Lender shall be a default upon all interests.

(D) Payment with Good Funds. If any check used to make any payment is returned unpaid by my bank, I agree to pay a Returned Check charge of $50.00 plus any late charge that may become due because of the returned check. I further agree that if any payment is made by a personal check that is not honored by my bank, at the option of the Note Lender, to make all future payments by Cashier's Check, Money Order or other certified funds.

(E) Advancing Fee. For any advance made to senior encumbrances, property taxes, insurance premiums, and/or other obligations to protect the Note Lender's interest in this Note, including, but not limited to, attorneys' fees and costs, there will be an Advancing fee of $50.00 for each such advance. Advances will bear interest at the same rate that is charged on the principal of this Note from the date of advancement to such date when that certain advance and advance fee is paid in full in the form of a Cashier's Check, Money Order, or other certified funds.

## 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT FEES

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows:

Borrower hereby agrees:

**Beneficiary is guaranteed to receive a minimum of SIX (6) months interest based on the original principal balance together with any odd days interest due or paid through escrow.**

**For an amount of *$20,987.52*, plus any odd days interest paid through escrow.**

**In the event Borrower wishes to prepay or payoff the Loan prior to *06/01/2018*, Borrower agrees to pay Lender the difference between the interest previously received by Lender and the amount that was guaranteed and agreed to listed above. There shall be no prepayment penalty for any prepayment(s) due that are made after 06/01/2018.**

Borrower's Initials

## 7. WAIVER OF STATUTORY REGULATIONS

By initialing below, I waive any rights to and under the California Civil Code 2954.10 or otherwise to prepay this Note, in whole or in part, without a prepayment penalty as described in Paragraph 5 hereinabove. I further acknowledge that prepayment of this Note may result in Note Lender's incurring additional losses, costs, expenses, and liabilities, including, but not limited to, lost revenue and lost profits. I, therefore, agree to pay the prepayment penalty as described in Paragraph 5 hereinabove, if any principal amount is prepaid, whether voluntarily, or by reason of an acceleration of the Maturity Date on default (including, but not limited to, acceleration on any transfer or conveyance of any right, title, or interest in the Mortgaged Property (as defined in Paragraph 9 below) giving Note Lender the right to accelerate the maturity of this Note as provided in the Security Instrument, as defined in Paragraph 9 below).

**I AGREE THAT LENDER'S WILLINGNESS TO OFFER TO ME THE INTEREST RATE DESCRIBED ABOVE IS SUFFICIENT AND INDEPENDENT CONSIDERATION, GIVEN INDIVIDUAL WEIGHT BY LENDER, FOR THIS WAIVER. I FURTHER UNDERSTAND THAT LENDER WOULD NOT OFFER SUCH AN INTEREST RATE TO ME ABSENT THIS WAIVER.**

Borrower's Initials

## 8. OTHER BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 9. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

## 10. THIS NOTE IS SECURED BY A DEED OF TRUST

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note against **840 South Dunsmuir Avenue Los Angeles CA 90036**, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, enter into a contract of sale, lease for a term of more than one (1) year (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, including the creation of a lien or encumbrance subordinate to this Deed of Trust, but excluding a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

All of the agreements, conditions, covenants, provisions and stipulations contained in the Deed of Trust and the loan documents which are to be kept and performed by Borrower are hereby made a part of this Note to the same extent and with the same force and effect as if they were fully set forth herein, and Borrower covenants and agrees to keep and perform them, or cause them to be kept and performed, strictly in accordance with their terms. If any Borrower is not also a trustor of the Deed of Trust, such Borrower makes all covenants, representations, warranties and indemnities contained in the Deed of Trust, jointly and severally with the trustor of the Deed of Trust to and for the benefit of Lender.

Borrower acknowledges and agrees that as further set forth in Section 19 of the Deed of Trust, the provisions of which are incorporated herein, Lender shall have the right to accelerate the indebtedness evidenced by this Note in the event that the Property or any part thereof or interest therein is sold (including any installment sales agreement), conveyed, disposed of, alienated, hypothecated, leased, assigned, pledged, mortgaged, further encumbered or otherwise transferred, or Borrower is divested of its title to the Property or any interest therein, in any manner or way, whether voluntarily or involuntarily, without the prior written consent of Lender being first obtained, which consent may be withheld in Lender's sole discretion. Furthermore, for the purposes of the foregoing, the sale, conveyance, transfer, disposition, alienation, hypothecation, pledge or encumbering (whether voluntarily or involuntarily) of all or any part of the ownership interest in (or, directly or indirectly through constituent parties, any of the ultimate beneficial ownership interest in) Borrower shall be deemed to be a transfer of an interest in the Property, subject to the limited exceptions set forth in Section 19 of the Deed of Trust.

