Baruch C. Cohen, Esq. (SBN 159455)
**LAW OFFICE OF BARUCH C. COHEN**
    A Professional Law Corporation
4929 Wilshire Boulevard, Suite 940
Los Angeles, California 90010
(323) 937-4501        Fax (888) 316-6107
e-mail: baruchcohen@baruchcohenesq.com

*Attorneys for Secured Creditor YCCS, LLC.*

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:19-bk-10119-RK |
| DAVID LEE, | Chapter 11 |
| Debtor | **YCCS' OPPOSITION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING DEBTOR TO OBTAIN CREDIT PURSUANT TO 11 U.S.C. § 364(C)(2) [DOC-239]; DECLARATIONS OF CURTIS DEWEESE AND BARUCH C. COHEN** |
| | DATE:      1-28-2020<br>TIME:      11:00 a.m.<br>CTRM:      1675 |

YCCS, LLC, a Hawaiian Limited Liability Co. ("YCCS") hereby responds to the Motion ("Motion")[Doc-239] of David Lee, debtor and debtor in possession ("Debtor") for Order Authorizing Debtor to Obtain Credit Pursuant to 11 U.S.C. § 364(c)(2) as follows:

The Motion is fatally flawed procedurally and substantively and must be denied. From a procedural standpoint, as stated in YCCS' Response to Debtor's Status Report Regarding Relief from Stay Motion filed by YCCS [Doc-234]: all sums under YCCS's Note were due and payable on or before 12-1-2019; YCCS has not been paid any interest, fees or amounts due for many, many months (even as of the 12-1-2019 deadline); the Debtor's failure to pay the sums due under the Note is an incurable default; the Debtor cannot formulate a plan of reorganization because YCCS' Note cannot be modified pursuant to 11 U.S.C. § 1123(b)(5); any plan at this late point in

1/25-7:37pm

1    time involving the Property would violate 11 U.S.C. § 1129; and YCCS has presented evidence

2    of cause under 11 U.S.C. § 362(d)(1) that the Lift Stay Motion be granted.

3         The Debtor's inability to pay timely his debt to YCCS was raised at the prior 12-10-2019

4    continued hearing re: Motion for Relief from Stay and the Debtor's Motion to Refinance the

5    Property and pay YCCS.  At that hearing on 12-10-2019, the Court expressed concern about the

6    Debtor's (in)ability to pay YCCS and would give him only a few weeks to perform.  Specifically,

7    the Court acknowledged the above and stated as follows:

8         THE COURT: Well, as I said -- yeah. I said in the tentative, because the loan has
     matured, and this is a loan secured by the principal residence of the Debtor as of
9    the date of the petition, ***it's non-modifiable in a plan***. But Debtor can still take
     out the loan, but, you know, we're getting to a year into the case, and we're
10   getting to the point whether it may be futile if the Debtor's had a year.

11        So, at this point, the Court knows, and I think everyone knows, that ***you cannot
     confirm a plan over the objection or to modify the loan of this creditor***, but the
12   Debtor can try to realize the equity in the property through taking out the lender.

13        So, the question is, what is a reasonable time that this could happen? ***Because, if
     it's futile, then I should grant relief from stay based on the cases that I cited in
14   the tentative***. [Emphasis added].

15   [Transcript, p. 2, lines 13-25, p.3, lines 1-3].

16        THE COURT: But it seemed to me that the Court was going to allow Debtor a
     reasonable time to, ***one last chance to obtain financing***, because, as I said, we're
17   getting long, pretty far along in this case, over a year, and the Debtor's had an
     opportunity to obtain refinancing. [Emphasis added].
18
19   [Transcript, p. 11, lines 12-16].

20        Those weeks have come and gone, and there has been no payment to YCCS.  Instead of

21   accepting "one last chance to obtain financing" the Debtor filed a new credit motion and now

22   seeks a further extension of time to pay YCCS.  December 1, 2019 was the deadline for payment

23   to YCCS.  The Debtor has not timely paid YCCS, and the Debtor's Motion must be denied.

24        Assuming *arguendo* that the Motion was timely, which is not the case, the Motion would

25   have to be denied substantively because there is simply not enough money in the proposed credit

26   transaction to pay the arrearage to Selene Finance, LP ("Selene") and the total outstanding

27   balance due to YCCS, which as of February 1, 2020, is approximately $526,108.60. See

28   Declaration of Curtis DeWeese and breakdown of claim attached as Exhibit 1.  The loan

proceeds of $620,000 and the Debtor's additional contribution of $20,000 are not enough. The breakdown is as follows:

| | |
|---|---|
| Total Loan Proceeds and Debtor Contribution | $640,000 |
| Less: Points, Costs, Fees, and Property Taxes | $40,000 |
| Net Proceeds | $600,000 |
| Payment to Selene | $97,000 |
| Payment to YCCS | $526,000 |
| Balance | -($23,000) |

In his declaration at 15:2-6, the Debtor indicates that the gross loan proceeds and up to $20,000 of the Estate's funds will be used to pay the arrearage to Selene of approximately $97,000, satisfy in full the YCCS' claim of approximately $500,000 (which is $26,000 too low), and pay any outstanding property taxes, which YCCS believes would be at least $4,000. However, the Debtor must also pay points of $31,000, fees of $2,940, and any other costs associated with the escrow, not to mention additional attorneys' fees for Selene. Even if the Debtor continues to make monthly post -petition payments to Serene, the Debtor will face a shortfall of at least $23,000 and will not have enough money to pay in full YCCS.

There is no basis to defer payment of attorneys fees to YCCS.  There is no assurance that the Debtor will have sufficient funds to pay in full those fees if and when they are awarded.  The Debtor had access to the breakdown and took no action to challenge or oppose the fees.

The Debtor seeks to resolve this problem by claiming that he can reserve his rights and later challenge the amount owed to YCCS.  In the Lee Declaration, footnote 2, 12:27-28, the Debtor states, " I do not know what those fees and costs may be , but upon receiving an updated schedule, I reserve the right to object to the same at an appropriate time." This statement is an outright fabrication. This issue was raised in the prior credit motion, and on November 10, 2019, a complete breakdown of all costs and fees was forwarded to counsel for the Debtor in YCCS' *Supplemental Points and Authorities in Support of Motion of Yccs, LLC for Relief from the Automatic Stay [Docket 108]; Declaration of Curtis Deweese in Support Thereof* [Doc-221]. See Declaraton of Baruch Cohen. For the Debtor to claim that he had no idea of the specific costs and

1    fees YCCS incurred is absolutely false.  The Motion must be denied.

2    Additional concerns with the Debtor's Motion:

3    (1) Most proposed loan transactions have an estimated closing statement.  Here, the

4    Debtor refers to specific numbers for costs and fees but provides no detail regarding what those

5    numbers are.