## 11. USURY SAVINGS CLAUSE

The terms of this Loan are hereby expressly limited so that in no contingency or event whatsoever shall the amount paid or agreed to be paid to Lender for the use, forbearance, or detention of the money to be loaned exceed the maximum amount or rate permissible under applicable law. If, for any reason whatsoever, fulfillment of any provision of this Loan, at the time fulfillment of such provision shall be due, is prohibited by law, the obligation to be fulfilled shall be reduced to the maximum not so prohibited; and if for any reason whatsoever Lender should ever receive as interest an amount which would exceed the highest lawful rate, such amount as would be excessive interest shall be applied to the reduction of the principal of the Note and not to the payment of interest. This provision shall control every other provision contained in the Loan Documents.

## 12. LOAN ARRANGED BY REAL ESTATE BROKER

This loan was arranged by Pacific Private Money, Inc. a California Bureau of Real Estate Licensed Brokerage, license #01897444 and NMLS license #945582 and is thus exempt from usury laws pursuant to Section 1 of Article 15 of the California Constitution.

## 13. RIGHT TO ASSIGN

The holder of this Note shall have the right to sell, assign, or otherwise transfer, either in part or in its entirety, this Note, the Deed of Trust, and other instruments evidencing or securing the indebtedness of this Note to one or more investors without Borrower's consent.

## 14. GENERAL PROVISIONS

(A) Time is of the essence of this Note.

(B) This Note may not be changed, amended, or modified except by a further written agreement between Borrower and Note Lender.

(C) Any failure of Note Lender to exercise any of its rights under this Note shall not constitute a waiver of those rights by Note Lender or a waiver by Note Lender of any other rights.

(D) This Note and the rights and duties of Borrower and Note Lender shall be governed by the laws of the State of California for all purposes.

(E) Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but, if any provision of this Note shall be prohibited or invalid under applicable law, such provisions shall be ineffective only to the extent of such prohibitions or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Note.

**BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants by contained in this Financial Instrument and in any addendums or rider(s) executed by Borrower.**

David D. Lee, an unmarried man

| Borrower | David D. Lee | Date | Borrower | Date |

## ASSIGNMENT OF NOTE
## SECURED BY A DEED OF TRUST

Date: _____

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:

all beneficial interest under the within Note, without recourse, and Deed of Trust securing same

**DO NOT DESTROY THIS NOTE:** When paid it must be surrendered to the Trustee, together with the Deed of Trust securing same for cancellation, before reconveyance will be made.

*Pacific Private Money, Inc. Cal BRE #01897444 ; NMLS #945582*
*PPM Note*

2017-0925 / LEE
Page 4 of 4

**0069**

**"EXHIBIT 7"**

# Closing Disclosure

*This form is a statement of final loan terms and closing costs. Compare this document with your Loan Estimate.*

| Closing Information | | Transaction Information | | Loan Information | |
|---|---|---|---|---|---|
| **Date Issued** | 11/6/2019 | **Borrower** | David D. Lee | **Loan Term** | 30 years |
| **Closing Date** | 11/22/2019 | | 840 S Dunmuir Ave | **Purpose** | Refinance |
| **Disbursement Date** | 11/27/2019 | | Los Angeles , CA 90036 | **Product** | 5/1 Adjustable Rate |
| **Settlement Agent** | ▮▮▮▮ | | | | |
| **File #** | | **Lender** | ▮▮▮▮ | **Loan Type** | ☒ Conventional ☐ FHA |
| **Property** | 840 S Dunsmuir Ave | | | | ☐ VA ☐ _____ |
| | Los Angeles , CA 90036 | | | **Loan ID #** | ▮▮▮▮ |
| **Appraised Prop. Value** | $1,785,000 | | | **MIC #** | ▮▮▮▮ |