6    (2) There is no express demand from Selene.  Normally, a secured creditor would provide

7    a breakdown, and that was stated in the Motion.  Are there additional costs and fees which

8    Selene will demand?  That will increase the sum owed and deepen further the shortfall.

9    (3) If the Debtor lied regarding the attorneys fees, what else is not true?  What was the

10    real reason the Debtor could not get a new loan?  He states it is because the property is in

11    bankruptcy.  His declaration on this point is pure hearsay and YCCS objects to it on that ground.

12    (4) In the Debtor's Motion, the Debtor uses a $500,000 amount due to YCCS.  Yet, in the

13    Debtor's declaration, he states that YCCS is owed $500,000-$525,000.

14    (5) The Debtor refers to the loan as filled with bells and whistles and outrageous fees.

15    YCCS addressed this in its *Limited Opposition of YCCS, LLC to Debtor's Motion [Doc-195] for*

16    *Order Authorizing Debtor to Obtain Credit Pursuant to 11 U.S.C. § 364(c)(2)* [Doc-211] where

17    YCCS argued:

18

19    The Debtor should not be allowed to withhold funds and challenge the secured
claim of YCCS because the Debtor may not have sufficient funds to "completely
satisfy" all claims with respect to the Residence, as the body of the Finance

20    Motion emphasizes is the required goal.

21    In order to avoid any issue regarding the amount due under the Note, YCCS
provided a detailed breakdown of all charges due under the Note [something that

22    the Debtor had never previously requested from YCCS].  Curtis DeWeese, the
principal of YCCS, prepared the breakdown of the claim, which breakdown is

23    attached as Exhibit 1 to the Declaration of Mr. DeWeese.  At 8:06AM on Sunday
morning 11-10-2019, Baruch Cohen, counsel for YCCS, forwarded a copy of the

24    detailed breakdown to Mr. Tilem, counsel for the Debtor.  Mr. Tilem has not
questioned or contacted Mr. Cohen regarding any of the entries on the breakdown,

25    and rightfully so.  Although the Debtor claims that the Note is full of "bells and
whistles," YCCS simply and clearly charged the Debtor for delinquent interest,

26    advances to third parties as permitted under the Note, and reasonable costs and
attorneys fees.

27

28    The bottom line is that YCCS was supposed to be paid in full on or before December 1,

1   2019, and the Debtor, who had over seven-months notice from YCCS that the date would not be

2   extended, waited until the last minute to seek to refinance the Property.  When the initial

3   refinancing fell through, and after the Court expressly stated that the Debtor's prior financing

4   motion was "one last chance to obtain financing", the Debtor filed this Motion which on its face

5   does not provide sufficient funds to pay YCCS in full.[1]  The Debtor's Motion must be denied.

6

7   DATED:        January 25, 2020              LAW OFFICE OF BARUCH C. COHEN
                                                A Professional Law Corporation
8
                                                By    /S/ Baruch C. Cohen
9                                               Baruch C. Cohen, Esq.
                                                Attorneys for Secured Creditor YCCS, LLC
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   _____

27   [1]The Debtor's last-ditch effort to try and sell the Property would cause even greater delay
     and uncertainty.  The Debtor did not even bother to seek employment of a broker until
28   approximately six weeks after all sums under the Note were due.  The Debtor cannot and should
     not be rewarded for his failure to take timely action to sell or refinance the Property.

**DECLARATION OF CURTIS DEWEESE**

I, Curtis DeWeese, declare as follows::

1.    I am the managing member of YCCS, LLC, a Hawaiian limited liability company.  If called upon as a witness, I could and would testify to the following, all of which is within my personal knowledge.

2.    I am the principal owner of YCCS LLC, a Hawaiian Limited Liability Company (hereinafter referred to as "YCCS"), which holds a 2nd Deed of Trust dated 11-14-2017, that was executed by the Debtor in favor of YCCS as beneficiary, that was recorded on 11-21-2017, as Instrument No. 20171343125, on the Debtor's property located at 840 South Dunsmuir, Los Angeles, CA 90036.

3.    I have been involved in real estate transactions for approximately 32 years.  I have dealt with all  aspects of real property transactions, including refinancing property and obtaining loans for junior liens on properties. My primary experience is in real estate development, construction, financing and workouts throughout the western United States on behalf of institutional parties and on my own account.

4.    This declaration is support of **YCCS' OPPOSITION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING DEBTOR TO OBTAIN CREDIT PURSUANT TO 11 U.S.C. §364(C)(2) [DOC-239]**.

5.    The Debtor's Motion must be denied because there is simply not enough money in the proposed credit transaction to pay the arrearage to Selene Finance, LP ("Selene") and the total outstanding balance due to YCCS, which as of February 1, 2020, is approximately $526,108.60. The loan proceeds of $620,000 and the Debtor's additional contribution of $20,000 are not enough.

| | |
|---|---|
| Total Loan Proceeds and Debtor Contribution | $640,000 |
| Less: Points, Costs, Fees, and Property Taxes | $40,000 |
| Net Proceeds | $600,000 |
| Payment to Selene | $97,000 |
| Payment to YCCS | $526,000 |

1/24-1:03pm

6

Balance                                    -($23,000)

6.    In his declaration at 15:2-6, the Debtor indicates that the gross loan proceeds and up to $20,000 of the Estate's funds will be used to pay the arrearage to Selene of approximately $97,000, satisfy in full the YCCS' claim of approximately $500,000 (which is $26,000 too low), and pay any outstanding property taxes, which YCCS believes would be at least $4,000. However, the Debtor must also pay points of $31,000, fees of $2,940, and any other costs associated with the escrow, not to mention additional attorneys' fees for Selene. Even if the Debtor continues to make monthly post -petition payments to Serene, the Debtor will face a shortfall of at least $23,000 and will not have enough money to pay in full YCCS.

7.    There is no basis to defer payment of attorneys fees to YCCS.  There is no assurance that the Debtor will have sufficient funds to pay in full those fees if and when they are awarded.  The Debtor had access to the breakdown and took no action to challenge or oppose the fees.

8.    As of 2-1-2020, the outstanding obligation due and owing under the YCCS Note is $526,108.60. That figure does not include certain additional costs and expenses, including attorney's fees and future interest that accrues under the Note.[1]

9.    The obligations set forth in the Note are secured solely by the Property, which is the Debtor's residence.  YCCS holds no other security for repayment of the obligations in the Note.

10.    As I have indicated for over seven months, YCCS will not consent to modify the terms of the Note and must be paid in full on or before December 1, 2019.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on January 24, 2020.

_____
CURTIS DEWEESE

---

[1]A true and correct copy of the breakdown of YCCS' claim is attached hereto as Exhibit "1' and is incorporated herein by this reference.

**DECLARATION OF BARUCH COHEN**

I, BARUCH C. COHEN, declare and state as follows:

1.   The facts stated below are true and correct to the best of my personal knowledge and if called upon to testify to them, I could and would competently do so.