## Loan Terms

| | | Can this amount increase after closing? |
|---|---|---|
| **Loan Amount** | $1,226,000 | **NO** |
| **Interest Rate** | 8.5% | **YES** • Adjusts **every year** starting in year 6 • Can go **as high as 13.5%** in year 8 • See **AIR Table on page 4** for details |
| **Monthly Principal & Interest** *See Projected Payments below for your Estimated Total Monthly Payment* | $9,426.88 | **YES** • Adjusts **every year** starting in year 6 • Can go **as high as $13,583** in year 8 |

| | Does the loan have these features? |
|---|---|
| **Prepayment Penalty** | **NO** |
| **Balloon Payment** | **NO** |

## Projected Payments

| Payment Calculation | Years 1 - 5 | Year 6 | Year 7 | Years 8 - 30 |
|---|---|---|---|---|
| Principal & Interest | $9,426.88 | $9,427 min $11,054 max | $9,427 min $12,732 max | $9,427 min $13,583 max |
| Mortgage Insurance | + 0 | + 0 | + 0 | + 0 |
| Estimated Escrow *Amount can increase over time* | + 1,498.39 | + 1,498.39 | + 1,498.39 | + 1,498.39 |
| **Estimated Total Monthly Payment** | $10,925.27 | $10,925 -$12,552 | $10,925 -$14,230 | $10,925 -$15,081 |

| **Estimated Taxes, Insurance & Assessments** *Amount can increase over time* *See page 4 for details* | $1,498.39 a month | **This estimate includes** ☒ Property Taxes ☒ Homeowner's Insurance ☐ Other: *See Escrow Account on page 4 for details. You must pay for other property costs separately.* | **In escrow?** YES YES |
|---|---|---|---|

## Costs at Closing

| **Closing Costs** | $49,570.69 | Includes $29,888.00 in Loan Costs + $19,682.69 in Other Costs -$0 in Lender Credits. *See page 2 for details.* |
|---|---|---|
| **Cash to Close** | $533.07 | Includes Closing Costs *See Calculating Cash to Close on page 3 for details.* ☒ From ☐ To Borrower |





## Closing Cost Details

| Loan Costs | | Borrower-Paid | | Paid by Others |
|---|---|---|---|---|
| | | At Closing | Before Closing | |
| **A. Origination Charges** | | **$26,310.00** | | |
| 01   % of Loan Amount (Points) | | | | |
| 02 Doc Fee | | $200.00 | | |
| 03 Originator Compensation  to Alpha Home Loans, Inc | | $24,520.00 | | |
| 04 Processing Fee | | $295.00 | | |
| 05 Underwriting Fee | | $1,295.00 | | |
| 06 | | | | |
| 07 | | | | |
| 08 | | | | |
| **B. Services Borrower Did Not Shop For** | | **$393.00** | | |
| 01 Appraisal Fee | to Lender X | $100.00 | | |
| 02 Broker Credit Report | to CBC Innovis | $125.00 | | |
| 03 Credit Report | to CBC Innovis | $150.00 | | |
| 04 Flood Certification | to Corelogic | $18.00 | | |
| 05 | | | | |
| 06 | | | | |
| 07 | | | | |
| 08 | | | | |
| 09 | | | | |
| 10 | | | | |
| **C. Services Borrower Did Shop For** | | **$3,185.00** | | |
| 01 Title - Bankruptcy Processing Fee | to | $75.00 | | |
| 02 Title - Closing/Escrow Fee | to | $750.00 | | |
| 03 Title - Demand Processing Fee | to | $75.00 | | |
| 04 Title - Endorsements | to | $125.00 | | |
| 05 Title - Lender's Title Insurance | to | $1,760.00 | | |
| 06 Title - Notary Fees | to | $375.00 | | |
| 07 Title - Recording Process Service Fee | to | $25.00 | | |
| 08 | | | | |
| **D. TOTAL LOAN COSTS (Borrower-Paid)** | | **$29,888.00** | | |
| Loan Costs Subtotals (A + B + C) | | $29,888.00 | | |