2.   I am a member in good standing and eligible to practice before the following courts: California State Supreme Court; United States Court of Appeals - Ninth Circuit; Bankruptcy Appellate Panel; United States District Courts: Central District of California; Eastern District of California; Northern District of California; and Southern District of California.

3.   I am the principal shareholder and President of The Law Office of Baruch C. Cohen, a Professional Law Corporation, located at 4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.

4.   I proudly represent  Secured Creditor YCCS, LLC.

5.   This declaration is support of **YCCS' OPPOSITION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING DEBTOR TO OBTAIN CREDIT PURSUANT TO 11 U.S.C. §364(C)(2) [DOC-239]**.

6.   I was at the prior 12-10-2019 continued hearing re: Motion for Relief from Stay and the Debtor's Motion to Refinance the Property and pay YCCS, where the Court expressed concern about the Debtor's (in)ability to pay YCCS and would give him only a few weeks to perform.  Specifically, the Court acknowledged stated as follows:

> THE COURT: Well, as I said -- yeah. I said in the tentative, because the loan has matured, and this is a loan secured by the principal residence of the Debtor as of the date of the petition, *it's non-modifiable in a plan*. But Debtor can still take out the loan, but, you know, we're getting to a year into the case, and we're getting to the point whether it may be futile if the Debtor's had a year.

> So, at this point, the Court knows, and I think everyone knows, that *you cannot confirm a plan over the objection or to modify the loan of this creditor*, but the Debtor can try to realize the equity in the property through taking out the lender.

> So, the question is, what is a reasonable time that this could happen? *Because, if it's futile, then I should grant relief from stay based on the cases that I cited in the tentative*. [Emphasis added].

[Transcript, p. 2, lines 13-25, p.3, lines 1-3].

THE COURT: But it seemed to me that the Court was going to allow Debtor a reasonable time to, ***one last chance to obtain financing***, because, as I said, we're getting long, pretty far along in this case, over a year, and the Debtor's had an opportunity to obtain refinancing. [Emphasis added].

[Transcript, p. 11, lines 12-16].[3]

7.    Those weeks have come and gone, and there has been no payment to YCCS.  Instead, the Debtor filed a new credit motion and now seeks a further extension of time to pay YCCS. December 1, 2019 was the deadline for payment to YCCS.  The Debtor has not timely paid YCCS, and the Debtor's Motion must be denied.

8.    The Debtor's Motion is fatally flawed procedurally and substantively and must be denied. From a procedural standpoint, as stated in YCCS' Response to Debtor's Status Report Regarding Relief from Stay Motion filed by YCCS [Doc-234]: all sums under YCCS's Note were due and payable on or before 12-1-2019; YCCS has not been paid any interest, fees or amounts due for many. many months (even as of the 12-1-2019 deadline); the Debtor's failure to pay the sums due under the Note is an incurable default; the Debtor cannot formulate a plan of reorganization because YCCS' Note cannot be modified pursuant to 11 U.S.C. § 1123(b)(5); any plan at this late point in time involving the Property would violate 11 U.S.C. § 1129; & YCCS has presented evidence of cause under 11 U.S.C. § 363(d)(1) that the Lift Stay Motion be granted effective December 2, 2019.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed January 25, 2020, at Los Angeles, California.

By ___/S/ Baruch C. Cohen_____
Baruch C. Cohen

---

[3]A true and correct copy of the transcript of the 12-10-2019 continued hearing re: Motion for Relief from Stay and the Debtor's Motion to Refinance the Property is attached hereto as Exhibit "2" and is incorporated herein by this reference