| Other Costs | | Borrower-Paid | | Paid by Others |
|---|---|---|---|---|
| **E. Taxes and Other Government Fees** | | **$479.00** | | |
| 01 Recording Fees          Deed:          Mortgage: $200.00 | | $425.00 | | |
| 02 Substitution of Trustee and Full Reconveyance          to Los Angeles County Recorder | | $54.00 | | |
| **F. Prepaids** | | **$10,877.37** | | |
| 01 Homeowner's Insurance Premium (  mo.) | | | | |
| 02 Mortgage Insurance Premium (  mo.) | | | | |
| 03 Prepaid Interest ($289.47 per day from 11/27/19 to 12/1/19) | | $1,157.89 | | |
| 04 Property Taxes (  mo.) | | | | |
| 05 12 months Hazard Insurance Premium to State Farm | | $1,328.00 | | |
| 06 2019-20 1st Installment (6mo) Property Taxes to Los Angeles County Treasurer-Tax Collector | | $8,391.48 | | |
| **G. Initial Escrow Payment at Closing** | | **$8,326.32** | | |
| 01 Homeowner's Insurance  $110.67 per month for 4 mo. | | $442.68 | | |
| 02 Mortgage Insurance          per month for  mo. | | | | |
| 03 Property Taxes          per month for  mo. | | | | |
| 04 Propertytax        $1,387.72 per month for 6 mo. | | $8,326.32 | | |
| 05 | | | | |
| 06 | | | | |
| 07 | | | | |
| 08 Aggregate Adjustment | | -$442.68 | | |
| **H. Other** | | | | |
| 01 | | | | |
| 02 | | | | |
| 03 | | | | |
| 04 | | | | |
| 05 | | | | |
| 06 | | | | |
| 07 | | | | |
| **I. TOTAL OTHER COSTS (Borrower-Paid)** | | **$19,682.69** | | |
| Other Costs Subtotals (E + F + G + H) | | $19,682.69 | | |
| **J. TOTAL CLOSING COSTS (Borrower-Paid)** | | **$49,570.69** | | |
| Closing Costs Subtotals (D + I) | | $49,570.69 | | |
| Lender Credits | | | | |





DocMagic Forms
v12/11/2018

0072

## Payoffs and Payments

Use this table to see a summary of your payoffs and payments to others from your loan amount.

| TO | | AMOUNT |
|---|---|---|
| 01 | Payoff to Pacific Private Money Dba Yccs | $509,500.61 |
| 02 | Payoff to Selene Finance LP | $667,461.77 |
| 03 | | |
| 04 | | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |
| 09 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| **K. TOTAL PAYOFFS AND PAYMENTS** | | $1,176,962.38 |

## Calculating Cash to Close

Use this table to see what has changed from your Loan Estimate.

| | Loan Estimate | Final | Did this change? |
|---|---|---|---|
| Loan Amount | $1,100,000.00 | $1,226,000.00 | **YES**   ●This amount **increased** |
| Total Closing Costs (J) | -$41,762.00 | -$49,570.69 | **YES** |
| Closing Costs Paid Before Closing | $0 | $0 | **NO** |
| Total Payoffs and Payments (K) | -$973,318.00 | -$1,176,962.38 | **YES**   ●See **Payoffs and Payments(K)** |
| **Cash to Close** | $84,920.00 | $533.07 | |
| | ☐ **From** ☒ **To Borrower** | ☒ **From** ☐ **To Borrower** | Closing Costs Financed (Paid from Your Loan Amount) $49,037.62 |





0073
v12/11/2018

# Additional Information About This Loan

## Loan Disclosures

### Assumption

If you sell or transfer this property to another person, your lender

☒ will allow, under certain conditions, this person to assume this loan on the original terms.

☐ will not allow assumption of this loan on the original terms.

### Demand Feature

Your loan

☐ has a demand feature, which permits your lender to require early repayment of the loan. You should review your note for details.

☒ does not have a demand feature.

### Late Payment

If your payment is more than *15* days late, your lender will charge a late fee of *5% of your overdue payment of principal and interest*.

### Negative Amortization (Increase in Loan Amount)

Under your loan terms, you

☐ are scheduled to make monthly payments that do not pay all of the interest due that month. As a result, your loan amount will increase (negatively amortize), and your loan amount will likely become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.

☐ may have monthly payments that do not pay all of the interest due that month. If you do, your loan amount will increase (negatively amortize), and, as a result, your loan amount may become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.