**EXHIBIT "1"**

**YCCS - Lee - Business Purpose Loan**

Schedule of Advances and Accrued Interest

| Period Start | Period End | Description | Cash Advances/Late NSF Fees (Not Subject to Fee & Int.) | BK Cost Advances (Subject to Fee & Int.) | Loan Repayments | Interest Pmt. Recd | Note Rate (11.5%) | Number of Days Outstanding | Interest Accrual 360 Day Year | Monthly Totals | Cumulative Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/20/17 | | Funds Advanced Per Note | 365,000.00 | | | | | | | | 365,000.00 |
| 11/20/17 | 11/30/17 | Prorated Interest at Closing | | | | | 11.50% | 11 | 1,282.57 | 1,282.57 | 365,000.00 |
| 11/20/17 | | Pmt. at Closing Interest | | | | (1,282.57) | | | | | 365,000.00 |
| 12/01/17 | 12/31/17 | Int Due 1/1/18 | | | | | 11.50% | 30 | 3,497.92 | 3,497.92 | 365,000.00 |
| 01/11/18 | | Pmt. on Acct. | | | | (3,497.92) | | | | | 365,000.00 |
| 01/01/18 | 01/31/18 | Int Due 2/1/18 | | | | | 11.50% | 30 | 3,497.92 | 3,497.92 | 365,000.00 |
| 01/11/18 | | Pmt. on Acct. | | | | | | | | | 365,000.00 |
| 02/01/18 | 02/28/18 | Int Due 3/1/18 | | | | | 11.50% | 30 | 3,497.92 | 3,497.92 | 365,000.00 |
| 03/01/18 | | Pmt. on Acct. | | | | (3,497.92) | | | | | 365,000.00 |
| 03/01/18 | | Late Charge | 349.80 | | | | | | | | 365,000.00 |
| 03/01/18 | | Pmt. on Acct. | | | | (349.80) | | | | | 365,000.00 |
| 03/01/18 | 03/31/18 | Int. Due 4/1/18 | | | | | 16.50% | 30 | 5,018.75 | 5,018.75 | 365,000.00 |
| 03/30/18 | | Late Charge | 349.80 | | | | | | | | 365,000.00 |
| 03/30/18 | | Pmt. on Acct. | | | | (3,497.92) | | | | | 365,000.00 |
| 04/09/18 | | NSF Pmt. | | | | 3,497.92 | | | | | 365,000.00 |
| 04/09/18 | | NSF Payment Charge | 25.00 | | | | | | | | 365,000.00 |
| 04/09/18 | | Pmt. on Acct. | | | | (349.80) | | | | | 365,000.00 |
| 04/01/18 | 04/30/18 | Int. Due 5/1/18 | | | | | 16.50% | 30 | 5,018.75 | 5,018.75 | 365,000.00 |
| 04/20/18 | | Late Charge | 349.80 | | | | | | | | 365,000.00 |
| 04/20/18 | | Pmt. on Acct. | | | | (3,497.92) | | | | | 365,000.00 |
| 05/02/18 | | Late charge | 349.80 | | | | | | | | 365,000.00 |
| 05/02/18 | | Pmt. on Acct. | | | | (3,497.92) | | | | | 365,000.00 |
| 05/02/18 | | Pmt. on Acct. | | | | (349.80) | | | | | 365,000.00 |
| 05/01/18 | 05/31/18 | Int. Due 6/1/18 | | | | | 16.50% | 30 | 5,018.75 | 5,018.75 | 365,000.00 |
| 05/31/18 | | Pmt. on Acct. | | | | (5,018.75) | | | | | 365,000.00 |
| 06/02/18 | | Late Charge | 501.88 | | | | | | | | 365,000.00 |
| 06/08/18 | | Late Charge | | | | (501.88) | | | | | 365,000.00 |
| 06/08/18 | | NSF Pmt. | | | | 5,018.75 | | | | | 365,000.00 |
| 06/08/18 | | NSF Payment Charge | 25.00 | | | | | | | | 365,000.00 |
| 06/01/18 | 06/30/18 | Int. Due 7/1/18 | | | | | 16.50% | 30 | 5,018.75 | 5,018.75 | 365,000.00 |
| 07/05/18 | | Late Charge | 501.88 | | | | | | | | 365,000.00 |
| 07/05/18 | | Int Pmt. on Acct. | | | | (5,018.75) | | | | | 365,000.00 |
| 07/05/18 | | Late Fee Pmt. on Acct. | | | | - | | | | | 365,000.00 |
| 07/05/18 | | Pmt. on Acct. | | | | (8,972.93) | | | | | 365,000.00 |
| 07/06/18 | | Late Charge | 501.88 | | | | | | | | 365,000.00 |
| 07/13/18 | | NSF Pmt. | | | | 5,018.75 | | | | | 365,000.00 |
| 07/13/18 | | NSF Payment Charge | 25.00 | | | | | | | | 365,000.00 |
| 07/01/18 | 07/31/18 | Int. Due 8/1/18 | | | | | 16.50% | 30 | 5,018.75 | 5,018.75 | 365,000.00 |
| 08/10/18 | | Late Charge | 501.88 | | | | | | | | 365,000.00 |
| 08/01/18 | 08/30/18 | Int. Due 9/1/18 | | | | | 16.50% | 30 | 5,018.75 | 5,018.75 | 365,000.00 |
| 09/10/18 | | Late Charge | 501.88 | | | | | | | | 365,000.00 |
| 09/01/18 | 09/30/18 | Int Due 10/1/18 | | | | | 16.50% | 30 | 5,018.75 | 5,018.75 | 365,000.00 |
| 10/10/18 | | Late Charge | 501.88 | | | | | | | | 365,000.00 |
| 10/01/18 | 10/31/18 | Int. Due 11/1/18 | | | | | 16.50% | 30 | 5,018.75 | 5,018.75 | 365,000.00 |
| 11/10/18 | | Late Charge | 501.88 | | | | | | | | 365,000.00 |
| 11/01/18 | 11/30/18 | Int Due 12/1/18 | | | | | 16.50% | 30 | 5,018.75 | 5,018.75 | 365,000.00 |
| 12/10/18 | | Late Fee | 501.88 | | | | | | | | 365,000.00 |
| 12/01/18 | 12/31/18 | Int Due 1/1/19 | | | | | 16.50% | 30 | 5,018.75 | 5,018.75 | 365,000.00 |
| 01/10/19 | | Late Fee | 501.88 | | | | | | | | 365,000.00 |
| 01/01/19 | 01/15/19 | Int. Due 2/1/19 | | | | | 16.50% | 15 | 2,509.38 | | 365,000.00 |
| 01/15/19 | | Foreclosure Trustee Svcs. - SBS | | 5,446.00 | | | | | | | 370,446.00 |
| 01/15/19 | 01/31/19 | Int. Due 2/1/19 | | | | | 16.50% | 15 | 2,546.82 | 5,056.20 | 370,446.00 |
| 02/10/19 | | Late Fee | 501.88 | | | | | | | | 370,446.00 |
| 02/01/19 | 02/05/19 | Int. Due 3/1/19 | | | | | 16.50% | 5 | 848.94 | | 370,446.00 |
| 02/06/19 | | BK Legal Fees - Cohen | | 2,500.00 | | | | | | | 372,946.00 |
| 02/06/19 | 02/28/19 | Int. Due 3/1/19 | | | | | 16.50% | 25 | 4,273.34 | 5,122.28 | 372,946.00 |
| 03/10/19 | | Late Fee | 501.88 | | | | | | | | 372,946.00 |
| 03/01/19 | 03/31/19 | Int. Due 4/1/19 | | | | | 16.50% | 30 | 5,128.01 | 5,128.01 | 372,946.00 |
| 04/10/19 | | Late Fee | 501.88 | | | | | | | | 372,946.00 |
| 04/01/19 | 04/23/19 | Int. Due 5/1/19 | | | | | 16.50% | 23 | 3,931.47 | | 373,256.00 |
| 04/24/19 | | Regulator Fees - HCDILA | 310.00 | | | | | | | | 373,256.00 |
| 04/24/19 | 04/30/19 | Int. Due 5/1/19 | | | | | 16.50% | 7 | 1,197.53 | 5,129.00 | 373,256.00 |
| 05/10/19 | | Late Fee | 501.88 | | | | | | | | 373,256.00 |
| 05/01/19 | 05/30/19 | Int. Due 6/1/19 | | | | | 16.50% | 29 | 4,961.19 | | 378,494.00 |
| 05/31/19 | | BK Legal Fees - Cohen | | 5,238.00 | | | | | | | 383,732.00 |
| 05/31/19 | 05/31/19 | Int. Due 6/1/19 | | | | | 16.50% | 1 | 175.88 | 5,137.07 | 383,732.00 |
| 06/10/19 | | Late Fee | 501.88 | | | | | | | | 378,494.00 |
| 06/01/19 | 06/30/19 | Int. Due 7/1/19 | | | | | 16.50% | 30 | 5,204.29 | 5,204.29 | 378,494.00 |
| 07/10/19 | | Late Fee | 501.88 | | | | | | | | 378,494.00 |
| 07/01/19 | 07/01/19 | Int. Due 8/1/19 | | | | | 16.50% | 1 | 173.48 | | 378,494.00 |
| 07/02/19 | | BK Legal Fees - Cohen | | 1,375.00 | | | | | | | 379,869.00 |
| 07/02/19 | 07/31/19 | Int. Due 8/1/19 | | | | | 16.50% | 29 | 5,049.09 | 5,222.57 | 379,869.00 |
| 08/10/19 | | Late Fee | 501.88 | | | | | | | | 379,869.00 |
| 08/01/19 | | BK Legal Fees - Cohen | | 8,081.00 | | | | | | | 387,950.00 |
| 08/01/19 | 08/30/19 | Int. Due 9/1/19 | | | | | 16.50% | 30 | 5,334.31 | 5,334.31 | 387,950.00 |
| 09/10/19 | | Late Fee | 501.88 | | | | | | | | 387,950.00 |
| 09/01/19 | 09/02/19 | Int. Due 10/1/19 | | | | | 16.50% | 2 | 355.62 | | 387,950.00 |
| 09/03/19 | | BK Legal Fees - Cohen | | 15,307.37 | | | | | | | 403,257.37 |
| 09/03/19 | 09/30/19 | Int. Due 10/1/19 | | | | | 16.50% | 28 | 5,175.14 | 5,530.76 | 403,257.37 |
| 10/10/19 | | Late Fee | 501.88 | | | | | | | | 403,257.37 |
| 10/01/19 | 10/31/19 | Interest Due 11/1/19 | | | | | 16.50% | 30 | 5,544.79 | 5,544.79 | 403,257.37 |
| 11/10/19 | | Late Fee | 501.88 | | | | | | | | 403,257.37 |
| 11/01/19 | 11/13/19 | Interest | | | | | 16.50% | 13 | 2,402.74 | | 403,257.37 |
| 11/14/19 | | Court Call Appearance | 35.00 | | | | | | | | 403,292.37 |
| 11/14/19 | 11/30/19 | Interest | | | | | 16.50% | 17 | 3,142.32 | 5,545.06 | 403,292.37 |
| 12/10/19 | | Late Fee | 501.88 | | | | | | | | 403,292.37 |
| 12/01/19 | 12/09/19 | Interest | | | | | 16.50% | 9 | 1,663.58 | | 403,292.37 |
| 12/10/19 | | Court Call Appearance | 35.00 | | | | | | | | 403,327.37 |
| 12/01/19 | 12/31/19 | Interest | | | | | 16.50% | 21 | 3,882.03 | 5,545.61 | 403,327.37 |
| 01/10/20 | | Late Fee | 501.88 | | | | | | | | 403,327.37 |
| 01/01/20 | 01/12/20 | Partial Month Interest | | | | | 16.50% | 12 | 2,218.30 | | 403,327.37 |
| 01/13/20 | | 2020 Regulator Fees - HCDILA | | 155.00 | | | | | | | 403,482.37 |
| 01/13/20 | 01/31/20 | Partial Month Interest | | | | | 16.50% | 18 | 3,328.73 | 5,547.03 | 403,482.37 |
| | | | | | | | | | | | 403,482.37 |
| Totals | | | 12,013.68 | 38,482.37 | | (24,247.18) | Total Int. Pmts. | | Total Int. | 131,010.81 | 403,482.37 |
| Amount Still Due | | | | | | 10,112.60 | Late Fees Due & NSF Fees Due | | | - | 403,482.37 |
| | | | | | | | | | Interest Due 2/1/20 | 106,763.63 | 403,482.37 |