☒ do not have a negative amortization feature.

### Partial Payments

Your lender

☐ may accept payments that are less than the full amount due (partial payments) and apply them to your loan.

☐ may hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.

☒ does not accept any partial payments.

If this loan is sold, your new lender may have a different policy.

### Security Interest

You are granting a security interest in
*840 S Dunsmuir Ave , Los Angeles , CA 90036*

You may lose this property if you do not make your payments or satisfy other obligations for this loan.

### Escrow Account

**For now,** your loan

☒ will have an escrow account (also called an "impound" or "trust" account) to pay the property costs listed below. Without an escrow account, you would pay them directly, possibly in one or two large payments a year. Your lender may be liable for penalties and interest for failing to make a payment.

| Escrow | | |
|---|---|---|
| Escrowed Property Costs over Year 1 | $17,980.68 | Estimated total amount over year 1 for your escrowed property costs: *Homeowner's Insurance Propertytax* |
| Non-Escrowed Property Costs over Year 1 | $0.00 | Estimated total amount over year 1 for your non-escrowed property costs: You may have other property costs. |
| Initial Escrow Payment | $8,326.32 | A cushion for the escrow account you pay at closing. See Section G on page 2. |
| Monthly Escrow Payment | $1,498.39 | The amount included in your total monthly payment. |

☐ will not have an escrow account because ☐ you declined it ☐ your lender does not offer one. You must directly pay your property costs, such as taxes and homeowner's insurance. Contact your lender to ask if your loan can have an escrow account.

| No Escrow | | |
|---|---|---|
| Estimated Property Costs over Year 1 | | Estimated total amount over year 1. You must pay these costs directly, possibly in one or two large payments a year. |
| Escrow Waiver Fee | | |

**In the future,**

Your property costs may change and, as a result, your escrow payment may change. You may be able to cancel your escrow account, but if you do, you must pay your property costs directly. If you fail to pay your property taxes, your state or local government may (1) impose fines and penalties or (2) place a tax lien on this property. If you fail to pay any of your property costs, your lender may (1) add the amounts to your loan balance, (2) add an escrow account to your loan, or (3) require you to pay for property insurance that the lender buys on your behalf, which likely would cost more and provide fewer benefits than what you could buy on your own.

## Adjustable Interest Rate (AIR) Table

| | |
|---|---|
| Index + Margin | 1 Year LIBOR + 4.5% |
| Initial Interest Rate | 8.5% |
| Minimum/Maximum Interest Rate | 8.5%/13.5% |
| **Change Frequency** | |
| First Change | Beginning of 61st month |
| Subsequent Changes | Every 12th month after first change |
| **Limits on Interest Rate Changes** | |
| First Change | 2% |
| Subsequent Changes | 2% |





0074

v12/11/2018

## Loan Calculations

| | |
|---|---|
| **Total of Payments.** Total you will have paid after you make all payments of principal, interest, mortgage insurance, and loan costs, as scheduled. | $3,424,721.86 |
| **Finance Charge.** The dollar amount the loan will cost you. | $2,196,461.86 |
| **Amount Financed.** The loan amount available after paying your upfront finance charge. | $1,197,214.11 |
| **Annual Percentage Rate (APR)** Your costs over the loan term expressed as a rate. This is not your interest rate. | 8.76% |
| **Total Interest Percentage (TIP)** The total amount of interest that you will pay over the loan term as a percentage of your loan amount. | 176.903% |

**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

## Other Disclosures

**Appraisal**
If the property was appraised for your loan, your lender is required to give you a copy at no additional cost at least 3 days before closing. If you have not received it yet, please contact your lender at the information listed below.

**Contract Details**
See your note and security instrument for information about
- what happens if you fail to make your payments,
- what is a default on the loan,
- situations in which your lender can require early repayment of the loan, and
- the rules for making payments before they are due.

**Liability after Foreclosure**
If your lender forecloses on this property and the foreclosure does not cover the amount of unpaid balance on this loan,
- ☒ state law may protect you from liability for the unpaid balance. If you refinance or take on any additional debt on this property, you may lose this protection and have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information.
- ☐ state law does not protect you from liability for the unpaid balance.