| | |
|---|---|
| BK Costs & Fees Pending | |
| BK Attorney/Costs - Cohen - Estimate to closing | 5,000.00 |
| Payoff Demand Fees | 250.00 |
| Cost Advance Fees (Per Note $50 x 10) | 500.00 |
| Total BK Costs | 5,750.00 |

| | |
|---|---|
| Interest Due | 106,763.63 |
| Late & NSF fees | 10,112.60 |
| | 526,108.60 |
| Total Payoff as of 2/1/2020 | |

**EXHIBIT "2"**

1              UNITED STATES BANKRUPTCY COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                     --oOo--

4  In Re:                    ) Case No. 2:19-bk-10119-RK
                             )
5  DAVID LEE,                ) Chapter 11
                             )
6        Debtor.             ) Los Angeles, California
   _____) Tuesday, December 10, 2019
7                              1:00 p.m.

8                            CONT'D HEARING RE: MOTION FOR
                             RELIEF FROM STAY
9

10                TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE ROBERT KWAN
11            UNITED STATES BANKRUPTCY JUDGE

12 APPEARANCES:

13 For the Debtor:          DAVID A. TILEM, ESQ.
                            Law Office of David A. Tilem
14                          206 North Jackson Street
                            Suite 201
15                          Glendale, California 91206
                            (818) 507-6000
16

17 For YCCS, LLC:           BARUCH C. COHEN, ESQ.
                            Law Office of Baruch C. Cohen
18                          4929 Wilshire Boulevard
                            Suite 940
19                          Los Angeles, California 90010
                            (323) 937-4501
20

21 Court Recorder:          Shafari Tatum
                            United States Bankruptcy Court
22                          Edward R. Roybal Federal
                              Building
23                          255 East Temple Street
                            Los Angeles, California 90012
24

25 Proceedings recorded by electronic sound recording;
   transcript produced by transcription service.

ii

1  Transcriber:                    Briggs Reporting Company, Inc.
                                   2160 Fletcher Parkway
2                                  Suite 209
                                   El Cajon, California 92020
3                                  (310) 410-4151

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

1   LOS ANGELES, CALIFORNIA TUESDAY, DECEMBER 10, 2019 1:00 PM

2                              --oOo--

3        (Call to order of the Court.)

4            THE COURT:  The Court will now call its 1:00

5   o'clock calendar.  Item number six, David Lee.  This is the

6   motion for relief from stay by YCCS, LLC.

7            Appearances.

8            MR. COHEN:  Good afternoon, your Honor.  Baruch

9   Cohen appearing on behalf of YCCS.

10           THE COURT:  Do we have counsel --

11           MR. TILEM:  Good afternoon, your Honor.  David

12  Tilem, Law Offices of David A. Tilem -- good afternoon, your

13  Honor.  Law Offices of David A. Tilem appearing on behalf of

14  the Debtor.

15           THE COURT:  We have a continued hearing on this

16  motion, and there are declarations that were recently filed

17  last week.  First by the creditor and counsel for the

18  creditor and the loan broker.

19           I was going to ask, Mr. Tilem, do you have more

20  information about when the Debtor would be able to obtain

21  approval of a loan?

22           MR. TILEM:  Your Honor, we are pursuing all three

23  lenders simultaneously.  The timing is up to them.  I was

24  going to bring the loan broker into court today, but the

25  tentative told me I didn't need to, so I didn't.  But it's

2

1 completely up to the lenders at this point.

2          THE COURT:  Do you have a timetable of when -- I

3 know it's up to the lenders, but do you have a time, an

4 estimate as to -- from your broker, when a decision on these

5 three applications could be made?

6          MR. TILEM:  Yes, your Honor.  According to the

7 declaration that we filed, the loan broker believes it's a

8 matter of weeks.

9          THE COURT:  "Matter of weeks."  All right.

10          Well, as I said in the tentative --

11          MR. TILEM:  I would extend that because of the

12 holiday season, but other than that.

13          THE COURT:  Well, as I said -- yeah.  I said in

14 the tentative, because the loan has matured, and this is a

15 loan secured by the principal residence of the Debtor as of

16 the date of the petition, it's non-modifiable in a plan.

17 But Debtor can still take out the loan, but, you know, we're

18 getting to a year into the case, and we're getting to the

19 point whether it may be futile if the Debtor's had a year.

20          So, at this point, the Court knows, and I think

21 everyone knows, that you cannot confirm a plan over the

22 objection or to modify the loan of this creditor, but the

23 Debtor can try to realize the equity in the property through

24 taking out the lender.