**Refinance**
Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan.

**Tax Deductions**
If you borrow more than this property is worth, the interest on the loan amount above this property's fair market value is not deductible from your federal income taxes. You should consult a tax advisor for more information.

## Contact Information

| | Lender | Mortgage Broker | Settlement Agent |
|---|---|---|---|
| **Name** | | Alpha Home Loans, Inc | |
| **Address** | | 4864 Rockhingam Groove, Riverside, CA 92509 | |
| **NMLS ID** | | 786085 | |
| **CA License ID** | | 01526580 | |
| **Contact** | | Daniel Solomon Rauch | |
| **Contact NMLS ID** | | 233258 | |
| **Contact CA License ID** | | 00956974 | |
| **Email** | | drfinancial13@gmail.com | |
| **Phone** | | (323)465-2150 | |

## Confirm Receipt

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.



*David D Lee*

David D. Lee
11/06/19 03:23:44 PM PST                    Date



0075

v12/11/2018

☆ **DocMagic** **DocMagic eSign Certificate**

| eSign Id: | 47188480 | | Reference Id: | 2019070051 | From: | PETER PAIK | Status: | Signed |
| Documents Type: | CLOSING DISCLOSURE DOCUMENTS | | Loan Id: | 2019070051 | Documents: | 1 | Signatures: | Y |

## List of Signers

| Name/Email | Signature | Created Date | Started Date | Consented Date | Viewed Date | Completed Date |
|---|---|---|---|---|---|---|
| DAVID D. LEE<br>dlcpas@gmail.com | *David D Lee* | 11/06/19<br>12:48:42 PM | 11/06/19<br>03:22:34 PM | 11/06/19<br>03:22:42 PM | 11/06/19<br>03:22:49 PM | 11/06/19<br>03:23:44 PM |

## Audit Log

| Date/Time | Person | IP Address | Action |
|---|---|---|---|
| 11/06/19 12:48:42 PM | SYSTEM USER | 10.1.100.57 | eSign event created |
| 11/06/19 12:48:43 PM | DAVID D. LEE | 10.1.100.57 | Invitation sent to dlcpas@gmail.com |
| 11/06/19 03:22:34 PM | DAVID D. LEE | 104.0.130.57 | eSign event started |
| 11/06/19 03:22:42 PM | DAVID D. LEE | 104.0.130.57 | Consented to DocMagic eSign |
| 11/06/19 03:22:48 PM | DAVID D. LEE | 104.0.130.57 | Approved electronic representation of signature - "David D Lee" |
| 11/06/19 03:22:49 PM | DAVID D. LEE | 104.0.130.57 | Disclosure version 5 prepared on November 6, 2019, 12:48 pm PST displayed |
| 11/06/19 03:23:44 PM | DAVID D. LEE | 104.0.130.57 | eSign event signing complete |
| 11/06/19 03:23:45 PM | SYSTEM USER | 104.0.130.57 | eSign event completed |
| 11/06/19 03:23:46 PM | SYSTEM USER | 104.0.130.57 | eSign Documents delivered |

## List of Documents

| Document Name | Page(s) | Mark(s) | Signer(s) |
|---|---|---|---|
| CLOSING DISCLOSURE | 5 | 1 | 1 |

Copyright (c) 2016 DocMagic, Inc. - ALL RIGHTS RESERVED

**0076**

"EXHIBIT 8"

**0077**

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| David A. Tilem (SBN 103825)<br>LAW OFFICES OF DAVID A. TILEM<br>206 North Jackson Street, Suite 201<br>Glendale, California 91206<br>Tel: 888-257-7648 * 818-507-6000<br>Fax: 818-507-6800<br>DavidTilem@TilemLaw.com | |
| ☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Debtor in Possession | |