25          So, the question is, what is a reasonable time

3

1 that this could happen?  Because, if it's futile, then I

2 should grant relief from stay based on the cases that I

3 cited in the tentative.  But because there's valuable equity

4 in the property that could be used to pay creditors, it

5 seems that Debtor should have reasonable time to get

6 refinancing.

7         And I realize from the last loan, the

8 circumstances that explain the failure of the last

9 refinancing effort, you know, given such a short time line

10 you know, it may not have been reasonable to expect the

11 closing to have taken place.

12         Do you have any comments, Mr. Tilem?  That's my

13 take.

14         MR. TILEM:  Yes, your Honor.  The loan broker,

15 based on his experience and expertise, included in the

16 declaration his opinion that this loan is achievable.  And

17 he said a matter of weeks, but I'm not sure if he took into

18 consideration the end of the year holidays.

19         THE COURT:  All right.  I know I haven't given Mr.

20 Cohen an opportunity to be heard, which I should give him an

21 opportunity to be heard.  Because his position is the Court

22 should grant stay relief at this time because the loan has

23 matured, and the settlement fell through because the loan

24 didn't go through.  So his client is still waiting, and

25 we're almost a year into the case.

4

1          So, it seems to me that he has, you know, some

2     merit to his client's position.  So -- but I'll let him

3     speak for himself.

4          MR. COHEN:  Thank you, your Honor.  You did

5     summarize my client's position.  To add to that, the Debtor

6     has not paid my client for over 18 months, and has been

7     promising refinancing for all this time.  And the refinance

8     is nothing more than talk.

9          Since the beginning of this Chapter 11, almost 12

10    months ago, the Debtor claims that he had plans on

11    refinancing.  No success at all.  And over the past month --

12    four months, this specific loan broker failed to find any

13    new lender, and this same loan broker writes a declaration

14    saying that it will be a matter of weeks, no timetable was

15    offered, and he provides no evidence.

16         What were we looking for?  We were looking for a

17    pre-approval letter.  He didn't provide one.  Or even a pre-

18    qualification letter from any lender.  He hasn't provided

19    any.  These are the most basic forms of potential pre-

20    qualifications that could have and should have been

21    provided.  And that's since this talk of refinance is

22    nothing more than talk.

23         We believe that the motion to lift the automatic

24    stay should be granted.  And if the Court, if the Court

25    seems to be leaning towards this option of the, giving the

5

1 Debtor another opportunity, I'll address that after the

2 Court indicates whether, you know, whether it will grant our

3 motion to lift the stay or not.  Those are my comments vis-

4 a-vis granting the motion.

5        THE COURT:  Well, I wanted to make sure that, you

6 know, I fully heard what you had -- wanted to say, Mr.

7 Cohen.

8        MR. COHEN:  Also, the Debtor can attempt to cure

9 before the foreclosure of the sale in state court.  If the

10 Debtor wants to be able to save its equity, he can do so.

11 We believe the motion should be lifted.  The Debtor can

12 still cure its default prior to the auction sale by paying

13 off the delinquencies per state law.  But vis-a-vis,

14 bankruptcy court, our job is done.  It's incurable.

15        They didn't make the deadline payment.  And as per

16 the Court's tentative, we're entitled to a lifting of the

17 stay now.  And absent anything presented by this Debtor,

18 there's nothing to rely on to continue this charade.

19        THE COURT:  Mr. Tilem, did you want to respond?

20        MR. TILEM:  Briefly, your Honor.  The motion

21 contains -- the borrowing motion contains a document from

22 the lender, which makes it clear that this is not a mere

23 charade, but rather, there was a lender and a loan in

24 process.  The document is pretty clear.  So, I think counsel

25 overstates his client's position.

6

1       With respect to the granting of potential relief,

2 and allowing the Debtor to have its state court remedies,

3 the Court is already aware that there is a dispute over the

4 amount and allowability of attorney fees in this case.

5       And there is no effective mechanism in state court

6 for addressing that, short of filing a brand new action

7 seeking an injunction and some sort of determination from

8 the state court, which would take an extended period of

9 time.

10       Whereas, the issue is more or less teed up before

11 this Court, and can be decided, I think, relatively

12 expeditiously if we continue to have that dispute.

13       So, this is a situation where there's

14 approximately, if I remember correctly, $250,000 worth of

15 equity that is at risk.  The creditor is not going to lose

16 anything.  The interest continues to accrue.  And they are

17 adequately protected by the equity cushion.

18       So while I appreciate that this loan has fallen

19 through, there's no real prejudice to the lender by taking

20 the course of action that the Court has proposed in its

21 tentative.

22       THE COURT:  Well, let -- didn't you want to

23 comment, because I was going to comment?

24       MR. COHEN:  Sure.

25       THE COURT:  But I'll let you -- I want to make

7

1    sure that you --

2            MR. COHEN:  Thank you.

3            THE COURT:  -- are able to say what you wanted to

4    say.

5            MR. COHEN:  The notion of whatever the Debtor

6    plans to do in state court, is really of no import in the

7    bankruptcy court.  If the Debtor to file that motion and

8    that injunction, he would have to post a bond for the full

9    amount of my client's claim, which would protect my client.

10           So, if the Debtor wants to do that, it's a form of

11   added security, that's great, but it's not the purview

12   before this Court.  And there's no motion pending regarding

13   an objection to my client's claim, it's just talk.

14           So, again, we don't have a pre-approval letter.

15   We have no pre-qualification letter.  We just have a pie in

16   the sky promise that within a few weeks -- by the way, a

17   year could be within a few weeks, too.  You know, there's no

18   end.

19           And the Debtor did not answer your Honor's

20   question about a timetable.  Without that timetable, it's an

21   open-ended check with no end.  We feel that the stay should

22   be lifted now.

23           If the Court is leaning towards granting this form

24   of extension, we ask that it be the shortest possible form

25   of extension.  We ask that the order be granted now, with a

8

1  stay until that continued date.

2          THE COURT:  Mr. Tilem, what reasonable time do you

3  think it would take to get loan approval?  I had indicated

4  60 to 90 days should --

5          MR. TILEM:  Your Honor, I would ask to the end of

6  January.

7          THE COURT:  "End of January"?  End of January,

8  that's 60 days.

9          MR. TILEM:  Yes, your Honor.  There is a long

10  delay in the communication, so I apologize for that.  It's

11  difficult to know when you're done and when I'm starting.

12          MR. COHEN:  Your Honor, YCCS's position is that

13  we're entitled to the order now.  If this Debtor, who, by

14  the way, just as an aside, and this is dicta and it's not in

15  front of the Court.  But I looked at the Debtor's loan

16  application, and he didn't disclose that he had tax debt,

17  and now we see an I.R.S. tax lien on the property.  So, you

18  know, when the Debtor asks for equity, they have to do

19  equity, and we think that it's completely bad faith.