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -  LOS ANGELES DIVISION**

</div>

| In re:<br><br>DAVID LEE,<br><br><br><br><br><br><br>                              Debtor(s). | CASE NO.:  2:19-bk-10119-RK<br>CHAPTER:  11 |
|---|---|
| | **STATEMENT REGARDING**<br>**CASH COLLATERAL OR**<br>**DEBTOR IN POSSESSION FINANCING**<br>**[FRBP 4001; LBR 4001-2]** |
| | DATE:<br>TIME:<br>COURTROOM:<br>ADDRESS: |

| Secured party(ies): |
|---|
| |

The Debtor has requested the approval of either (1) a motion for use of cash collateral, or postpetition financing, or both, or (2) through a separately-filed motion, a stipulation providing for the use of cash collateral, or postpetition financing, or both.  The proposed form of order on the motion or the stipulation contains the following provisions or findings of fact:

| Disclosures Tracking FRBP 4001(c)(1)(B)(i) through (xi) and (d)(1)(B) | Page No.: | Line No. (if applicable) |
|---|---|---|
| ☒ (i): "[A] grant of priority or a lien on property of the estate under § 364(c) or (d)" | 8 | 3 |
| ☐ (ii): "[T]he providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim"<br><br>☐ Cross-collateralization, *i.e.*, clauses that secure prepetition debt by postpetition assets in which the secured party would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law<br><br>☐ Roll-up, *i.e.*, provisions deeming prepetition debt to be postpetition debt or using postpetition loans from a prepetition secured party to pay part or all of that secured party's prepetition debt, other than as provided in § 552(b) | | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2015*                                Page 1                            **F 4001-2.STMT.FINANCE**

| | | | |
|---|---|---|---|
| *Continued from page 1* | | | |
| ☐ Grant a replacement lien in an amount in excess of the dollar amount of the lien on cash collateral as of the petition date | | | |
| ☒ (iii): "[A] determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim" | | 7 | 19 |
| ☐ (iv): "[A] waiver or modification of Code provisions or applicable rules relating to the automatic stay" <br> ☐ Automatic relief from the automatic stay upon occurrence of certain events. | | | |
| ☐ (v): "[A] waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364" | | | |
| ☐ (vi): "[T]he establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order" | | | |
| ☐ (vii): "[A] waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien" | | | |
| ☐ (viii): "[A] release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action" | | | |
| ☐ (ix): "[T]he indemnification of any entity" | | | |
| ☐ (x): "[A] release, waiver, or limitation of any right under § 506(c)" <br> ☐ The granting of any lien on any claim or cause of action arising under § 506(c) | | | |
| ☐ (xi): "The granting of any lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a)" | | | |
| **Additional Disclosures Required by LBR 4001-2** | | Page No.: | Line No. (if applicable) |
| ☐ With respect to a professional fee carve out, disparate treatment for professionals retained by a creditors' committee from that provided for the professionals retained by the debtor | | | |
| ☒ Pay down prepetition principal owed to a creditor | | 7 | 18 |
| ☐ Findings of fact on matters extraneous to the approval process | | | |

<u>11/07/2019</u>    <u>David A. Tilem</u>

*Date*        *Printed Name*            *Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2015*                    Page 2                    F 4001-2.STIP.FINANCE 0079

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**206 North Jackson Street, Suite 201, Glendale, CA 91206**

A true and correct copy of the foregoing document entitled (*specify*)  **NOTICE OF MOTION AND MOTION FOR
ORDER AUTHORIZING DEBTOR TO OBTAIN CREDIT PURSUANT TO §364(c)(2)**  will be served or was served (a) on
the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
**11/7/19**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **_____**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class,
postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will
be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **_____**, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is
filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| **11/7/2019** | **Joan J. Fidelson** | /s/ Joan J. Fidelson |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**ECF Service List:**

- **Baruch C Cohen**    bcc@BaruchCohenEsq.com, paralegal@baruchcohenesq.com
- **Sean C Ferry**    sferry@rasflaw.com, sferry@ecf.courtdrive.com
- **Todd S Garan**    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
- **Nichole Glowin**    nglowin@wrightlegal.net, BKUDGeneralupdates@wrightlegal.net
- **Blake J Lindemann**    Blake@lawbl.com, Nataly@lawbl.com
- **Erica T Loftis Pacheco**    erica.loftispacheco@bonialpc.com
- **Valerie Smith**    claims@recoverycorp.com
- **David A Tilem**    davidtilem@tilemlaw.com, DavidTilem@ecf.inforuptcy.com;joanfidelson@tilemlaw.com;JoanFidelson@ecf.inforuptcy.com;DianaChau@tilemlaw.com
- **Edward A Treder**    cdcaecf@bdfgroup.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Hatty K Yip**    hatty.yip@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**