20          But, nevertheless, if the Court grants the order

21  now and suspends enforcement, or the effective date of the

22  order until January, until the end of January, we would like

23  it on the explicit condition that there is no further

24  wrangling regarding YCCS's claim, no threats of litigation.

25  If we're going to agree to it, then the Debtor has to agree

9

1 to stop threatening to challenge the claim.

2          THE COURT:  Did you want to comment on Mr. Cohen's

3 requests or conditions?

4          MR. COHEN:  May I sit?

5          THE COURT:  Either way.  Go ahead.

6          MR. TILEM:  Yes, your Honor.  Number one, I don't

7 know anything about a tax lien.  And if somebody recorded a

8 tax lien, that would be a violation of the stay.  So, that's

9 not either appropriate or not true.

10          And, secondly, the estate should not be penalized

11 or punished by having to pay inappropriate legal fees if

12 this matter is continued.  The legal fees have to be

13 reasonable under all of the state law and the instruments.

14 Whether they are or not is a matter of some dispute.

15          Nobody is disputing the principal balance.

16 Nobody's disputing the interest.  Nobody's disputing the

17 late fees.  Nobody's disputing anything other than what we

18 believe to be substantially excessive legal fees.  Other

19 than that, we don't have a problem.

20          I mean, the Debtor certainly understands there

21 must be an end to this at some point, but $250,000 worth of

22 equity is not trivial, and the estate should not lose that

23 based on its inability to act as quickly as the creditor

24 might like.

25          THE COURT:  Let me ask you, Mr. Tilem.  Let's say

10

1   your client obtains loan approval and an escrow is opened.

2   So, how is the payoff demand of the, this lender to be

3   treated through the escrow, if there's a dispute?

4          MR. TILEM:  Your Honor, we just come back to the

5   Court and file a new borrowing motion.  The last one was

6   specific to the particular transaction that fell through.

7          And we would propose -- I will contact Mr. Cohen

8   in advance to determine the amount of his client's claim.

9   We will look at the reasonableness of attorney fees, and

10  propose that amount.

11         If it -- if we believe that the amount is more

12  than what we think is reasonable, I'm happy to perform the

13  perfunctory step of filing a claim objection, but that just

14  seems rather unnecessary, but I'll do it, if counsel finds

15  that to be a predicate for challenging the fee amount.

16         And then we can just escrow disputed amounts, and

17  your Honor can decide the amount of the fees at a later

18  time.  With the, all of the principal and interest and other

19  charges being paid directly from escrow.

20         THE COURT:  Well, I think that makes sense not to

21  bring an objection at this time.  Because right now, the

22  interest is -- and fees are accruing under the contract.

23  And until there's a payoff or an escrow opened, it's going

24  to be recomputed.

25         And, hopefully, the parties will be able to reach

11

1  some sort of agreement, although I can understand that the

2  lender may feel frustrated in that he agreed to a fixed

3  amount, hoping that he would get his money back and this

4  would be done with, but that didn't happen because the loan

5  fell through.

6        But what I was going to suggest is, you know, I

7  can't get, I can't necessarily force anyone to agree to a

8  continuance.  So the reason why I put, you know, deny, based

9  on the efforts to refinance, was so that if Mr. Cohen's

10 client wanted to take an appeal based on this record, you

11 know, he could do so and test the Court's ruling.

12       But it seemed to me that the Court was going to

13 allow Debtor a reasonable time to, one last chance to obtain

14 financing, because, as I said, we're getting long, pretty

15 far along in this case, over a year, and the Debtor's had an

16 opportunity to obtain refinancing.

17       And what Mr. Rouse (phonetic) said was promising,

18 but as Mr. Cohen pointed out, you know, that the default has

19 been in place since 18 months ago.  So, the Court should

20 give a reasonable time for the Debtor to realize the equity

21 for the creditors, but I think there's a limit in this case

22 where, you know, it may not be feasible or -- it may be

23 futile to give additional time.

24       And so, I was going to deny without prejudice the

25 motion, and it could be re-brought.  But, you know, if the

12

1 creditor wants to have a continued hearing on the motion

2 without having to bring a motion, you know, that would be

3 fine, too.

4          MR. COHEN:  Would your --

5          THE COURT:  Because I don't want to foreclosure.

6 If you don't think the Court's ruling is right, then you

7 should be able to test it.

8          MR. COHEN:  It's not that we don't think the

9 Court's ruling is right.  We feel that the better approach

10 is to grant the motion, suspend the effective date until the

11 end of January, so that this way my client is entitled to

12 the relief that it seeks.

13          There's a defaulting debtor who cannot cure.  And

14 that if this Debtor can pull it together, then great.  He'll

15 pay off my client before the continued date.  But my client

16 is entitled to that lift stay order now.  We'll just

17 stipulate to continue the effective date of the order.

18          THE COURT:  Well, the reason why I was not

19 inclined to follow that suggestion was that if there's some

20 hang-up about, you know, the loan closing because of -- you

21 know, by a few days or whatever, I'd rather not grant relief

22 from stay and have to retract that.  But I would consider it

23 if little progress is made in getting a refinancing by the

24 end of January.

25          MR. COHEN:  And how do we track whether this

13

1  little process was made?

2         THE COURT:  Well, we have a hearing, and we'll

3  have to have some proof of the fact that there's a

4  transaction in progress.

5         MR. COHEN:  Well, given the two options, you know,

6  between a denial and taking it up on the writ, versus a

7  continuance --

8         THE COURT:  Well, it'd be an appeal.

9         MR. COHEN:  "Appeal."  I would take the

10  continuance, but I would ask the Court to again reconsider

11  and grant me the order, and just give me the -- stay the

12  effective date.

13         THE COURT:  Well --

14         MR. COHEN:  I'm not -- by the way, I don't --

15         THE COURT:  -- well, I think this is going to be

16  the last time, because it's already been continued since, I

17  believe, July.  And we went through a round that there --

18  the Debtor was trying to get refinancing, and actually had

19  an application pending, but then it didn't go through.

20         So, I think since you originally brought the

21  motion, and I realize that it's, it will be six months from

22  the time that the motion was originally filed back in

23  January -- back in July, that that would appear to be ample

24  time for the Debtor to get refinancing.  That's the way I

25  look at it.

14

1          Do you have any other comments, Mr. Cohen?

2          MR. COHEN:  I'll -- of the two options, I'll take

3   the continued option.

4          THE COURT:  All right.

5          Mr. Tilem, do you have any other comments?  I want

6   to make sure that you're heard as well.

7          MR. TILEM:  Thank you, your Honor.  No further

8   comments.

9          THE COURT:  All right.  So, further hearing.

10         You were saying end of January, Mr. Tilem?

11         MR. TILEM:  Yes, your Honor.

12         THE COURT:  So, January 28th at 11:00?

13         MR. TILEM:  That's fine for the Debtor, your

14  Honor.

15         THE COURT:  All right.  Mr. Cohen?

16         MR. COHEN:  January 28th is good, your Honor.

17         THE COURT:  All right.  The Court will continue

18  this hearing, January 28th, 2020 at 11:00 a.m.

19         Is notice waived?

20         MR. COHEN:  Notice is waived.  And can we appear

21  by court call, if necessary?

22         THE COURT:  Yes.  Yes, absolutely.  You don't have

23  to come in.

24         MR. COHEN:  Thank you very much, your Honor.

25         THE COURT:  All right.  Anything -- but I would

15

1 expect to hear some progress, Mr. Tilem.  And if you could

2 file something in advance to show that process is being

3 made.

4          MR. TILEM:  Your Honor, we --

5          THE COURT:  You know, whether it's --

6          MR. TILEM:  Notice is waived and --

7          THE COURT:  -- a declaration of loan broker or

8 something --

9          MR. TILEM:  -- we will file something, if there is

10 no --

11          THE COURT:  -- showing that something is

12 happening.

13          MR. COHEN:  When will that filing be due by the

14 Debtor?

15          THE COURT:  Well, I would ask before the hearing,

16 but, you know, the hearing's going to come soon enough.

17          Mr. Tilem.

18          MR. TILEM:  Your Honor, we will file something as

19 soon as we have information from the lender.  I'm not going

20 to wait until January 27.  We'll certainly loop counsel in,

21 so that he knows.  I want to get an updated figure from him

22 once we get closer.

23          And, certainly, I will make the loan broker

24 available, whether for deposition or cross-examination, if

25 counsel wishes to follow that path as well.

16

1          THE COURT:  Well, hopefully, we won't have to do

2    that.  I'm hoping that your broker is able to work some

3    magic and get a loan in place to pay off the lender, because

4    I think that's in everybody's interest, to take the lender

5    out.  You know, the lender has to be taken out, or otherwise

6    -- because there's no alternative for the estate.

7          And to the extent that he can work his magic over

8    the holidays, you know, that would be great.  So, good luck

9    with that.  All right.  Thank you.

10          MR. COHEN:  Thank you very much, your Honor.

11          THE COURT:  Thank you.  Thank you, Mr. Cohen.

12          Thank you, Mr. Tilem.

13          All right.  Anyone who wants to check in for the

14    1:30 calendar may do so.

15          MR. TILEM:  Thank you, your Honor.

16       (Proceedings concluded.)

17

18

19          I certify that the foregoing is a correct

20    transcript from the electronic sound recording of the

21    proceedings in the above-entitled matter.

22

23    /s/ Holly Steinhauer_____    1-24-20_____
      Transcriber                     Date

24

25

*Briggs Reporting Company, Inc.*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **4929 Wilshire Boulevard, Suite 940, Los Angeles, California 90010.**

A true and correct copy of the foregoing document entitled: **YCCS' OPPOSITION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING DEBTOR TO OBTAIN CREDIT PURSUANT TO 11 U.S.C. § 364(C)(2) [DOC-239]; DECLARATIONS OF CURTIS DEWEESE AND BARUCH C. COHEN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 1/26/2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

David A Tilem for Debtor, David Lee
    *davidtilem@tilemlaw.com, davidtilem@ecf.inforuptcy.com; joanfidelson@tilemlaw.com; joanfidelson@ecf.inforuptcy.com; dianachau@tilemlaw.com; malissamurguia@tilemlaw.com; malissamurguia@ecf.inforuptcy.com*
Sean C Ferry for Selene Finance LP
    *sferry@rasflaw.com, sferry@ecf.courtdrive.com*
Todd S Garan for JPMorgan Chase N.A.
    *ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com; tgaran@aldridgepite.com*
Nichole Glowin for Green Lawn Mortgage
    *nglowin@wrightlegal.net, BKUDGeneralupdates@wrightlegal.net*
Blake J Lindemann for MMRC, LLC
    *Blake@lawbl.com, Nataly@lawbl.com*
Erica T Loftis Pacheco for Rehabbers Financial Inc, dba Aztec Financial
    *erica.loftispacheco@bonialpc.com*
Valerie Smith for PRA Receivables Management LLC
    *claims@recoverycorp.com*
Edward A Treder (IP)    *cdcaecf@bdfgroup.com*
US Trustee (LA)    *ustpregion16.la.ecf@usdoj.gov*
Hatty K Yip (TR)    *hatty.yip@usdoj.gov*

**2. SERVED BY UNITED STATES MAIL**: On 1/26/2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 1/26/2020, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Robert N. Kwan, USBC, Central District of California, 255 E. Temple Street, Suite 1682, Los Angeles CA 90012

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/26/2020 | Baruch C. Cohen, Esq. | /s/ Baruch C. Cohen |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                 **F 9013-3.1.PROOF.SERVICE**

David Lee
840 Dunsmuir Ave
Los Angeles CA 90036

Chase
POB 901076
Ft. Worth, TX  76101

Amer Assist AR Solutions, Inc.
P.O. Box 26095
Columbus, OH 43226-0095

Target RedCard
PO Box 5332
Sioux Falls SD 57117-5332

Comenity-Total Rewards Visa
P.O. Box 659450
San Antonio, TX 78265-9450

US BANK
PO Box 108
Saint Louis, MO 63166-0108

Discover Card/ Discover it Miles Card
PO Box 51908
Los Angeles, CA 90051-6208

US Bank Home Mortgage
4601 Frederica Street
Owensboro, KY 42301-7439

First National Bank
PO Box 2557
Omaha, NE 68103-2557

Virgin America
PO Box 659450
San Antonio, TX 78265-9450

Franchise Tax Board
PO Box 942840
Sacramento, CA 94240-0001

BSI Financial Services
314 S. Franklin Street, 2nd Floor
Titusville, PA 16354-2168

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101

LA Co. Treasurer and Tax Collector
PO Box 54110
Los Angeles, CA 90054-0110

LA DWP
111 N Hope St
Los Angeles., CA 90012-2607

LOANCARE A Servicelink Co.
PO Box 8068
Virginia Beach, VA 23450-8068

ORBITZ
PO Box 659450
San Antonio, TX 78265-9450

Pentagon Federal Credit Union
9494 Miramar Rd
San Diego, CA 92126-4417

Mercury Payments Services LLC
Card Services
PO Box 70168
Philadelphia, PA 19176-0168

Synchrony Bank
Margaret Keane, CEO
170 W Election Rd Ste. 125
Draper, UT 84020-6425

Renee E Sanders
Law Offices of Renee Estelle Sanders
3450 Wilshire Blvd Ste 1214
Los Angeles, CA 90010-2208

Pacific Private Money Inc
Mark Hanf, CEO
1555 Grant Ave
Novato, CA 94945-3120

Discover Bank
David W. Nelms, CEO
502 E Market Street
Greenwood DE 19950

USBank N.A.
Richard K. Davis, CEO
425 Walnut Street
Cincinnati OH45202